**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ANTHONY COOK, MICAH BELLAMY, and MAURICE JONES, as Personal Representative and on behalf of the Estate of Kailyn Jones, each individually and on behalf of all other similarly situated, | |
| Plaintiffs, | |
| v. | Case No.: 6:17-cv-891-Orl-40KRS |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, a foreign corporation, and GEICO GENERAL INSURANCE COMPANY, a foreign corporation, | |
| Defendants. | |
| | |
| ANTHONY LORENTI and ASHLEY BARRETT, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.: 6:17-cv-01755-PGB-KRS |
| GEICO INDEMNITY COMPANY, | |
| Defendant. | |

---

**PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

---

### TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………… 1

II.     MEMORANDUM OF LEGAL AUTHORITY……………………………. 2

    A.      The "Form" Insurance Policy Terms for the Plaintiffs and
        Putative Class Members Are Materially Identical………………… 2

    B.      The Insurance Policies Require Payment of "Actual Cash Value,"
        Which Includes Mandatory Title and Tag Transfer Fees………… 2

    C.      The Uniform Breach of Contract Is Ideal for Class Certification… 3

    D.      The Florida Class Is Ascertainable………………………………… 4

        1.      Scenario I: Automated With No Individualized Review…... 6

        2.      Scenario II: Title Check on Less than 1% of All Claims….. 7

III.    THE FLORIDA CLASS………………………………………………... 8

IV.     THE CLASS REPRESENTATIVES………………………………….. 9

V.      THE COURT SHOULD CERTIFY THE PROPOSED FLORIDA CLASS  10

    A.      The Legal Standard for Class Certification………………………… 10

    B.      The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a)… 11

        1.      The Class is so Numerous that Joinder of All Members is
            Impracticable Under Rule 23(a)(1)………………………….. 11

        2.      There Are Questions of Law or Fact Common to the Class
            Under Rule 23(a)(2)……………………………………….... 11

        3.      The Claims or Defenses of the Representative Parties Are
            Typical Of the Claims or Defenses of the Class Under
            Rule 23(a)(3)………………………………………………… 13

        4.      The Representative Parties Will Fairly and Adequately
            Protect the Interests of the Class Under Rule 23(a)(4)……… 14

    C.      The Putative Class Should Be Certified Pursuant to
        Fed. R. Civ. P. 23(b)(3)……………………………………………… 15

1.      Questions of Law and Fact Common to Class Members
        Predominate Over Any Questions Affecting Only
        Individual Members………………………………………….      15

2.      A Class Action is the Superior Method of Adjudication…..      17

        a.      The Class Members' Interests Are Supported by
                Class Certification, Not By Individually Controlling
                The Prosecution of Separate Small Claims Actions      18

        b.      The Certified Action in *Roth* (Leased Vehicles) Supports
                the Propriety of Class Certification Here
                (Owned Vehicles) On the Same "Form"……………..…      18

        c.      Concentrating the Litigation of the Claims in this
                Forum is Desirable……………………………………      18

        d.      This Class Action is Manageable…………………….      19

VI.     THE NATIONWIDE CLASS…………………………………………..      19

A.      The Nationwide Class Meets the Requirements of Rule 23(a)
        and Rule 23(b)(3)…………………………………………....      19

B.      In the Alternative, A Nationwide "Issue Class" Should be Certified
        Pursuant to Rule 23(c)(4)…………………………………...      25

VII.    CONCLUSION………………………………………………………      25

Plaintiffs file this Motion for Class Certification and Incorporated Memorandum of Law, respectfully stating as follows:[1]

## I. __INTRODUCTION__

This case (the "*Lorenti* case") is the sister putative class action to the *Roth v. GEICO* class action (the "*Roth*" case). Earlier this year, the U.S. District Court for the Southern District of Florida in the *Roth* case granted plaintiff's motion for class certification, and granted plaintiff's motion for summary judgment on the merits.[2]

Both cases involve a straightforward breach of contract claim arising out of uniform insurance policy language contained within identical "form" policies for Plaintiffs and for each member of the class. In short, the GEICO Defendants[3] breached their uniform private passenger auto ("PPA") insurance policies covering "total loss claims" for vehicles -- which require GEICO to pay the full "replacement cost" to insureds suffering a total loss of their vehicles.

The *Roth* case involves <u>leased</u> vehicles, and the Southern District of Florida concluded GEICO breached its contracts with the class members by failing to pay mandatory sales tax and title transfer fees incurred on the replacement of leased vehicles which were a total loss.

The *Lorenti* case involves <u>owned</u> vehicles. While GEICO does pay sales tax incurred on the replacement of owned vehicles, GEICO does <u>not</u> pay mandatory title or tag transfer fees incurred on the replacement of owned vehicles which were a total loss. **This motion for class**

---

[1] Named Plaintiffs Anthony Cook, William Santos, Maurice Jones, Anthony Lorenti, and Ashley Barrett are collectively referred to as "Plaintiffs". The Cook and Jones case (Case No.: 6:17-cv-891-Orl-40KRS) and the Lorenti and Barrett case (Case No.: 6:17-cv-01755-PGB-KRS) have been consolidated.

[2] In *Roth v. GEICO General Ins. Co.*, Case No. 16-62942-Civ-DIMITROULEAS (S.D. Fla.), the Court entered an Order Granting Plaintiff's Motion for Class Certification (*Roth* DE 165), Exh. A ("*Roth* Class Cert. Order"), and an Order Granting Plaintiff's Motion for Summary Judgment; Denying Defendant's Motion for Summary Judgment (*Roth* DE 247), Exh. B ("*Roth* MSJ Order"). Plaintiffs recognize the M.D. Fla. is not the same court as the S.D. Fla., and, setting aside collateral estoppel and other merits issues not currently before the Court, respectfully submit the well-reasoned *Roth* Orders as persuasive authority for this Court's consideration.

[3] Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company are collectively referred to as "Defendants" or "GEICO".

certification asks this Court to certify (1) a Florida class of owned (not leased) vehicle insureds harmed by GEICO's uniform failure to pay title fees and tag transfer fees upon total loss of their vehicles, and (2) a Nationwide Class of non-Florida insureds (owned and leased vehicles) injured by the same conduct. *See* L.R. 3.01(a) (concise statement of relief).

## II.    MEMORANDUM OF LEGAL AUTHORITY

### A.    The "Form" Insurance Policy Terms for the Plaintiffs and Putative Class Members Are Materially Identical.

The "form" insurance policies covering the Plaintiffs' and all putative class members' total loss claims (the "Policies") have identical material terms.[4] The Policies require GEICO to pay "actual cash value" (ACV) on total losses. The Policies define "actual cash value" as "the **replacement cost** of the auto or property less depreciation or betterment." (Exh. C, A-30 FL Form Policy at 13 (emphasis added); *see also* Exh. D, A-70 FL Form Policy at 13 (same).)[5]

### B.    The Insurance Policies Require Payment of "Actual Cash Value," Which Includes Mandatory Title and Tag Transfer Fees.

