**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MAURICE JONES, ANTHONY C. COOK and MICAH BELLAMY,

    Plaintiffs,

v.                                                 Case No: 6:17-cv-891-Orl-40LRH

GOVERNMENT EMPLOYEES INSURANCE COMPANY and GEICO GENERAL INSURANCE COMPANY,

    Defendants.
_____

ANTHONY LORENTI and ASHLEY BARRETT, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.                                                 Case No: 6:17-cv-1755-Orl-40LRH

GEICO INDEMNITY COMPANY,

    Defendant.
_____/

## **<u>ORDER</u>**

This cause comes before the Court without oral argument on the parties' cross-motions for summary judgment (Docs. 164, 165) and the responses and replies thereto (Docs. 171, 178–80). Upon consideration, Plaintiffs' motion is due to be granted, and Defendants' denied.

I.  **BACKGROUND**

Plaintiffs, Ashley Barrett, Micah Bellamy, Anthony Cook, Maurice Jones, and Anthony Lorenti, bring this action on behalf of themselves and a certified class against GEICO[1] for breach of contract. (Docs. 47, 118).

The parties agree to the essential facts. Each named Plaintiff was insured by a GEICO Form A30-FL (03-11) policy (hereinafter the "**Policy**")[2] when their vehicles were involved in an accident. (Doc. 172, ¶ 1; *see also, e.g.*, Doc. 164-2). Each Plaintiff submitted claims to GEICO and their vehicles were declared a total loss. (Doc. 172, ¶ 24).

The Policy provisions at issue in this case come from Section III, entitled "PHYSICAL DAMAGE COVERAGES, Your Protection For Loss Or Damage To Your Car." (*E.g.*, Doc. 164-3, pp. 19–23). The Policy sets out out GEICO's obligation to pay insureds in the event of a covered loss as follows:

> ***Comprehensive*:**
> 
> 1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*.
>
> ***Collision*:**
>
> 1. We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible.

---

[1] The term "**GEICO**" refers to the named Defendants, Government Employees Insurance Company and Geico General Insurance Company.

[2] During the relevant period, GEICO used only Forms A30-FL (03-11) and A70-FL (03-11)—which have materially identical terms with respect to the issues involved in this case—for Florida automobile insurance policies. (Doc. 165-6, 75:20–76:4; Doc. 165-8, p. 5).

(Doc. 164-3, pp. 13–14). "**Loss**" is defined as "direct and accidental loss of or damage to" the insured vehicle. (Doc. 164-2, p. 20; Doc. 172, ¶ 17). GEICO's "loss" liability is limited as follows:

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:
1. Is the *actual cash value* of the property at the time of the *loss*;
2. [Is] the prevailing competitive price . . . at the time of *loss* . . . to repair or replace the property . . . with other of like kind and quality . . . .

(Doc. 172, ¶ 16).

"**Actual Cash Value**" is defined as "the replacement cost of the [insured vehicle] less depreciation or betterment."[3] (Doc. 164-2, p. 19; Doc. 172, ¶ 18). Actual cash value and betterment were to be determined at the time of the covered loss. (Doc. 172, ¶ 19).

During the relevant period, GEICO had a uniform policy of not paying title fees or license plate transfer fees in Florida total loss claim settlements. (*Id.* ¶¶ 21–23). Each of Plaintiffs' claims in this action stem from total loss claims settled by GEICO that did not include compensation for title or license plate transfer fees. (*Id.* ¶¶ 24, 26).[4] Plaintiffs contend that GEICO breached its contracts with them and the class by failing to pay title fees or license plate transfer fees as part of actual cash value payments after total losses. (Docs. 47, 118).

---

[3] "**Betterment**" means "improvement of the auto or property to a value greater than its pre-loss condition." (Doc. 164-2, p. 19). "**Depreciation**" means "decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes." (*Id.* at p. 20).

[4] The amounts GEICO paid insureds to settle total loss claims were calculated by CCC Information Services Inc. (*Id.* ¶ 25).

3

The parties each move for summary judgment. With briefing complete, the matter is ripe.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S. at 322–23. Also, "[t]he court need consider only the cited materials" when resolving a

4

motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam).[5]

## III. DISCUSSION

The issues before the Court are straightforward. Both sides move for summary judgment on Plaintiffs' breach of contract claims, with only the breach element in dispute. (Docs. 164, 165). Essentially, if the contract requires GEICO to pay title fees and license plate transfer fees as components of loss in the event of a total loss, Plaintiffs are entitled to summary judgment; if not, GEICO is entitled to summary judgment.

To prevail on a breach of contract claim, the plaintiff must prove that a valid contract was materially breached, causing damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). The following principles guide the Court's interpretation of the contracts at issue here:

> [I]nsurance contracts are to be construed in a manner that is "reasonable, practical, sensible, and just." Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people. Provisions that exclude or limit the liability of an insurer are construed more strictly than provisions that provide coverage. If those provisions are reasonably susceptible of more than one meaning, they are ambiguous and construed in favor of the insured. That rule applies if a genuine inconsistency, uncertainty, or ambiguity in meaning remains after a review of the plain language.

*U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.*, 279 F. App'x 879, 881 (11th Cir. 2008) (per curiam) (citations omitted).

