IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY COOK, MICAH BELLAMY, and          CASE NO.: 6:17-cv-891-ORL- 40KRS
MAURICE JONES, As Personal Representative
and on behalf of the Estate of Kailyn Jones,
each individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
GENERAL INSURANCE COMPANY,

      Defendant.

_____/

ANTHONY LORENTI and ASHLEY BARRETT,          CASE NO.: 6:17-cv-1755-PGB-
Individually and on behalf of all others similarly          40DCI
situated,

      Plaintiffs,

v.

GEICO INDEMNITY COMPANY,

      Defendant.

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiffs Anthony Cook, Maurice Jones, Micah Bellamy, Anthony Lorenti, and Ashley Barrett (together "Plaintiffs"), individually and on behalf of the certified class, respectfully request that the Court preliminarily approve the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto (the "Settlement Agreement"), attached as Exhibit A and incorporated herein by reference, and enter the proposed order granting preliminary approval of the settlement, which is attached as Exhibit 1 to the Settlement Agreement.

## I.     CONCISE STATEMENT OF THE RELIEF SOUGHT

Plaintiffs file this motion requesting that the Court preliminarily approve a class action settlement between Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (together "Defendants" or "GEICO") and Plaintiffs and the proposed Settlement Class.

This Court previously granted Plaintiffs' Motion for Class Certification, and certified a class of Florida residents insured for private passenger auto physical damage coverage by Defendants, and who suffered a first-party total loss of a covered owned (i.e., not leased) vehicle at any time during the five years prior to the filing of the lawsuit (i.e., May 17, 2012), and the date of class certification (i.e., April 4, 2019), and whose claims were adjusted by Defendants as a total loss and resulted in a payment that did not include full title and/or license plate transfer fees. *See* Doc. 152 (Class Certification Order).  The Settlement Class extends the previously certified class to include additional insureds who suffered a total-loss after the date of the certification Order and through the date of Preliminary Approval of the settlement.

Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement Class, and enter an Order of preliminary approval by entry of the proposed preliminary approval Order. The Settlement Agreement is attached as Exhibit A to this Motion, and the proposed preliminary approval Order is attached as Exhibit 1 to the Settlement Agreement.

The proposed preliminary approval Order approves the form of notice to be given to the Settlement Class, establishes a schedule and process for the submission of any objections or requests for exclusion from the Settlement Class, and provides for a fairness hearing to be held by the Court. The parties anticipate requesting final approval of the Settlement in advance of the fairness hearing.

## II.    STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after approximately 30 months of litigation and following two separate mediations.  The first mediation occurred on December 17, 2018 before mediator Richard Reinhart, and the second mediation occurred on September 13, 2019 before mediator Rodney Max.  The Settlement Agreement was the product of substantial, additional negotiations between the parties following the second mediation, facilitated by mediator Rodney Max.  *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

On October 29, 2019, the parties filed a Joint Notice of Settlement and Request to Stay Existing Deadlines and to Set Deadline for Filing Motion for Preliminary Approval. *See* Doc. 191. The Court granted this joint request on October 30, 2019. *See* Doc. 192. The Parties subsequently requested additional short extensions to finalize the details and format of the Settlement Agreement and exhibits, which were also granted by the Court. *See* Doc. 193, 194, 195, and 196.

The Parties have entered into the Settlement Agreement for the purpose of providing to members of a Settlement Class who make a valid claim payment of title transfer fees and tag transfer fees ("Transfer Fees") in the full amount alleged to be owed in the respective operative Complaints to total-loss insureds. *See* Doc. 71 (Second Amended Complaints by Plaintiffs' Lorenti and Barrett), 118 (Third Amended Complaint from Plaintiffs' Jones, Cook, and Bellamy). This Court previously granted summary judgment in favor of Plaintiffs and awarded Transfer Fees in the amount of $79.35 to Plaintiffs and the previously certified class. Doc. 185 (Summary Judgment Order). The Settlement Agreement provides relief of this amount plus an additional $0.50 in branch fees, for a total of $79.85 to Plaintiffs and members of the Settlement Class.