Because title and tag transfer fees are mandatory costs of the purchase or lease of any replacement vehicle following a total loss, such fees are one component of the "replacement cost" of the insured vehicle and must be paid under the clear terms of the policy. *See* Exh. B, *Roth* MSJ Order at 4 ("Plaintiff asserts that. . . title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under

---

[4] The insurance policies applicable to the class members are Form A-30 (Exh. C) and Form A-70 (Exh. D). The same forms and same policy language is used by all GEICO Defendant entities in Florida, and virtually identical language is used nationwide (Exh. T, Def. Response to First Request for Production, Res. 4; Exh. N, Def. Response to Plaintiffs' First Interrogatory; Exh. L. Def. Amended Response to First Request for Production, Exhibit A).

[5] In *Roth*, the Southern District of Florida concluded that the Policy terms governing ACV and replacement costs for leased vehicles (applicable in *Roth*) and owned vehicles (applicable in *Lorenti*) are identical. *See* MSJ Order, Exh. B at 6 ("Importantly for the Court's analysis herein, the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles. . . .") Thus, GEICO uses the same Policy terms across the board, making the *Roth* Court's analysis directly on point as to the issues in the *Lorenti* case.

the Policy. <u>The Court agrees</u>.") (Emphasis added.) As the Southern District of Florida further

explained in the *Roth* Order Granting Summary Judgment:

> [T]itle transfer fees are mandatory fees imposed by Florida law on
> the replacement of all vehicles. *See* . . . Fla. Stat. § 319.34 (title
> transfer fee).[6] Further, settled law in the Eleventh Circuit, applying
> Florida law, is that when an insurer provides an actual cash value
> insurance policy covering the cost to repair or replace damaged
> insured property, it must pay all of the costs that are included in the
> cost of replacement or repair of the property. *See Mills v. Foremost
> Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008).

(*Id*. at 7.)[7] The logic is equally and identically applicable to tag transfer fees, which are also

mandatory costs imposed by the State of Florida.  F.S. § 320.02.  The fee imposed for tag transfer

is $4.60.  F.S. § 320.0609.

## C.     The Uniform Breach of Contract Is Ideal for Class Certification.

Plaintiffs and the members of the putative class have materially identical insurance Policies

with GEICO.  (Exh. B, *Roth* MSJ Order at 9-10.)  In contrast to its insurance Policy terms, GEICO's

practice and procedure is not to pay title or tag transfer fees on total loss claims.[8]  (Exh. G GEICO's

Response to Plaintiff's First Interrogatories, Nos. 4, 6, 4.23.18.)  GEICO's failure to pay mandatory

transfer fees for total loss of an owned vehicle is a breach of contract uniform to Plaintiffs and

each member of the putative class. This is therefore an ideal case for class certification. (*Compare*

---

[6] "The title transfer fee for purchasing a replacement vehicle is a minimum of $75.25. . . ." (Footnote in original.)

[7] The *Roth* Court concluded that, "as. . . title transfer fees are mandatory [and] necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased. Therefore, GEICO's failure to pay [insureds]. . . title transfer fees in the amount of $75.25 constitutes a material breach of contract." (Exh. B, *Roth* MSJ Order at 8.)

[8] "Further, regarding title transfer fees owed under the Policy, GEICO does not pay title transfer fees on any total loss vehicles, regardless of whether the total loss vehicle is leased, owned, or financed, in violation of the Policy provisions defining all vehicles as owned vehicles and requiring payment of replacement costs be paid as part of ACV, as well as violating the mandates of *Mills* and *Bastian* [*Bastian v. United Services Automobile Assn.*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015)]." (Exh. B, *Roth* MSJ Order at 9-10.)

Exh. A, *Roth* Class Cert. Order at 12 (certifying the *Roth* class action on the plaintiff's claim that GEICO breached the same "form" insurance Policy language at issue here).)

The common breach results in a small enough loss (here, $79.85) to deter insureds from pursuing justice on an individual basis because the transactional costs of litigation exceed the value of each claim. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1270 (11th Cir. 2004) (superiority of class treatment demonstrated where relatively small amount of individual claim suggests suit would not be brought individually).

**D.     The Florida Class Is Ascertainable.**

Ascertainability is a preliminary inquiry by the Court to consider whether there is a means of later identifying class members before embarking on an analysis of the Rule 23 requirements for class certification. *See Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Consideration of ascertainability "better prepares a district court to 'direct to class members the *best notice that is practicable* under the circumstances.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015) (quoting Fed. R. Civ. P. 23(c)(2)(B) (noting Rule 23(c)(2)(B) provides notice should be directed "to all class members who can be identified *through reasonable effort*") (emphasis added)). Because ascertainability is designed simply to aid the district court in determining whether the best notice practicable is directed to class members, ascertainability is a "narrow inquiry," there is no categorical prohibition against the use of affidavits for identification purposes, and the inquiry should not be commingled with Rule 23 requirements. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *28-30 (S.D. Fla. Jun. 26, 2018).

Although the Eleventh Circuit has not yet confirmed the standard for ascertainability in this Circuit,[9] Plaintiffs have more than satisfied the standard articulated in recent unpublished

---

[9] In *Ocwen Loan Services, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018), the Eleventh Circuit noted that there is a circuit split as to whether "a plaintiff must demonstrate an 'administratively

opinions. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014) (quotations omitted). These objective criteria should "allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015). Ascertainability "has also been described as a slippery requirement that does not require an overly strict degree of certainty and is to be liberally applied." *In re Delta/Air Tran Baggage Fee Antitrust Litigation*, 317 F.R.D. 675, 680 (N.D. Ga. 2016) (quotations omitted).

GEICO appears to be following the same playbook it attempted (unsuccessfully) in the *Roth* case, in which GEICO contended its alleged sloppy data retention policies immunized it from any class action because, it contended, whether a vehicle is a lease could not be ascertained.[10] This tactic failed in *Roth*,[11] and it likewise fails here. As set out by Mr. Martin, using GEICO's data and a series of reasonable cross-checks on that data against other GEICO data and third party title history yields a straightforward and reliable method of identifying class members through objective criteria. (Exh. E, Martin Declaration.)

Mr. Martin's methodology is based on the existence or non-existence of ten (10) data indicators as to whether a vehicle is leased.  Mr. Martin's opinions are based on (1) his experience

---

feasible' method for determining class membership over and above Rule 23's requirements," and the Eleventh Circuit "has yet to address this split in a published opinion."

[10] Indeed, because this case is so ideally suited for class certification, GEICO has, with all due respect, played a shell game in discovery and deliberately withheld critical responsive data for *over six months* – only producing it *after* Plaintiffs' expert disclosures and depositions, and *after* Plaintiffs demanded GEICO make full production or face a motion to compel. This unfortunate procedural history is the subject of Plaintiffs' Motion for Sanctions.