Here, the parties disagree over the extent of GEICO's liability to insureds in the event of loss. The starting point for this analysis is, of course, the Policy, which limits

---

[5] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

GEICO's loss liability to "actual cash value" (or "**ACV**"), which is defined as "the replacement cost of the [insured vehicle] less depreciation or betterment." (Doc. 164-2, p. 19; Doc. 172, ¶ 18).[6] Courts have found that replacement cost includes items such as a contractor's overhead and profit, sales tax, and fees where it is "reasonably likely" that the insured would incur these costs if he or she repaired or replaced the property. *See, e.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305–06 (11th Cir. 2008).

Two recent decisions bear directly on the issues before the Court. In *Roth v. GEICO General Insurance Co.*, No. 0:16-62942-Civ, Doc. 247 (S.D. Fla. June 13, 2018) (hereinafter "*Roth*"), a parallel lawsuit involving materially identical contract claims and insurance language, the court found title transfer fees were a component of ACV because "title transfer fees are mandatory [fees] necessarily included in the replacement costs of a total loss vehicle." *Id.* at 7–9; *see also* Fla. Stat. § 319.34. What's more, the court granted the plaintiffs' motion for summary judgment on their breach of contract claim, finding the defendants' failure to pay title transfer fees in cases of total loss amounted to material breach of contract. *Roth*, at 9. A similar result obtained in *Sos v. State Farm Mutual Automobile Insurance Co.*, No. 6:17-cv-890-Orl-40LRH, Doc. 159 (M.D. Fla Mar. 13, 2019) (hereinafter "*Sos*"). In that case, the Court found that title transfer fees were a component of ACV because they are "costs an insure[d] is reasonably likely to incur in replacing his leased vehicle." *Sos*, at 9–11; *see also Bastian v. USAA*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (holding that sales tax is an "unavoidable component of the

---

[6] This definition comports with decisions from Florida courts defining ACV for contracts that left the term undefined. *See, e.g., Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 443 (Fla. 2013).

cost to buy a replacement vehicle," and thus a component of ACV). The Court agrees with these decisions and finds that title transfer fees are a component of ACV.[7, 8]

The Court next turns to the question whether license plate transfer fees are included in ACV. The short answer: yes. Florida law requires that every car driven on roads in the state be registered in Florida. Fla. Stat. §§ 320.02(1), 320.0605. However, the statute provides thirty days within which to comply with the registration requirement. §§ 320.02(13)(b), 320.0605. The minimum cost to transfer a tag from a totaled vehicle to a replacement is $4.10. (*See, e.g.*, Doc. 164-24, p. 8; Doc. 164-29, p. 4). As with title transfer fees, license plate transfer fees are "mandatory [fees] necessarily included in the replacement costs of a total loss vehicle." *See Roth*, at 9; *Sos*, at 9–11. They must be paid within thirty days of the purchase of a replacement vehicle, and thus easily meet *Mills*' "reasonably necessary" threshold. *See* 511 F.3d at 1305–06.[9] Having found that

---

[7] For its part, GEICO contends title transfer fees are not part of ACV because "[p]urchasing a vehicle and paying title fees are two separate transactions that *could* occur more than a month apart." (Doc. 164, pp. 13–14). This argument is unpersuasive for two reasons: (i) it is devoid of legal support, and (ii) it relies on the questionable premise that a fee necessarily incurred to replace a totaled vehicle is somehow not a replacement cost because an arbitrary amount of time *could have legally passed* between purchase of the replacement vehicle and payment of the fee.

[8] The minimum fee to transfer an automobile title for owned vehicles in Florida is $75.25. *Sos*, at 10; (Doc. 165-3, p. 9).

[9] Again, GEICO makes the argument that tag transfer fees are not part of replacement cost because (i) the fees are incurred after purchasing a replacement vehicle, and (ii) the thirty-day grace period. (Doc. 164, p. 14). Again, this technical argument is unpersuasive and contradicts binding precedent. *See supra* note 7.

GEICO also contends that tag transfer fees are not part of replacement cost because individuals who purchase a replacement vehicle and never drive it on Florida roads need not obtain a Florida registration. (Doc. 164, p. 14). The Court rejects this argument, lest the exception swallow the rule. *Mills* instructs that ACV includes costs an insured would be "reasonably likely" to incur in replacing insured property. Plaintiffs

7

title and tag transfer fees are components of ACV, the Court further finds that GEICO materially breached its contracts with Plaintiffs by failing to include these fees in total loss claim settlements.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 164) is **DENIED**;
2. Plaintiffs' Motion for Summary Judgment (Doc. 165) is **GRANTED**;
3. Plaintiffs, Ashley Barrett, Micah Bellamy, Anthony Cook, Maurice Jones, and Anthony Lorenti, are entitled to damages in the amount of $79.35.
4. Class members are each entitled to damages in the amount of $79.35.
5. Within sixty (60) days from the expiration of the deadline to opt out of the class, the parties shall jointly submit a proposed final judgment to the Court.
6. The trial in this matter is **CANCELLED**.

**DONE AND ORDERED** in Orlando, Florida on July 19, 2019.

*[signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

are Florida residents bringing claims on behalf of a class of Florida insureds, and it is thus "reasonably likely" they would incur Florida tag transfer fees in replacing a total loss vehicle.