### III.   MEMORANDUM OF LEGAL AUTHORITY

#### A. Background.

This case involves allegations that Defendants breached private passenger auto insurance policies issued to Plaintiffs and similarly-situated Florida insureds by failing to include the full amount of Transfer Fees in payments for covered total loss autos. *See* Doc. 71, 118. Plaintiffs alleged that GEICO's insurance policies required payment of "actual cash

value" ("ACV") upon the total loss of a covered auto and defined ACV as the "replacement cost of the auto."  Plaintiffs also alleged such Transfer Fees are necessary costs to replace an auto in the State of Florida, and are therefore components of ACV and required to be paid by Defendants to their insureds.  Exhibit B ("Phillips Decl.") at ¶ 5.  Defendants' practice and procedure in Florida was to generally not include Transfer Fees in calculating and issuing ACV payments to insureds following the total loss of a covered auto.  *Id.* at ¶ 6.  This class action was filed to recover such unpaid Transfer Fees from Defendants on behalf of insureds. Plaintiffs alleged that to transfer title in an auto, the State of Florida imposes a minimum fee of $75.25.  *Id.* at ¶ 7.  In addition, Plaintiffs alleged that to transfer registration of an auto, the State of Florida imposes a minimum fee of $4.60 (including a $0.50 branch fee) in all but two counties during the relevant time-period.  *Id.*[1]

### B.  Litigation and Discovery History.

This consolidated class action has been contested at every stage.  Motion practice included multiple motions to dismiss, multiple motions to strike pleadings, a motion to strike expert testimony, competing motions for summary judgment, motions to compel, a motion for class certification, and a motion to reconsider class certification.  The parties took over 16 depositions, including class representatives, corporate representatives, and expert witnesses.

---

[1] Two counties in Florida did not mandatorily impose a component of the tag transfer fee, the $0.50 branch fee, for a portion of the relevant time period.  Thus, it was theoretically possible for insureds in those counties to transfer registration at a branch that did not include the $0.50 fee (even though many insureds pay the seller of the vehicle, who then remits the fees to the state, and thus includes the $0.50 branch fee).  Each of these two counties changed their practice during the relevant time period, and began imposing the $0.50 branch fee.  Defendants have agreed to include this branch fee in their settlement payment to members of the Settlement Class as part of the Settlement Agreement.

Plaintiffs reviewed over 43,000 pages of documents produced by Defendant.  Plaintiffs served

five sets of interrogatories, six sets of document requests, and requests for admission. *Id.* at ¶

10.   Plaintiffs analyzed millions of lines of data involving over 270,000 total loss claims.

Martin Decl. at ¶ 8.  Class notice has been completed relating to over 250,000 claims.  Phillips

Decl. at ¶ 12.

### C. The Proposed Settlement.

In the Settlement Agreement, Defendants agree to:  (1) make payment of $79.85

(consisting of $75.25 in title transfer fees, $4.10 in tag transfer fees, and $0.50 in branch fees,

(which is an additional component of the tag transfer fee)), plus prejudgment interest at the

applicable rate, to each member of the Settlement Class who submits a valid claim pursuant to

the conditions set forth in the Notice provisions of the Settlement Agreement; and (2) change

their practice and procedure, for the benefit of their insureds in the State of Florida, to include

Transfer Fees of at least $79.85 on all first-party total loss claims upon approval of the

settlement.  Phillips Decl. at ¶ 23.  This promise to include Transfer Fees on future claims is

effective upon entry of the proposed preliminary approval Order.

### 1.    Approximate $61.90 Million Monetary Value and 100% Recovery.

Plaintiffs calculate that the monetary value of all claims under the terms of the

Settlement Agreement for Transfer Fees and prejudgment interest is approximately $ 61.90

million, which includes: (1) approximately $27.54 million in cash available for claimants; (2)

$28.76 million in prospective relief from GEICO's change in practice over a five-year period;

and (3) $5.6 million in attorneys' fees if approved by the Court.[2]  Ex. C ("Martin Decl.") at ¶ 10.

> ### 2.    Final Resolution of Case While Issues Pending Before Eleventh Circuit and With Conflicting Florida Case Law.

This settlement provides final resolution and 100% relief concerning claims for which there presently is a court split on claim viability.   While the majority of cases in Florida to consider Plaintiffs' claims have held in favor of the respective plaintiffs – three cases on summary judgment (including one case in front of this Court) and several others on motions to dismiss – some courts have found that title transfer fees are not owed under an ACV insurance contract.  Phillips Decl. at ¶ 12.  For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance company's motion to dismiss claims for title and license transfer fees.  Likewise, in *Sigler v. GEICO Casualty Co.*, No. 1:18-cv-01446, 2019 WL 2130137, at **3-4 (C.D. Ill. May 15, 2019), a federal district court in Illinois granted GEICO's motion to dismiss claims for title transfer fees. Plaintiffs believe *Schenck* and *Sigler* were wrongly decided, and note that *Sigler* applies Illinois (not Florida law).  But Plaintiffs admit that the authority on the question central to this case is split, and a similar question is currently pending in an appeal before the Eleventh Circuit, in *Roth v. GEICO Gen. Ins. Co.*, S.D. Fla. No. 16-62942, that could affect the viability of the present case, and the success Plaintiffs and the Class have earned in this case to date.