[11] *See* Exh. A, *Roth* Class Cert. Order; *see also Roth* Omnibus Order Denying GEICO's Motion to Decertify Class (*Roth* DE 267). GEICO argued the class of leased vehicles in *Roth* was not ascertainable and, incredibly, claimed that GEICO did not maintain reliable data regarding whether their insureds have leased or owned vehicles. The *Roth* Court, after carefully considering the data and expert analysis, rejected GEICO's ascertainability arguments at (1) class certification, (2) summary judgment, and (3) post-summary judgment in response to GEICO's motion to decertify the class. That is not all. GEICO's ascertainability arguments were also rejected by (4) the Eleventh Circuit in response to GEICO's Rule 23(f) petition for appeal.  (Exh. F.) With respect, it is telling that GEICO lacks meaningful defenses to Rule 23's requirements for certification and on the merits, and therefore must try (and fail) four times to argue the class allegedly cannot be ascertained because GEICO's data is allegedly inadequate.

in analyzing claims data in this case and in the *Roth v. GEICO* matter, (2) his knowledge relating to Florida vehicle title practices, (3) detailed review and analysis of voluminous GEICO claims data; (4) review of third-party motor vehicle reports with Florida title data, (5) review of excerpts from the depositions of Lynn Mitchell and David Antonacci, and (6) his experience and training in analyzing large multi-variable data sets.[12]  (Exh. E, at ¶ 11.)

Mr. Martin applied his methodology to a sample of 1100 claim files that were randomly selected by the Excel Random Number Generator. (Exh. E, at ¶ 11.) The methodology identifies a leased vehicle under three different scenarios.  If the vehicle is not identified as a leased vehicle, the vehicle is a owned (non-leased) vehicle and is a part of the class.

### 1.    Scenario I: Automated with No Individualized Review

A vehicle is a lease if:

(1) the Top Payee is not a person; and

(2) the Titled Owner is not a person; and

(3) Any of Leased Vehicle Criteria Nos. 2-6 are met with a "Y" designation (shown in one

of Sample Spreadsheet Columns GJ, GK, GM, GN, and GP).

---

[12] GEICO withheld from production over 11,140 data entries from nine (9) data fields that provide leased vehicle indicators in its claims and policy files until two weeks ago, October 16, and 22, 2018 (after expert disclosures and expert depositions). (Exh. E, Martin Decl. at ¶¶ 16-17.)  The late produced discovery was responsive to discovery requests that have been pending since March 2018.  The late and voluminous production of key data necessitates that Mr. Martin supplement his opinions pursuant to Fed. R. Civ. P. 26(e) ("duty to supplement") ("additions or changes. . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"; Case Management and Scheduling Order (DE 48) at 5 (requiring compliance with Rule 26(e)). Mr. Martin attaches a supplemental expert report hereto. The circumstances leading to GEICO's late data production are set out in Plaintiffs' Motion for Sanctions, which is to be filed after this motion. Counsel for GEICO has advised they do not object to Mr. Martin's supplemental report to the extent is it based solely on the October 16 and 22 productions.  Defendants do object to a supplemental declaration to the extent that any aspect of the analysis in the declaration includes data produced before Mr. Martin's original declaration. This makes little sense. Mr. Martin applies a similar methodology to the methodology he identified in his first expert disclosure. The late-produced data, however, includes data identifying 11,140 leased vehicle references to claims in GEICO's data. With this enormous production of highly relevant material, Mr. Martin reasonably supplements the methodology identified in his earlier report and deposition. To require that this supplemented methodology *ignore* the previous data productions would make little sense and be unreasonable.

(Exh. E, at ¶ 35.) Whether a claim involves a leased vehicle is identified in this automated manner for approximately 99.36% of total loss claims. (*Id.*at ¶ 39.)  This identification occurs at such a high accuracy rate without resort to Scenario II, which aims at only approximately 0.64% of additional claims.

### 2.    Scenario II: Title Check on Less than 1% of All Claims[13]

Scenario II requires a title check or claim note review for only approximately 0.64% of claims. (*Id.*at ¶ 39.)  These small percentage of claims have data evidence that the claim may involve a lease but there are some data inconsistencies. (*Id.*) A title check or claim note review for this extremely small percentage of claims that fall under scenarios II(A) and II(B):

A.  Title Check for Possible Lease Claim if Scenario I does not apply and:
  (1)  the Top Payee is not a person;
  (2)  the Title Owner is not a person; and
  (3)  a leased indicator criterion is satisfied for any of the Data Sets Nos. 2-9.

B.  Title Check for Possible Lease Claim if Scenario I does not apply and:
  1.  the Top Payee is not a person;
  2.  the Title Owner is a person; and
  3.  Any of the leased vehicle criteria Data Sets Nos. 2-9 are met.

(*Id.*at ¶ 38.) Any GEICO insured whose total loss private passenger auto claim during the class period that did not involve a leased vehicle should be a member of the class.

Mr. Martin tested his methodology in the following ways: (1) built into the methodology are checks and balances so that the determination of leased vehicle status is always made based on multiple indicators, and (2) confirmed the methodology by title history review for each of 1100 sample claims.[14] (Exh. E, at ¶ 12.) Defendants' expert Ms. Lynn Mitchell testified that reviewing

---

[13]In Mr. Martin's experience, when analyzing large data sets from different sources, it is not uncommon for there to be a percentage of claims where such review is necessary to address ordinary data inconsistencies or data incompleteness.  (Exh. E, at ¶ 33.)

[14] As shown in the methodology, title history review is not required on every claim.  But a title history review was performed on the 1100 sample claims as a test of the methodology.

title ownership information from third party title history reports is an acceptable way of testing Mr. Martin's methodology. (Exh. CC, Dep. of Lynn Mitchell, at 72-73.) Ms. Mitchell also testified it is proper to utilize the multiple data fields relating to leased vehicles produced by GEICO as a "check" to determine that leased vehicle determinations are proper.[15] (Mitchell Dep. at 42.)[16]

Importantly, Plaintiffs are not required to actually identify the class members prior to certification. *See, e.g., Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450 at *11 (M.D. Fla. Mar. 26, 2012) ("Class members need not actually be ascertained prior to certification" (citations omitted)). Rather, Plaintiffs merely must demonstrate that the class is ascertainable at some later stage in the litigation (the class must be ascertain*able* not ascertain*ed*) through reference to objective criteria. *Id*.[17] Finally, even if GEICO's poor data retention and record-keeping practices make identification of putative class members more difficult, such a fact is not a reason to preclude class treatment. *See, e.g.*, *LaPointe v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 184150, at *9 (M.D. Fla. Apr. 26, 2016) (rejecting defendant's argument that because its record-keeping prevented perfectly ascertaining the class, class treatment was not viable because defendants cannot insulate themselves from liability through record-keeping practices).