---

[2] This amount is reached by multiplying the class size (approximately 293,800 class claims) by $79.85 in Transfer Fees, and then adding prejudgment interest.  Plaintiffs applied the prejudgment interest rate set by the State of Florida during the time relevant to each individual claim's "date of loss" (which date is contained within Defendants' data), including any quarterly changes during the time period. Martin Decl. at ¶ 14.

This risk is real and strongly supports the proposed settlement (which includes an obligation to pay all Settlement Class members' claims properly made with full value of Transfer Fees). Phillips Decl. at ¶¶ 15-18.

### 3.    The Settlement Provides an Expanded Class.

The Settlement provides an expanded settlement class and prospective relief. The certified settlement class includes (1) all Government Employees Insurance Company and GEICO General Insurance Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period May 17, 2012 through April 4, 2019 that resulted in a total loss claim payment; and (2) all GEICO Indemnity Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period October 10, 2012 through April 4, 2019 that resulted in a total loss claim payment. The expanded class includes those same class members but *extends* the class period through and including the date on which the proposed preliminary approval Order is entered. The expanded class period provides relief for approximately 37,477 additional claims and $2.96 million in settlement funds. Martin Decl. at ¶ 15.

### 4.    The Settlement Provides Valuable Prospective Relief.

The settlement includes the requirement that GEICO change its business practices in the state of Florida and begin paying Transfer Fees on first-party total loss claims under the Policies of insurance at issue until and unless the law is clearly established permitting GEICO to withhold such fees or GEICO modifies its policy language. The value of this relief over a five-year period is $28.76 million (approximately 360,195 claims). Martin Decl. at ¶ 9. The

value of this prospective relief over a one-year period is $4.88 million (approximately 61,121 claims).  *Id.*

### 5.      The Settlement Provides a Limited Release.

The settlement agreement provides a limited release of claims and clarifies the limited res judicata effect of this case only to the specific Transfer Fees at issue in this lawsuit and the Released Claims as defined in the settlement agreement.  The settlement agreement preserves all other claims based on actual cash value or property damage that may be asserted by class members except to the extent that such claims seek the Transfer Fees released by the settlement agreement.

### 6.      The Settlement Provides for Robust Notice and Simple and Easy Claims Procedure.

The settlement provides a robust and substantive notice plan.  Notice by mail will be provided with simple, easy to understand, detachable postage prepaid return mail claim forms. Multiple email notices (including reminder notices for a total of three emails) also will be provided.  Each of the email notices will enable class members to "click through" to make a claim on a prefilled claim form on the settlement website.  Phillips Decl. at ¶ 24.[3]  Settlement Class Members can request exclusion from the Settlement Class or object to the Settlement. *Id*. at ¶ 25; *see Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

---

[3] The Class Administrator, who has designed and implemented hundreds of class-action Notice programs, confirms that sending more than one email is perhaps the most effective way of guaranteeing a higher claims' rate.  Phillips Decl. at ¶ 24.

The Parties have also agreed to a streamlined, simple, and straightforward claims' process.  For the convenience of members of the Settlement Class in submitting claims, Defendants will extract available information from its claim records concerning the vehicle make, model and year, and the date of loss, to pre-fill information on the claim forms.  *Braynen*, 2015 WL 6872519, at *18; *see* Settlement Agreement at Exhibits 4 and 5.  No additional documentation is required other than each Settlement Class members' declaration that the information is correct to the best of their knowledge, and affirming that the Settlement Class member believes he/she was a GEICO insured who suffered a total-loss during the Settlement Class period who did not receive the Transfer Fees.  Phillips. Decl. at ¶ 24.  The pre-filled mailed claim forms need only be signed and placed in the mail (the claim forms are addressed with postage prepaid).  The claims process will require only the submission of a simple, almost entirely pre-filled form – and nothing else – for each Settlement Class member submitting a claim to receive payment of a flat amount from the defendant entity with whom the Settlement Class member will be familiar and will quickly recognize.  *See Wilson v. Everbank*, 2016 WL 457011, at *9 (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").  Settlement Class members also can access a pre-filled electronic claim form on the website by providing a claim ID (which is provided in all of the mailed and email notices).  This will allow Settlement Class members to electronically submit their claims with relative ease.