## III.   THE FLORIDA CLASS

Based on GEICO's uniform breach of a "form" contract, Plaintiffs seek to recover damages

---

[15] Ms. Mitchell herself has previously examined Florida motor vehicle title reports to determine whether a vehicle is leased or not. (Mitchell Dep. at 40-41.) At her deposition, Ms. Mitchell was able to review the single Anthony Lorenti Certificate of Title and determine from review of the single page that his claim did not involve a leased vehicle. (Mitchell Dep. at 72-75.) This is because Mr. Lorenti is the titled owner under the certificate. *Id.* For the very few claims for which the methodology provides for title check or claims note review, this review is quick and simple.
[16] Without any individual review, Plaintiffs' methodology would accurately identify the leased vehicle status for over 99.34% of the claims. (Exh. E at 40.)
[17] For example, ownership of a particular item is sufficiently objective criteria to determine class membership. *Dear v. Q Club Hotel, LLC*, 2016 U.S. Dist. LEXIS 180873 at *5 (S.D. Fla. Dec. 8, 2016) (ownership of condominium unit is objective criteria for identifying class members); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 U.S. Dist. LEXIS 98656 at *19 (C.D. Ca. May 27, 2015) ("Defining class membership in terms of ownership of a particular item is generally sufficiently objective and specific.").

on a class-wide basis. First, Plaintiffs seek certification of the following Florida Class:

> All Florida residents insured for PPA physical damage coverage by Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time during the five (5) years prior to the filing of this lawsuit through the date of class certification, whose claims were adjusted by a Defendant as a total loss claim, whose claims resulted in payment by a Defendant of a covered claim, and who were not paid title fees and/or license plate transfer fees.

This Florida Class is substantially the same as the proposed Florida Classes in the Second Amended Complaint at DE 71 ("Lorenti SAC") and Third Amended Complaint at DE 118 ("Cook TAC"), but have been refined to conform to the evidence obtained in discovery, the rulings this year (and forthcoming judgment) in the *Roth* class action (certifying and granting summary judgment in a class of leased vehicles for one GEICO entity), and the existence of the *Joffe* class action (seeking certification of a class of the remaining leased vehicles not covered by *Roth* as to time period or GEICO entity).[18]

## IV.    THE CLASS REPRESENTATIVES

Each Named Plaintiff has standing to bring his or her claim as a class representative because each suffered an injury-in-fact caused by GEICO's breach of contract for failure to include title or tag fees as a component of actual cash value (replacement cost) of his or her total loss vehicle. Each Named Plaintiff owned a vehicle for which he or she paid a premium for ACV coverage (which includes title and tag transfer fees), that vehicle was insured by GEICO's "form" Policy, and each Plaintiff was injured by GEICO's failure to provide the benefit of that bargain.

On June 20, 2013, Anthony Cook was involved in an accident, made a covered claim, and

---

[18] The *Lorenti*, *Roth*, and *Joffe* cases are companion cases intended to redress each GEICO entity's breach of contract on behalf of all Florida insureds (owned and leased). The *Roth* case involves leased vehicles for insureds with GEICO General Ins. Co. from August 30, 2011 to August 30, 2016. Plaintiffs' counsel has filed another putative class action in the Southern District of Florida, the *Joffe* case, involving leased vehicles for insureds with GEICO General – the *Roth* defendant – for the additional time-period of September 1, 2016 onward, and also for insureds with Government Employees Ins. Co., and GEICO Indemnity Ins. Co. for the periods within the applicable statute of limitations.

Defendant <u>GEICO General</u> determined his vehicle to be a total loss. (Exh. U (Cook Market Valuation). GEICO General declined to pay tag or title fees for Mr. Cook's claim. (Exh. V (Cook TLSE Letter).) In doing so, GEICO General breached its contract. Because of his injury, Mr. Cook has standing to represent all similarly situated putative class members who suffered the same breach of contract. *See, e.g., Payne v. Travenol Lab., Inc.*, 565 F.2d 895, 898 (5th Cir. 1979) (to establish standing, plaintiff must show that he has personally suffered injury due to defendant's actions); *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) (same).

The same holds true as to each putative class representative and each GEICO Defendant entity. As to Defendant <u>GEICO General</u>, in addition to Mr. Cook, Maurice Jones (as representative of Kailyn Jones' estate) suffered the same injury. (Composite Exh. W.) As to Defendant <u>Government Employees</u>, Micah Bellamy also suffered the same injury. (Composite H.) As to Defendant <u>GEICO Indemnity</u>, both Mr. Lorenti (Composite Exh. Y) and Ms. Barrett suffered the same injury. (Composite Exh. Z.)  All the aforementioned injuries were pursuant to a uniform practice – consistent across all GEICO entities – of failing to make payment for title or tag transfer fees despite "form" Policy language requiring payment of ACV (which includes title and tag transfer fees as a component because those fees are mandatory replacement costs for any vehicle). (Exh. G, Defendants' Resp. to Plaintiffs' Interrog., No. 4.)

## V.    <u>THE COURT SHOULD CERTIFY THE PROPOSED FLORIDA CLASS</u>

Federal Rule of Civil Procedure 23 and Local Rule 4.04 govern class actions in this Court. The Court should certify the Florida Classes pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

## A.    The Legal Standard for Class Certification.

A district court has broad discretion in determining class certification. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class, the

named plaintiff[] must have standing, all Rule 23(a) requirements must be satisfied, and at least one Rule 23(b) must be satisfied. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009); *see* Fed. R. Civ. P. 23(a) and (b).

**B.     The Class Meets All of the Requirements of Fed. R. Civ. P. 23(a).**

**1.     The Class is So Numerous that Joinder of All Members is Impracticable Under Rule 23(a)(1).**

The purpose of the numerosity inquiry is not whether the number of proposed class members is "too few," but rather "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000); *see also* Fed. R. Civ. P. 23(a)(1).

The Eleventh Circuit has held that "'[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Data produced by Defendant shows that there are approximately 199,485 class members for the class period up through July 13, 2018. (Ex.  E, Martin Decl. at ¶ 8.) The numerosity requirement is easily satisfied.

**2.     There Are Questions of Law or Fact Common to the Class Under Rule 23(a)(2).**

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Satisfying the commonality requirement is a "low hurdle" under Rule 23(a)(2). *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). "[F]actual differences may exist between class members' claims without defeating certification, provided

common questions of law exist." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 321 F.R.D. 677, 685–86 (M.D. Fla. 2017). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citations omitted).