This type of settlement structure is regularly approved by courts in this Circuit.  *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1,

2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Bd. of Trs. of Lake Worth Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2012 WL 12906569 (M.D. Fla. July 30, 2012); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 U.WL 7184039 (S.D. Fla. Dec. 17, 2014).

### 7. Attorneys' Fees are Reasonable and Well Below the Eleventh Circuit Benchmark.

The proposed Settlement Agreement further provides that Class Counsel may make an application for fees and costs not to exceed $5,600,000 in attorneys' fees and up to $225,000 in costs. *See* Settlement Agreement at ¶ 44.[4] The attorneys' fees are 16.9% of the cash benefit to the class (not including prospective relief), 9.1% of the benefit to the class when including five years of prospective relief, and 14.7% of the benefit to the class when including only one year of prospective relief. Martin Decl. at ¶¶ 10-13; *see also Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at **10-11 (S.D. Fla. Nov. 20, 2017) (court considers benefit to class as maximum settlement cash fund value and injunctive relief when applying federal benchmark of 20-30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342–43 (S.D. Fla. 2007) (same). These percentages all fall well below the Eleventh Circuit benchmark for approving fees of between 20-25% of the benefit to the class. *See Faught v. American Home*

---

[4] The Parties negotiated settlement of the merits claims first, and only after agreement was reached began discussion of the question of attorneys' fees, costs, and incentive award. Ex. D, Declaration of mediator Rodney Max ("Max Decl.") at ¶ 13.

*Shield Corp.*, 668 F.3d 1233, 1242 ("[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.  And this Court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims.") (citations and quotations omitted).[5]

### 8.    The Settlement Provides Reasonable Service Awards.

The proposed Settlement Agreement also provides that class counsel may make an application for incentive awards to each of the five named Plaintiffs as compensation for their service as class representatives, not to exceed $10,000 per class representative. Settlement Agreement at ¶ 44. Any fees, costs, and incentive awards issued by the Court will be paid separately by Defendants pursuant to the terms of the Settlement Agreement and will not reduce the amount recoverable by Settlement Class members, nor impact their recovery in any way.  Phillips Decl. at ¶ 28; *see also, e.g.*, *Swift v. BancorpSouth Bank*, 2016 WL 11529613, at *13 (N.D. Fla. Jul. 15, 2016) (approving service award of $10,000 and noting numerous cases approving awards of similar amounts and up to $300,000); *Rodriguez v. Mears Destination Servs.*, 2018 WL 8061811 (M.D. Fla. Sep. 4, 2018) (approving an incentive award of $10,000).[6]  Each of the five named Plaintiffs sat for a lengthy deposition, answered extensive discovery, responded to requests for production including locating numerous documents, participated in both mediations for a total of approximately 15 hours, attended at least one of

---

[5] Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit.  *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.,* 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003); *David v. American Suzuki Motor Corp.,* 2010 WL 1628362 at *8 n.14 (S.D. Fla. Apr. 15).
[6] Plaintiffs' counsel reviewed the docket entry attachment for this *Rodriguez* order (Doc. 285-1) and confirmed the incentive awards of up to $10,000.

the mediations in person, provided input to counsel during both mediations (and after the mediations) relating to settlement negotiations, consistently followed up with counsel on major issues and pleadings, requested updates, sought to understand all legal and factual issues, and stayed up-to-date on relevant rulings and orders from the Eleventh Circuit.  Phillips Decl. at ¶ 35.  Several of the Plaintiffs took time off from work and traveled two or three hours to attend mediation in person.