Commonality is satisfied in this case because there are questions of law common to the class as to whether GEICO breached the "form" insurance Policies by failing to pay title or tag transfer fees on Florida first-party PPA leased vehicle total loss claims, and there is a common answer to this question in interpreting the uniform policy language across the entire putative class.[19] GEICO's internal practices in failing to pay title and tag fees are the same across the GEICO Defendants. (Exh. AA, GEICO 30(b)(6) witness M. Baeur deposition 10.3.18, p. 34-35.) Resolution of that common issue – whether GEICO's failure to include transfer fees in making ACV payments to total loss insureds – is the crux of this case, and is "one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355.[20]

In addition to *Roth*, other courts have routinely found the commonality requirement has been met in similar cases involving breaches of uniform insurance policies. *See, e.g., Powers v. Govt. Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged that auto insurer breached Florida insurance

---

[19] *Compare* Exh. A, *Roth* Class Cert. Order at 6 ("there are questions of law common to the class as to whether Defendant breached the insurance policies by failing to pay. . . title transfer fees on Florida first-party PPA leased vehicle total loss claims, and a common answer to this question in interpreting the uniform policy language across the putative class.") ("The Court agrees that these issues are central to Defendant's liability, and resolution of these issues will affect all members of the putative class.").

[20] Notably, when this Court previously consolidated the Sullivan, Cook, Santos, and Jones case (Case No.: 6:17-cv-891-Orl-40KRS) and the Lorenti and Barrett case (Case No.: 6:17-cv-01755-PGB-KRS), it observed: "these cases [] present common questions of law and fact regarding Plaintiffs' breach of contract claims for GEICO's failure to pay title and license plate fees on first part total loss auto insurance claims sufficient to merit consolidation for all purposes." (DE 36 at 2.)

policies with class members by not refunding the full amount of the deductible after recovering under subrogation claims); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by failing to provide coverage to injured occupants of a vehicles leased by Mercedes Benz Credit Corporation); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) (finding commonality certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by applying betterment deductions to loss claims); *Eastwood v. Southern Farm Bureau Case. Ins. Co.*, 291 F.R.D. 273 (2013) (finding commonality and certifying Rule 23(b)(3) class where plaintiff alleged auto insurer breached its policies with class members by asserting subrogation claims for recoveries the insureds received from third-party tortfeasors); *see also Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-CV-32 (MTT), 2016 WL 951537, at *8 (M.D. Ga. Mar. 9, 2016), *reconsideration denied*, No. 5:14-CV-32 (MTT), 2016 WL 2930958 (M.D. Ga. May 19, 2016) (finding commonality and certifying Rule 23(b)(3) where plaintiff alleged that home insurer breached its insurance policies with class members by not including diminished value in coverage for property damage claims). The same is proper here.

### 3. The Claims or Defenses of the Representative Parties Are Typical of the Claims or Defenses of the Class Under Rule 23(a)(3).

"In order to demonstrate typicality, the plaintiff must generally demonstrate that a 'sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017) (citing *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)); *see also* Fed. R. Civ. P. 23(a)(3). "Stated differently, '[t]he claim of a class representative is typical if the claims or defenses of the class and the class

representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (citing and quoting *Williams*, 568 F.3d at 1356-57).

Here each Plaintiff's claims are typical and have a clear nexus with the claims of each putative class member. The alleged breach of contract is the same for each proposed class representative and each class member for all GEICO Defendants. The insurance Policies at issue have identical material terms. (*Compare generally* Ex. D, Form A70 FL Policy at 12-15, with Ex. C, Form A30 FL Policy at 12-15.) Each class representative and putative class member had a total loss claim declared by GEICO, but GEICO declined to pay title and tag transfer fees as replacement costs. Plaintiffs' claims are typical of the claims of the putative class members.[21]

### 4. The Representative Parties Will Fairly and Adequately Protect the Interests of the Class Under Rule 23(a)(4).

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). There is no conflict of interest between the named Plaintiff and the members of the putative class. To the contrary, their interests are perfectly aligned.

Moreover, class counsel is experienced in litigating class actions and other complex litigation, including successfully litigating a class action with similar issues. (*See* Exh. J, Normand Decl.; Exh. A, *Roth* Class Cert. Order at 8-9 ("the Court finds Plaintiff's counsel qualified pursuant to Rule 23(g)(1) to represent the putative class Plaintiff's counsel has sufficient experience with

---

[21] *Compare* Exh. A, *Roth* Class Cert. Order at 7-8 ("Plaintiff has satisfied [the typicality] requirement. Plaintiff's claims are typical of the claims of other putative class members because they were each insured by GEICO pursuant to insurance policies with identical material terms when they had a claim determined by GEICO to be a covered leased vehicle total loss claim. Plaintiff and the putative class members all suffered the same injury as a result of Defendant's conduct, namely, that GEICO did not pay. . . title transfer fees as replacement costs. The injury to the Plaintiff and the class relies on the same legal and factual theories of liability.").

class actions and complex litigation.”))[22] Plaintiffs and Class Counsel will adequately protect the interests of the class.

## C.     The Putative Class Should Be Certified Pursuant to Fed. R. Civ. P. 23(b)(3).

Certification is proper pursuant to Fed. R. Civ. P. 23(b)(3) because “the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Fed. R. Civ. P. 23(b)(3).

### 1.     Questions of Law and Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members.

“Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that ‘the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.’” *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)). A complete absence of individual issues is not necessary. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986). A plaintiff merely must demonstrate that issues which are subject to generalized proof predominate over issues that require individualized proof. *See, e.g. Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (“it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions”); *Rosen*, 270 F.R.D. at 681 (citing *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (“Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof.”)).

---

[22] The same counsel represent Plaintiff and the certified class in the *Roth* class action as represent Plaintiffs on behalf of the putative class here in the *Lorenti* putative class action.

Courts routinely find predominance in cases involving the interpretation of uniform material insurance provisions. *Burton*, 214 F.R.D. at 611 (common issues predominated because the most significant factor was the auto insurer's failure to fully compensate insureds under identical insurance policy provisions applicable to each class member); *Leszczynski*, 176 F.R.D. at 675 ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."); *Steinberg*, 224 F.R.D. at 80 (common issues predominated on auto policy breach of contract claims because the auto "policies are substantially uniform"; and "if common questions of law predominate over individual questions as to liability, courts will generally find Rule 23(b)(3) to be satisfied even if individual damages issues remain."); *Eastwood*, 291 F.R.D. at 286 (common class issues relating to the construction of the auto insurance policies predominate "even though individual issues arising from SFB's assertion of its affirmative defense may present themselves."); *Thompson*, 2016 WL 951537, at **9-10 (breach of contract claim that auto policies required insurer to assess for diminished value predominated over individual issues); *Powers*, 192 F.R.D. at 320 (S.D. Fla. 1998) (common issues predominated for a state class involving an insurer's breach of its policies by recovering under subrogation claims).

Here, questions of law or fact common to class members predominate over any questions affecting only individual members. The predominate issue, common to all class members, is whether GEICO breached the Policies by failing to properly compensate its insureds. Every class member was insured by GEICO under identical material policy terms. GEICO breached the Policies by failing to pay title or tag fees on total loss claims. As the *Roth* Court found, the answer

to this question will be determined by common proof on the meaning of the subject contract language. These common issues predominate over any individual issues.[23]

The damages will be determined based on a flat rate for the title and tag fees due. (Ex. E, Martin Decl. at ¶ E; Ex. K, Matera Decl. at ¶ 17 (title fees are the minimum flat fees mandated and do not require formulaic calculation).) But even if damages raise some individualized issues, such a finding would not defeat class certification. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'") (citing Newberg on Class Actions); *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 936 (11th Cir. 2016) ("even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis.")[24] The common contract interpretation questions predominate over all other issues.