### D.  Settlement Class Certification Is Warranted.

In deciding whether to grant preliminary approval, some courts make a preliminary inquiry into whether the requirements of Fed. R. Civ. P. 23(a) and at least one of the subdivisions of Rule 23(b) for certification of a class for settlement purposes are satisfied.  *See, e.g.*, *Legg v. E-Z Rent a Car, Inc.*, 2015 WL 10818745, at **1-2 (M.D. Fla. May 28, 2015) (Byron, J.) (addressing Rule 23 factors in preliminary approval Order).  Each of those requirements are satisfied here for settlement purposes,[7] for the Settlement Class, defined as:

> All Florida policyholders who were insured for private-passenger auto physical damage coverage by Government Employees Insurance Company or GEICO General Insurance Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from May 17, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees; and all Florida policyholders who were insured for private-passenger auto physical damage coverage by GEICO Indemnity Company

---

[7] Defendants' agreement to certification of a class is for settlement purposes only, and this agreement is without prejudice to their ability to contest or appeal certification of a class for litigation purposes in the event the Court does not approve settlement. While the Parties jointly agree to certification of the Settlement Class under the terms of the Agreement, Defendants do not agree with Plaintiffs' interpretation of Rule 23 nor with Plaintiffs' specific assertions in this Motion.

who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from October 10, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees.

Excluded from the Class are: (1) GEICO, all present or former officers and/or directors of GEICO, the Neutral Evaluator, Class Counsel, and a Judge of this Court; (2) Claims for which GEICO received a valid and executed release; (3) Claims relating to leased vehicles; (4) Claims where GEICO paid full Title, Tag and Branch Transfer Fees; and (5) Claims for first-party property damage which were or currently are the subject of initiated appraisal and/or arbitration proceedings.

The proposed Settlement Class definition is substantively identical to the Class certified by this Court (*see* Doc. 152 at 3) – but it is larger.  Rather than cutting off the class scope at the date of the previous class certification (April 4, 2019), the Settlement Class extends through the date on which preliminary approval is granted. The reasons this Court previously certified a class in this case apply to the proposed Settlement Class here.

Both threshold requirements for class certification – Article III standing and class definition that includes ascertainable members – are satisfied here. *See* Doc. 152 at 4 ("[T]he Court's independent review finds that named Plaintiffs have standing.").  To satisfy Article III, a plaintiff must allege an injury-in-fact, fairly traceable to the defendant's conduct, and redressable by a favorable judicial decision.  *Miccosukee Tribe of Indians v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1228 (11th Cir. 2000).  By alleging Defendants breached uniform policies of insurance by not including payment of Transfer Fees in the amount of

$79.85, Plaintiffs clearly established a redressable injury-in-fact traceable to Defendants. Standing is established.

Further, the Settlement Class is adequately defined and clearly ascertainable. The Settlement Class definition is clear, precise, based on objective criteria, and, because it only includes insureds not already paid Transfer Fees, it is not overbroad.  *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (class definition should not be overly broad, amorphous, or vague).  Class members are ascertainable by reference to objective criteria in an administratively feasible way.  *See* Doc. 152 at 6 ("Plaintiffs met their burden of showing that the class can be ascertained by objective criteria in an administratively feasible way.").  The previously-certified Class numbered over 250,000 insureds.   Phillips Decl. at ¶ 12.  GEICO agrees to provide data concerning additional Settlement Class members who suffered total-losses since April 4, 2019, which number (including estimated total-losses through December 18, 2019) 37,477 additional insureds. *Id*. at ¶ 31; Martin Decl. at ¶ 15.

Second, the requirements of Rule 23(a) are established.

**Numerosity**: The numerosity requirement of Rule 23(a)(1) is satisfied because the Parties have identified the approximately 293,800 class claims constituting the Settlement Class. Martin Decl. at ¶ 14.  This number satisfies the numerosity requirement.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also* Doc. 152 at 6-7 (finding numerosity was met as to the smaller, previously certified class).  Numerosity is established.

**Commonality**: Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the

14

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, the commonality requirement is satisfied because there is a common question of law concerning whether Defendants' uniform policy language requires payment of Transfer Fees as components of ACV. Philips Decl. at ¶ 32. This issue applies to all claims of the Settlement Class members, and its resolution on appeal would resolve an issue central to every class member claim. *See* Doc. 152 at 7-8 (finding as to the previously certified class that "[c]ommonality is met."). Extending the class scope to include additional class members in the Settlement Class does not change the Court's prior analysis. Commonality is established.

**Typicality**: Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). Here, the typicality requirement is satisfied because Plaintiffs' claims are based on precisely the same legal theory and "practice and procedure" as every Settlement Class Member, and because Plaintiffs and every Settlement Class member were insured under materially identical form insurance policies. Phillips Decl. at ¶ 33; *see also* Doc. 152 at 9 (finding as to the previously certified class that, "[b]ecause the class members' claims are approximately identical and proving the named Plaintiffs' claims would necessarily prove claims class wide, typicality is met."). Typicality is established.