### 2.    A Class Action is the Superior Method of Adjudication.

A class action is superior to any other method for a fair and efficient adjudication of Plaintiffs' and the putative classes' uniform breach of contract claims. "To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

---

[23] *Compare* Exh. A, *Roth* Class Cert. Order at 10 ("The Court agrees with Plaintiff that common issues of law and fact that are susceptible to common proof. . . predominate over any issues that may be subject to individualized proof. Interpretation of uniform material insurance provisions that will determine liability is particularly indicative of predominance.").

[24] *Compare* Exh. A, *Roth* Class Cert. Order at 10-11 ("Plaintiff has also set forth evidence to show that Defendant did not pay title transfer fees for total losses of leased vehicles in Florida, resulting in a minimum damage of $75.25 for each class member. The need for individualized damages calculations in this case does not defeat a finding of predominance.")

concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008); *see also City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 657 (S.D. Fla. 2010). Each of these factors supports the superiority of class certification here.

a.     **The Class Members' Interests Are Supported By Class Certification, Not By Individually Controlling the Prosecution of Separate Small Claims Actions.**

The average claim of each class member is approximately $79.85, which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company. (Ex. E, Martin Decl. at ¶ 52; Ex. K, Matera Decl. at ¶ d, f); *see also Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 676 (S.D. Fla. 1997) ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."). Plaintiffs are unaware of any other putative class member filing a lawsuit asserting the same claims as asserted in this lawsuit. This factor favors class certification.

b.     **The Certified Action in *Roth* (Leased Vehicles) Supports the Propriety of Class Certification Here (Owned Vehicles) On the Same "Form."**

The *Roth* and *Joffe* cases were filed by leased (not owned) vehicle total loss claimants seeking title fees for all GEICO total loss insureds, and those claimants are represented by the same counsel as the present case. The *Roth* Court granted class certification and summary judgment in favor of Plaintiffs. This factor favors class certification here.

c.     **Concentrating the Litigation of the Claims in this Forum is Desirable.**

The Middle District of Florida is well equipped to handle insurance class actions such as this. Moreover, as for the Florida Class, all potential class members currently reside or did reside in Florida during the class period, and all relevant transactions occurred in Florida. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013) (finding that because all of the subject

18

"transactions occurred in Florida, litigating this case in a Florida federal district court makes sense."). This factor also favors class certification.

> ### d.      This Class Action is Manageable.

The crux of this case is the uniform policy provision in question. Damages will be determined by simple formula. On this record, the case is not merely manageable as a class, it is ideal for class treatment. *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010) ("Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases.").

## VI.      THE NATIONWIDE CLASS

Based on GEICO's uniform breach of contract, Plaintiffs also seek certification of the following Nationwide, or, in the alternative, Multi-State, Class(es) pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(c)(4):

> All non-Florida residents of the United States insured for PPA physical damage coverage by Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company who suffered a first-party loss of a covered vehicle at any time during the applicable statute of limitations through the date of class certification, whose claims were adjusted by a Defendant as a total loss claim, whose claims resulted in payment by a Defendant of a covered claim, and who were not paid title fees and/or license plate transfer fees.

### A.      The Nationwide Class Meets the Requirements of Rule 23(a) and Rule 23(b)(3).

This simple breach of contract case is appropriate for nationwide or multi-state class certification.  The same material language was used during the class period across the country in GEICO's "form" insurance Policies.[25]  (*See* Exh. L, Defendants Amended Responses and

---

[25] GEICO has admitted it used the same Policy language in the following forty (40) states:  AK, AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, IA, ID, IL, IN, KS, KY, LA, MI, MN, MO, MS, MT, ND, NE, NH, NM, NV, NY, OH, OR, PA, RI, SC, SD, TN, TX, VT, WI and WY.  (*See* Exh. L, Defendants Amended Responses and Objections to Plaintiffs' First Request for Production of Documents, Exhibit A thereto, 7/20/18, Paragraph 1.) Plaintiffs are still waiting for GEICO to produce copies of the policies in each state, which GEICO has promised but not delivered.

Objections to Plaintiffs' First Request for Production of Documents, Exhibit A thereto, 7/20/18.)

The same breach occurred nationwide pursuant to GEICO's policy of refusing to pay title or tag

transfer fees as a component of actual cash value on total loss vehicles.[26]

---

[26] GEICO has failed to answer, and delayed supplementing, simple and direct written discovery on this issue, and delayed putting up a Rule 30(b)(6) deponent to be cross-examined on this issue.

- On July 10, 2018, Plaintiffs served Interrogatories on GEICO asking  "1. For policies issued under each policy form required to be produced by Plaintiffs' First Request for Production of Documents (Nationwide Class Discovery), identify whether Defendants' general practice or procedure during the period January 1, 2014 through the present was to include payment for any title fee in total loss coverage for owned vehicles.  If the general practice or procedure changed during the time period, provide dates and descriptions of all such changes." (*See* Exh. M, Plaintiffs' First Interrogatory (Nationwide Class Discovery) served 7/10/18.)

- GEICO responded: "With respect to states identified in GEICO's Amended Responses and Objections to Plaintiffs' First Request for Production of Documents (Nationwide Class Discovery), it is **currently** GEICO's practice and procedure to include title fees in settlement payments made with respect first party total loss physical damage claims identified in Exhibit A (Bates Number SLGEICO005725). No response is required with respect to Massachusetts, North Carolina, Virginia and Washington because GEICO's Family Automobile Insurance Policies in those states are not responsive to Plaintiff's First Request for Production (Nationwide Class).  (*See* Exh. N, Defendants Responses and Objections to Plaintiffs' First Interrogatory (emphasis added), served 8/23/2018.)

- On Exhibit A of Def's Responses to First Interrogatories, Bates SLGEICO005725, GEICO lists the following states "AK, AL, AR, AZ, CA, CO, DC, DE, GA, HI, IA, ID, IL, IN, KS, KY, LA, MD, MI, MN, MO, MS, MT, ND, NE, NM, NV, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, WI, WV, AND WY."

- Needless to say, this response evades the question asking which states used the same policy language during the class period) and instead responds as to GEICO's policy "currently" (after this putative class action was filed), which was not asked and which makes no sense given the putative class period. Respectfully, this was a deceptive response to conceal GEICO's change of practice from not paying title fees (despite being owed under the insurance policy) to paying them (after the lawsuit was filed).