**Adequacy**: Rule 23(a)(4) requires that "the representative parties...fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class Counsel's

declaration demonstrates that Plaintiffs more than adequately performed their duties as class representative. Phillips Decl. at ¶ 35. Plaintiffs do not possess any conflict of interest with the Class Members. *Id.* at ¶ 36. The declaration of Class Counsel demonstrates they competently represented the previously certified class (including representing the class through successful class certification and summary judgment) and are qualified to represent the Settlement Class. *Id.* at ¶¶ 35-36; *see also* Doc. 152 at 11 (finding Plaintiffs and Class Counsel are adequate). Adequacy is established.

Finally, the requirements of Rule 23(b) are established. Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance**: The common question of whether ACV includes Transfer Fees as costs reasonably necessary to replace an auto in Florida predominates over any individual questions. *See, e.g.*, *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."). Even determination of damages presents a common issue, and does not include individual issues of proof, and class treatment would be foreclosed even if it did. *See Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016). As this Court held concerning the previously certified class, predominance is clearly established. *See* Doc. 152 at 12-13

("Predominance is easily met).  The presence of additional insureds does not change the Court's prior analysis or inject individual issues.  Predominance is established.

**Superiority**: As to the superiority factor, the proper analysis "considers the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 537-38 (11th Cir. 2017) (internal citations omitted).  Here, common issues are entirely central to the litigation, it is desirable and efficient to concentrate the identical claims in this forum, individual action is unrealistic given the relatively small damages amounts and Defendants' vast resources, and class treatment of the Settlement is manageable.  Doc. 152 at 15 (finding as to the previously certified class that "[r]eference to the Rule 23(b)(3) factors erases all doubt that superiority is met.").  Superiority is established.

### E.  Preliminary Approval Is Warranted.

Preliminary approval of a class action settlement "is not binding, and it is granted unless a proposed settlement is obviously deficient" and is appropriate where settlement falls within the range of reason and results from good faith negotiations.  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (internal citations omitted).  These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto.  *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, *14-15 (S.D. Fla. Aug. 24, 2016) (granting preliminary approval of proposed class action settlement where "the proposed settlement was made after mediation was conducted," "[t]he negotiations appear to have been made in good faith and there do not appear to be any obvious deficiencies," and the settlement amount "appears to be within the range of reasonableness").

As will be set forth in greater detail in the Motion for Final Approval – and as demonstrated by the attached Settlement Agreement – all six factors used by courts to evaluate the fairness and adequacy of a class action settlement strongly support approval here.  *See Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) (outlining the six factors). First, there was no fraud or collusion in the settlement.  To the contrary, the settlement negotiations were conducted at arm's length, and settlement was only reached following lengthy negotiations with assistance of an experienced and well-respected mediator, Rodney Max.[8]  Max Decl. at ¶ 12; Phillips Decl. at ¶ 20.

Second, complexity, expense, and likely duration (given Defendants' intention to appeal) support the settlement.  The legal issues presented in both class certification and merits questions in this case were enormously complex, and the parties have undergone and will continue to undergo enormous expense if litigation were to continue through appeal and any remand.

Third, the stage of the proceedings and amount of discovery completed support settlement.  Plaintiffs propounded and Defendants responded to extensive discovery in this case.  The Parties engaged in sophisticated data analysis, relied upon numerous expert witnesses, and Plaintiffs deposed corporate representatives and other company witnesses concerning the claims processes, procedures, and data systems.  In short, Plaintiffs fully

---

[8] *See, e.g.*, *Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."); *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (recognizing Rodney Max as "probably one of the top mediators in the country."); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

litigated the case, and gained a complete understanding of all issues in this litigation.  Phillips Decl. at ¶¶ 9-10.

Fourth, the Plaintiffs' probability of ultimate success on the merits supports settlement. The outcome of this case has been uncertain from the outset, and remains uncertain today. While Plaintiffs successfully certified a class of "owned" vehicle insureds and obtained summary judgment on the merits here, the same relief (as to "leased" vehicle insureds) is currently on appeal from *Roth v. GEICO Gen. Ins. Co.*, S.D. Fla. No. 16-62942, before the Eleventh Circuit.  In the *Roth* appeal, GEICO has taken the position that the *Roth* class should not have been certified, and that title transfer fees are not owed under materially identical insurance policies.[9]  GEICO's appeal is supported by two Amicus Curiae briefs filed on behalf of the U.S. Chamber of Commerce, the American Property and Casualty Insurance Association, and the Personal Insurance Federation of Florida.  Should GEICO prevail in the *Roth* appeal, it could negatively impact any relief for the previously certified class and Settlement Class in the instant case – and of course, the Eleventh Circuit could directly overturn any success in an appeal of this Action absent settlement.