- In fact, Plaintiffs are well aware of GEICO's prior practice during the class period, and that this practice has "currently" been changed. (*See, e.g.,* Exh. O, CCC Evaluations prepared for GEICO and Total Loss Settlement Explanations showing GEICO insureds in Texas, Indiana, and Illinois who were not paid title or tag transfer fees in 2012, 2015, and 2017 following their total losses.)

- Plaintiffs' counsel sent GEICO a letter identifying the misleading and nonresponsive answer and requesting a direct and responsive answer. (Exh. P, Correspondence from B. Pratt to K. Kochis, 10.1.18.)

- GEICO responded by letter stating that it "is investigating whether there are any states identified in SLGEICO005725 where it did not pay title fees in the settlement of total loss claims during the period January 1, 2014 through present". (Exh. BB, Correspondence from K. Kochis to B. Pratt 10.6.18, p. 4.)  This is important. GEICO did not refuse to respond, which would have allowed Plaintiffs to move to compel a response.  Instead, GEICO stated it was investing, leaving Plaintiffs' counsel to believe a supplemental response would be forthcoming, and then dragged its feet to the deadline for Plaintiffs' motion for class certification without delivering.  (No response has been delivered.)

- The same is true for GEICO's Rule 30(b)(6) deponent on this topic.  Plaintiffs requested a corporate representative deposition regarding the reasons GEICO pays title fees in states other than Florida, where the policy contracts are the same or substantially similar, and how long it has been GEICO's "practice and procedure to do so".  (*See* Exh. Q, Amended Notice of Deposition pursuant to FRCP 30(b)(6) dated 9/28/2018.)  That was over a month ago. GEICO has not produced a Rule 30(b)(6) deponent on this topic.

- GEICO's obstruction cannot go on forever.  Although it is not Plaintiffs preference to practice in this manner, Plaintiffs will unilaterally serve the Rule 30(b)(6) notice for a date of Plaintiffs' choosing, and, if necessary, move to compel a response to its simple Interrogatory on this subject.

There is no need to distinguish between owned and leased vehicles for the non-Florida class, as there are no other class actions (like *Roth* in S.D. Fla.) involving only leased vehicles; consequently, ascertaining class members will be simple.   All GEICO total loss insureds nationwide (and certainly in the *admitted* forty states with identical material Policy language) during the class period are putative class members, and they may be easily identified through GEICO's own data listing their insureds. Plaintiffs are not required to actually identify the class members prior to certification. *See, e.g., Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450 at *11 (M.D. Fla. Mar. 26, 2012) ("Class members need not actually be ascertained prior to certification" (citations omitted)).

Plaintiffs anticipate that GEICO will claim differences in state law preclude certification of a nationwide or multi-state class.  Not so.  In *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003), the Eleventh Circuit rejected this argument in a similarly straightforward breach of contract multi-state class action:

> Exxon's primary argument in support of its contention that the class should not have been certified is that there were individual issues inherent in each dealer's breach of contract claim and its own affirmative defenses.  We find Exxon's argument that each breach of contract claim raised an individual issue is without merit. Because all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers, the duty of good faith was an obligation that it owed to the dealers as a whole.  Whether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis.
>
> * * *
>
> Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages.

*Id.* at 1261 (holding "the district court did not abuse its discretion in certifying the class" for thirty-five (35) states).

Here, the question concerning the "breach" of GEICO's uniform "form" contract is the same across each state.  (*See* Exh. R, 50-State Survey of Elements of Breach of Contract.) Therefore, the breach may be proved by common evidence.  *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 695 (S.D. Fla. 2004) (noting that because "the essential elements of [the plaintiffs'] antitrust claims do not vary significantly from state-to-state, . . . they are susceptible to proof using common evidence.").  Likewise, the requirement to pay tag and title transfer fees when replacing a vehicle is the mandatory in all important respects across each state. (*See* Exh. S, 50-State Survey of Requirement to Pay Title and Tag Transfer Fees.)  Whether there are variations as to GEICO's defenses or the amount of title transfer fees (and therefore damages) are merits questions that are not currently before the Court, and which will properly be addressed during the merits phase of this case.[27]

In *Klay*, the Eleventh Circuit agreed with the plaintiffs that "the only real legal issue pertinent to their breach of contract claims is the definition of 'breach,' which does not differ from state to state."  *Klay*, 382 F.3d at 1262.  Unless the definition of "breach" under state contract law has drastically changed since *Klay* was decided in 2004, the Eleventh Circuit's holding applies

---

[27] Even if there are some differences across state law that require somewhat different treatment at trial, nationwide or multi-state class certification is proper.  One method of address such minor differences is through grouping.  "[I]f the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."  *Klay v. Humana, Inc.*, 382 F.3d 1241 (2004), *abrogation on other grounds recognized by Dickens v. GC Services Limited Partnership*, 706 Fed. Appx. 529 (11th Cir. 2017); *see also Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (holding that class certification is appropriate where "variations [in state law] can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines"). Should GEICO contend some minor differences in state law, Plaintiffs will categorize states into like groups to address managing these differences in an orderly way.

equally here.  The Court went on:

> Judge Marcus once held, 'Whether [a] contract[] . . . has been
> breached is a pure and simple question of contact interpretation
> which should not vary from state to state.' *Indianer v. Franklin
> Life Ins. Co.*, 113 F.R.D. 595, 607 (S.D. Fla. 1986), *overruled in
> part on other grounds by Ericsson GE Mobile Communs., Inc. v.
> Motorola Communs. & Elecs., Inc.*, 120 F.3d 216, 219 n.12 (11th
> Cir. 1997) (other citations omitted).  Based on 'genius, general
> knowledge and previous information, (citations omitted), we are
> inclined to agree.  **A breach is a breach is a breach, whether you
> are on the sunny shores of California or enjoying a sweet
> autumn breeze in New Jersey.**  *See Black's Law Dictionary* 200
> (8th ed. 2004) (defining "breach of contract" as "[v]iolation of a
> contractual obligation by failing to perform one's own promise").

*Id*. at 1262-63 (emphasis added).  Moreover, Magistrate Judge Spaulding correctly stated the

applicable law in the Report and Recommendation on GEICO's motion to dismiss and motion to

strike Plaintiffs' nationwide class allegations.  GEICO argued "vast differences" in state law

precluded certification of a nationwide class.  Magistrate Judge Spaulding's Report and

Recommendation directly addressed this argument, stating:

> It is true that '[v]ariations in the law applicable to **multistate class
> actions** may implicate both predominance and manageability
> concerns.' *Id*. at *4 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241,
> 1261, 1269 (11th Cir. 2004)).  However, courts have recognized
> that '[w]hen viewed **in the light of Rule 23, claims arising from
> interpretations of a <u>form</u> contract appear to present the classic
> case** for treatment as a class action, and breach of contract cases
> are routinely certified as such.' *Kleiner v. First Nat'l Bank of
> Atlanta*, 97 F.R.D. 683, 692 (N.D. Fa. 1983) (citations omitted).