Moreover, as set forth above, some other courts have found that title transfer fees are not owed under an ACV insurance contract.  For example, in *Schenck*, (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance company's motion to dismiss claims for title and license transfer fees.  As another example, in *Sigler*, 2019 WL 2130137, at *3 (C.D. Ill. May 15, 2019), the court granted GEICO's motion to dismiss claims for title

---

[9] On appeal, a summary judgment Order is subject to *de novo* review.  *See Curves, LLC v. Spalding County*, 685 F.3d 1284, 1288 (11th Cir. 2012).

transfer fees.  Plaintiffs believe that *Schenck* and *Sigler* were wrongly decided, and note that *Sigler* applied Illinois law.  The authority, however, on the question central to this case is split, and the risk that the Eleventh Circuit could disagree with this Court's holdings is real and strongly supports the proposed settlement.

Fifth, the range of possible recovery supports the settlement.  As noted, the Settlement Agreement provides for 100% of the relief requested, including prejudgment interest.  Each Settlement Class member who presents a valid claim during the claims process will be paid by Defendants full Transfer Fees.  This represents 100% of the relief requested; it is not a compromise amount that reduces the recovery to any Settlement Class member making a valid claim.  In fact, the amount of Transfer Fees set out in the Settlement Agreement is higher than the amount of such fees granted in this Court's Order granting summary judgment.  *Compare* Doc. 185 at 8 (awarding damages of $79.35 and no prejudgment interest) *with* Settlement Agreement at ¶ 32 (providing class members $79.85 and prejudgment interest).[10]  Finally, the Settlement Agreement requires Defendants to change their practice and procedure in Florida to pay full Transfer Fees going forward, such that future Florida insureds will received the benefit of this settlement by receiving these additional payments in the event of a total loss of their covered auto.  *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief than likely would have been secured at trial).

---

[10] The average amount for prejudgment interest provided to Settlement Class Members is $16.87.  Martin Decl. at ¶ 14.

Sixth, the opinions of the Class Counsel and the class representatives support settlement.[11]  It is the reasoned opinion of Class Counsel, experienced in complex class action litigation, that settlement is in the interest of the previously certified class and the Settlement Class, and eliminates the risk of proceeding with this litigation.  Phillips Decl. at ¶¶ 70, 73. Based on their evaluation, Plaintiffs and Class Counsel have determined that the terms and conditions of the Settlement Agreement are fair, reasonable, and in the best interests of Plaintiffs, the previously certified class, and the Settlement Class.  Likewise, the class representatives agree that the certainty of settlement at 100% value for all claims made and the future benefit to Florida insureds through Defendants' change in business practice significantly outweigh the risk of continued litigation.

Moreover, a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement."  *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (quotations omitted).  Defendants asserted and confirmed they would not settle the claim absent the claims made structure.  Settlement Agreement at ¶ 84. Courts find a defendant's refusal to settle absent a claims-made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable.  *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th

---

[11] The sixth factor includes analysis of the substance and amount of opposition, which is irrelevant until after Notice and the opportunity to request exclusion or object is provided.

Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016) (claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure).[12]   The question is not whether a claims made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms.  *See Casey*, 2014 2014 WL 4120599, at *3 ("[The] Court does not have the authority to impose a preferred payment structure upon the settling parties"); *Lee*, 2015 WL 5449813, at *25 ("a claims-made structured settlement is fair, reasonable, and adequate on its own terms").  Here, the elimination of very real risk in favor of payment of full damages is fair and reasonable.

---

[12] Moreover, even if Defendants had been willing to settle on a direct-pay model (they were not), this would have meant significantly less payment amount per class member than under a claims-made model in which 100% of requested damages are paid for each claim made. Plaintiffs and Class Counsel believe such a diminished settlement would not have been fairer to class members.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class settlement).  As the Southern District cogently explained, "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount."  *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015).  Plaintiffs' and Class Counsel have insisted on a Settlement Agreement requiring all Settlement Class Members will receive *multiple* notices and full and repeated opportunities to submit a claim.  Accordingly, it makes no sense to send a significantly smaller amount to all class members, including those who are insufficiently incentivized even by the availability of full damages, at the expense of those willing to take a few minutes (at most) to check a box and submit a simple claim.  Phillips Decl. at ¶ 73.