> Here, Plaintiffs have alleged that the A-30 and A-70 form policies
> are uniform in all fifty states and that the policy provisions
> pertaining to total loss replacement and defining ACV are the same
> in all fifty states.  As the Eleventh Circuit has recognized, the
> definition of 'breach of contract' does not differ from state
> to state[.]

(DE 69 at 17 (emphasis added).)  Thereafter, this District Court accepted the "reasoned analysis"

and recommendation of the Magistrate. (DE 79 at 6.) GEICO has now admitted identical Policy

language in at least forty (40) of the fifty (50) states.[28]  At a minimum, a 40-state class should be certified.

The *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997), case is directly on point. In *Leszczynski*, the Southern District of Florida certified a nationwide class of insureds pursuant to Fed. R. Civ. P. 23(a) and 23(b) against insurers, alleging the insurers had been "systematically denying all claims made by persons injured in accidents while they were occupants of MBCC leased vehicles." *Leszczynski*, 176 F.R.D. at 675.  The court concluded, "That the defendants may raise individual defenses to individual plaintiff's claims for money damages does not negate the common questions of coverage. Defendants' arguments to the contrary have been carefully considered."  *Id.* (noting also that if, in determining the coverage issue in the merits phase, individualized facts and legal issues assume predominance, the court will at that time consider decertifying the class).  Prejudging the merits at the class certification stage, however, is improper. *See, e.g., Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1234 (11th Cir. 2016) ("the district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied'") (quotation omitted).

In short, the same Rule 23 analysis set out above as to the Florida classes applies with equal force here. Plaintiffs have standing because they suffered an injury-in-fact due to GEICO's breach of the uniform insurance Policies, and are adequate representatives with typical claims because they have the same interests as all GEICO insureds who were likewise denied title and tag fees owed to them under the "form" insurance Policies. These breach of contract legal issues and uniform Policies are common across the nationwide (or, at least, 40-state) class. And the relatively small title and tag transfer fees in each state (*see* Exh. K; Exh. S) make adjudication as a class

---

[28] GEICO still has not produced the policies requested in discovery, and Plaintiffs would like to review that evidence as to the other ten (10) other states.

action a superior method of redressing GEICO's wrongdoing for the members of the class. Finally, even if there are some individual issues related to defenses or damages, it is well-settled, as set out above, that these individual issues do not preclude class certification where they do not predominate over the common issues to the class. Here, there can be no question that the uniform breach of a "form" contract is the dominating common issue across this class of insureds who were not paid title or tag fees despite paying a premium for (and being promised) actual cash value (i.e., the replacement cost of their vehicle) in the event of a total loss.

**B.** **In the Alternative, A Nationwide "Issue Class" Should Be Certified Pursuant to Rule 23(c)(4).**

Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to a particular issue." Fed. R. Civ. P. 23(c)(4). At a minimum, the Nationwide Class should be certified as an "issue class" to determine the proper construction of GEICO's uniform insurance Policy language. This simple issue is tailormade for Rule 23(c)(4) treatment. The Court has the discretion to certify a nationwide or multi-state Rule 23(c)(4) issue class now, and consider Rule 23(b)(3) nationwide or multi-state certification following merits discovery (if the Court wishes to evaluate more information).

## VII.    CONCLUSION

Plaintiffs respectfully request the Court grant class certification pursuant to Fed. R. Civ. P. 23 for the Florida and Nationwide (or Multi-State) classes set out above.

Dated this December 5, 2018.

By:   /s/ Bradley W. Pratt

Telephone: (404) 949-8118
Facsimile: (404) 949-8159
bradley@prattclay.com

Bradley W. Pratt
Florida Bar No. 0094300
Pratt Clay, LLC
4401 Northside Parkway
Suite 520
Atlanta, GA 30327

25

Tracy L. Markham
Florida Bar No. 0040126
**Avolio & Hanlon, P.C.**
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlm@avoliohanlonfl.com

Andrew Lampros
**Hall & Lampros, LLP**
600 Galleria Parkway
Suite 990
Atlanta, Georgia 30309
Telephone: (404) 876-8100
alampros@hallandlampros.com

Christopher J. Lynch
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com

Christopher Hall
**Hall & Lampros, LLP**
600 Galleria Parkway
Suite 990
Atlanta, Georgia 30309
Telephone: (404) 876-8100
chall@hallandlampros.omc

Edmund A. Normand
/s/ Jacob L. Phillips
**Normand Law PLLC**
P.O. Box 140036
Orlando, FL 32814
Telephone: (407) 603-6031
Facsimile: (509) 267-6468
Ed@EdNormand.com
jacob@ednormand.com

Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 5th day of December, 2018, I electronically filed the foregoing PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW with the Clerk of the Court using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record on the service list.

*/s/ Jake Phillips*
**Jacob Phillips**
**Florida Bar No.: 0120130**
<u>**SERVICE LIST**</u>

**Christopher J. Lynch**
**Christopher J. Lynch, P.A.**
**6915 Red Road, Suite 208**
**Coral Gables, Florida 33143**
**Telephone: (305) 443-6200**
**Facsimile: (305) 443-6204**
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com
*Attorney for Plaintiffs*

**Tracy L. Markham**
**Florida Bar No. 0040126**
**Avolio & Hanlon, P.C.**
**2800 N 5th Street, Suite 302**
**St. Augustine, Florida 32084**
**Phone: (904) 794 7005**
**Facsimile: (904) 794 7007**
tlmarkhamlaw@gmail.com
*Attorney for Plaintiffs*

**Andrew Lampros**
**Hall & Lampros, LLP**
**1230 Peachtree St. NE**
**Suite 950**
**Atlanta, Georgia 30309**
**Telephone:  (404) 876-8100**
alampros@hallandlampros.com
*Attorney for  Plaintiffs*

**Edmund A. Normand**
**Jacob L. Phillips**
**Normand Law PLLC**
**P.O. Box 140036**
**Orlando, FL 32814**
**Telephone: (407) 603-6031**
**Facsimile: (509) 267-6468**
Ed@EdNormand.com
jacob@ednormand.com
*Attorney for  Plaintiffs*

**Kymberly Kochis (*pro hac vice*)**
**Alexander Fuchs (*pro hac vice*)**
**Eversheds Sutherland (US) LLP**
**The Grace Building, 40th Floor**
**1114 Avenue of the Americas**
**New York, NY 10036**
**Telephone: (212) 389-5068**
**Facsimile: (212) 389-5099**
kymberlykochis@eversheds-sutherland.com
alexfuchs@eversheds-sutherland.com
*Attorneys for Defendants*

**Susan B. Harwood**
**Kaplan Zeena LLP**
**2 South Biscayne Boulevard**
**One Biscayne Tower, Suite 3050**
**Miami, FL 33131-1806**
**Telephone: (305) 530-0800**
**Facsimile: (305) 530-0801**
**Facsimile: (407) 648-1376**
SusanHarwood@kaplanzeena.com

27