The Settlement Agreement removes the risk that class members will recover nothing due to an unfavorable ruling on appeal.  In exchange for removing such risk entirely, far from accepting a concomitant reduction in the potential damages, the Settlement Agreement provides *more* relief than awarded at summary judgment.  *Id.* (providing near-complete relief on a claims-made basis is "extraordinary" result); *Wilson*, 2016 WL 4570011, at *9 (same).  For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs respectfully submit that the Settlement Agreement is fair and reasonable to the previously certified class and the Settlement Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining and conforming to the dates set forth in the Settlement Agreement, which matches the proposed schedule included in the proposed preliminary approval Order (Exhibit 1 to the Agreement).[13]

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Website Notice Posted by Settlement Administrator | 60 days before the Fairness Hearing, but no less than 100 days from entry of the Preliminary Approval Order<br><br>April 22, 2020 (if Order is entered on January 13, 2020) |

---

[13] For the convenience of the court and solely for exemplary purposes, Plaintiffs include dates based on an assumed date for entry of an Order of Preliminary Approval of January 13, 2020. If the Court approves the timing and dates in the Settlement Agreement, the exemplary dates can be adjusted based on actual date of entry. For instance, if an Order is entered on January 8, 2020, each date in the Order can be listed as five days earlier than the exemplary dates listed herein, and so forth.

| 2 | Deadline for Settlement Administrator to mail out direct mail notice | 60 days before the Fairness Hearing, but no less than 100 days from entry of the Preliminary Approval Order ("Mail Notice Date")<br><br>April 22, 2020 |
|---|---|---|
| 3 | Deadline for Settlement Class Members to opt-out of the Agreement | 30 days after the Mail Notice Date set forth above<br><br>May 22, 2020 |
| 4 | Deadline for submission of Notice of Intent to object to agreement | 30 days after the Mail Notice Date set forth above<br><br>May 22, 2020 |
| 5 | Deadline for Settlement Class Members to file claims | 90 days after the Mail Notice Date set forth above<br><br>July 21, 2020 |
| 6 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, application for attorneys' fees, costs and expenses, and for a service award for each Plaintiff | 15 days after the deadline to request exclusion or file Notice of Intent to object to agreement<br><br>June 6, 2020 |
| 7 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate Opt-Out list | 10 days before the Fairness Hearing<br><br>June 11, 2020 |
| 8 | Fairness Hearing | 30 days after the deadline to request exclusion or file a Notice of Intent to object and 160 days after entry of this Preliminary Approval Order (or next available date)<br><br>June 21, 2020* (or next available date) |

| | | *Note that June 21, 2020 is a Sunday |
|---|---|---|

## CONCLUSION

Plaintiffs respectfully request that the Court grant Preliminary Approval of the proposed settlement, and enter an Order of preliminary approval including the substantive content of the proposed order attached as Exhibit 1 to the Agreement. The proposed Order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiffs will request final approval of the settlement in advance of the fairness hearing.

Dated: December 18, 2019.

Respectfully submitted,


Respectfully submitted,

*/s/Christopher B. Hall*
Christopher B. Hall
Andrew Lampros
**Hall & Lampros, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
alampros@hallandlampros.com
chall@hallandlampros.com

Edmund A. Normand
Jacob L. Phillips
**Normand Law PLLC**
P.O. Box 140036
Orlando, FL 32814
Telephone: (407) 603-6031
Facsimile: (509) 267-6468
ed@ednormand.com
jacob@ednormand.com

Bradley W. Pratt
**Pratt Clay, LLC**
4401 Northside Parkway, Suite 520
Atlanta, GA 30327
Telephone: (404) 949-8118
Facsimile: (404) 949-8159
bradley@prattclay.com

Tracy L. Markham
**Southern Atlantic Law Group, PLLC**
2800 N. 5th Street, Suite 302
St. Augustine, FL 32084
Telephone: (904) 794-7005
Facsimile: (904) 794-7007
tlm@southernatlanticlawgroup.com
pleadingsonly@southernatlanticlaw.com

Christopher J. Lynch
**Christopher J. Lynch, P.A**.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com

***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

electronically filed with the Clerk of Court by using CM/ECF system this December 18,

2019.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in the some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Christopher B. Hall*
Christopher B. Hall