IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY COOK, MICAH BELLAMY, and    CASE NO.: 6:17-cv-891-ORL- 40KRS
MAURICE JONES, As Personal Representative
and on behalf of the Estate of Kailyn Jones,
each individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
GENERAL INSURANCE COMPANY,

       Defendant.

_____/


ANTHONY LORENTI and ASHLEY BARRETT,    CASE NO.: 6:17-cv-1755-PGB- 40DCI
Individually and on behalf of all others similarly
situated,

       Plaintiffs,

v.

GEICO INDEMNITY COMPANY,

       Defendant.

_____/


**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Plaintiffs Anthony Cook, Maurice Jones, Micah Bellamy, Anthony Lorenti, and Ashley Barrett (together "Plaintiffs"), individually and on behalf of the settlement class ("Settlement Class"), respectfully request that the Court grant final approval of the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto (the "Settlement Agreement" or "Settlement") (attached as Exhibit A and incorporated herein by reference), which this Court previously preliminarily approved. (Doc. 201.)[1] Attached hereto as Exhibit B is a draft proposed Final Order and Judgment Granting Final Approval of Class Settlement.[2] Defendants do not oppose this motion for final approval of the Settlement, and no objections to the settlement have been made.

## I.    CONCISE STATEMENT OF THE RELIEF SOUGHT

Plaintiffs file this motion requesting that the Court enter final approval of a class action settlement between Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (together "Defendants" or "GEICO") and Plaintiffs and the Settlement Class.  This Court previously granted preliminarily approval of this Settlement, and preliminarily certified the Settlement Class.[3]  The Settlement Class consists of Florida residents insured for private passenger auto physical damage coverage by Defendants who

---

[1] Definitions used herein are the same definitions as set out in the Settlement Agreement between the Parties.

[2] The deadline for objecting to the settlement for the 287,441 class members (over 99.9% of the Class) expired on May 18, 2020 and no objections were received.  This Court also granted supplemental notice to 268 claimants for whom the deadline to opt-out or object is June 10, 2020. (Doc. 208.) Plaintiffs anticipate filing a Notice of any opt-outs or objections for those 268 claimants after June 10, and will include an updated proposed Order incorporating the number of opt-outs or objections, if any.

[3] This Court previously granted Plaintiffs' motion for class certification and certified a class in this litigation.  (Doc. 152.)  As explained in the Motion for Preliminary Approval (Doc. 197), the Settlement Class extended the previously-certified litigation class to include insureds who suffered a total-loss after the date of the certification Order, and through the date of preliminary approval.

1

suffered a first-party total loss of a covered owned (i.e., not leased) vehicle during the five years prior to the filing of the lawsuits (i.e., May 17, 2012 and October 10, 2012) through the date of preliminary approval (January 6, 2020), and whose claims were adjusted as a total loss resulting in a payment that did not include full title and/or license plate transfer fees.  (Doc. 201 at 3-4.)

Plaintiffs respectfully request that the Court enter the proposed Order of Final Approval and Judgment.  The proposed final approval Order certifies the Settlement Class, and (1) finds that the notice provided to the Settlement Class satisfied due process and was the best notice practicable under the circumstances, was reasonably calculated to apprise Settlement Class members ("Settlement Class Members" or "Class Members") of the pendency of the Action and of their right to object or exclude themselves from the Proposed Settlement, and was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice, (2) finds that the terms of the Settlement Agreement are adequate, fair, and reasonable, and (3) awards Plaintiffs' and Class Counsel reasonable attorneys' fees and costs, and a reasonable incentive award to each Class Representative.

## II.    STATEMENT OF THE BASIS FOR THE REQUEST

The Parties and Settlement Administrator KCC have complied with the terms of the Order granting preliminary approval.  Notice was provided to over 287,000 Class Members, none of whom objected to the Settlement.  The Settlement Agreement is fair, adequate, and reasonable, and was the product of substantial, additional negotiations between the Parties following two mediations facilitated by mediator Rodney Max.  *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties

have bargained at arms-length, there is a presumption in favor of the settlement."). As set forth in the Motion for Preliminary Approval (Doc. 197), the Settlement Agreement provides the full relief granted by this Court in its Order Granting Summary Judgment in favor of Plaintiffs and the Class (Doc. 185), plus additional damages of $0.50 in branch fees per Plaintiff and Class Member, for a total of $79.85 to Plaintiffs and members of the Settlement Class. In addition, the Settlement Agreement eliminates the significant risk to the Plaintiffs' and Class Members' recovery inherent in the appellate process. The Settlement offers Class Members 100% of damages alleged and eliminates the potential for reversal, and Plaintiffs respectfully submit the Settlement Agreement should be approved.

## III. <u>MEMORANDUM OF LEGAL AUTHORITY</u>

### A. Background.

Plaintiffs respectfully refer this Court to the declaration submitted by Jacob Phillips (attached as Exhibit C hereto), as well as the declaration submitted by Class Counsel in support of Plaintiffs' concurrently-filed Motion for Attorneys' Fees, Costs, and Service Awards, for an extensive outline of the nature of claims and the litigation and discovery history.

### B. The Proposed Settlement.

In the Settlement Agreement, GEICO agrees to: (1) make payment of $79.85 (consisting of $75.25 in title transfer fees, $4.10 in tag transfer fees, and $0.50 in branch fees (branch fees are an additional component of damages beyond what was pleaded in the Complaint)) (hereinafter, "Transfer Fees"), plus prejudgment interest at the applicable rate, to each member of the Settlement Class who submitted a valid claim pursuant to the conditions set forth in the Notice provisions of the Settlement Agreement; and (2) change GEICO's practice and procedure, for the benefit of all of its insureds in the State of Florida, to include Transfer Fees of at least $79.85 on all first party

total loss claims upon approval of the Settlement.  (Exh. C ("Phillips Decl.") at ¶¶34-35.)  The

change in GEICO's business practice to include Transfer Fees on total loss claims became effective

on January 1, 2020, and has already resulted in approximately $2.2 million in Transfer Fees paid

to GEICO insureds. *Id*. at ¶35; *see also,* Declaration of Jeffrey Martin in Support of Motion for

Preliminary Approval (Doc. 197-3) ("Martin Decl.") at ¶ 9 (first 12-months benefit of change in

practice is $4.88 million, making benefit for 5 ½ months approximately $2.24 million).

1.    **Settlement Includes Approximately $61.94 Million In Monetary Value, and Provides for Payments of 100% of Damages Requested in the Complaint.**

Plaintiffs calculate the monetary value of all claims under the terms of the Settlement

Agreement, including prejudgment interest, to be approximately $61.90 million. This amount

includes: (1) approximately $27.54 million in cash available for claimants; (2) $28.76 million in

prospective relief from GEICO's change in practice over a five-year period; and (3) $5.6 million

in attorneys' fees if approved by the Court.[4] Martin Decl. at ¶ 10.  Pursuant to the Settlement,

GEICO began paying Transfer Fees on total loss claims on January 1, 2020.  This change in

practice will have resulted in over $2.2 million in Transfer Fee payments to total loss insureds by

the June 17, 2020 hearing on final approval.  *See* Martin Decl. at ¶ 9 ($4.88 million in Transfer

Fee payments in first 12 months of change in practice).

2.    **Final Resolution of Case Eliminates the Possibility of Appeal Before the Eleventh Circuit and Reversal of the Plaintiffs' and Class Members' Recovery.**

This Settlement provides final resolution and greater than 100% of the damages alleged for

---

[4] This amount is reached by multiplying the class size (approximately 287,441 class claims) by
$79.85 in Transfer Fees, and then adding prejudgment interest.  Plaintiffs applied the prejudgment
interest rate set by the State of Florida during the time relevant to each individual claim. Martin
Decl. at ¶ 14.

claims as to which there is presently mixed authority, and for which the central merits question presented by this case is the subject of a pending appeal in another case.  While the majority of cases in Florida to consider claims similar to Plaintiffs' claims have held in favor of such claims, some courts have found that title transfer fees are not owed under an ACV insurance policy. (Phillips Decl. at ¶¶25-27.)  For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the insurance company's motion to dismiss claims for title and registration transfer fees.  Likewise, a federal district court in Illinois granted GEICO's motion to dismiss claims for title transfer fees under identical policy language.  *See Sigler v. GEICO Casualty Co.*, No. 1:18-cv-01446, 2019 WL 2130137, at **3-4 (C.D. Ill. May 15, 2019).  Plaintiffs believe *Schenck* and *Sigler* were wrongly decided, and note that *Sigler* applies Illinois (not Florida) law.  Even so, these cases underscore that precedent on the central merits questions in this case is split.

Moreover, whether title transfer fees are due under a materially identical GEICO policy is currently pending in an appeal before the Eleventh Circuit.  *See Roth v. GEICO Gen. Ins. Co.*, No. 19-11652 (11th Cir.).  If the Eleventh Circuit decides the *Roth* appeal in GEICO's favor and there is no settlement in the instant case, the instant Plaintiffs and Class Members would lose their entire recovery.  While Plaintiffs believe their position on the merits is correct, and GEICO's position is incorrect, the risk of losing the appeal strongly supports the proposed Settlement, which obligates GEICO to pay all Settlement Class Members' properly-submitted claims by paying the full value of Transfer Fees (again, the amount included in the Settlement is 100% of the damages alleged in the Complaint and exceeds the amount awarded at summary judgment).  (Phillips Decl. at ¶¶ 15-18.)

### 3. The Settlement Includes an Expanded Class Size Beyond the Class Size Previously Certified by the Court.

The Settlement expands the Settlement Class. The previously certified class included (1) all Government Employees Insurance Company and GEICO General Insurance Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period May 17, 2012 through April 4, 2019 that resulted in a total loss claim payment; and (2) all GEICO Indemnity Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period October 10, 2012 through April 4, 2019 that resulted in a total loss claim payment. The expanded Settlement Class includes the same aforementioned Class Members, but additionally extends the class period through and including the date on which the preliminary approval Order was entered, i.e., January 6, 2020. The expanded class period provides relief for approximately 37,477 additional claims, and $2.96 million in additional Settlement funds. (Martin Decl. at ¶15.)

### 4. The Settlement Provides Valuable Prospective Relief.

The Settlement includes the requirement that GEICO change its business practice and procedure in the state of Florida so that, going forward, GEICO will pay Transfer Fees on first party total loss claims under the Policies at issue until and unless the law is clearly changed to permit GEICO to withhold such fees, or GEICO modifies its policy language. By the time of the June 17, 2020 fairness hearing, the value of GEICO's changed practice will be the payment of approximately $2.2 million in Transfer Fees paid over the period January 1, 2020 through June 17, 2020. (Martin Decl. at ¶9.) The monetary value of this relief over a five-year period is $28.76 million (approximately 360,195 claims). (*Id.*) The monetary value of this prospective relief over a one-year period is $4.88 million (approximately 61,121 claims). (*Id.*) This change in business practice began on January 1, 2020. (Phillips Decl. at ¶35.)

5.      **The Settlement Provides a Limited Release.**

The Settlement Agreement provides a limited release of claims, and clarifies the limited

res judicata effect of the Settlement to only those claims concerning the specific Transfer Fees

expressly identified as Released Claims in the Settlement Agreement. (*Id*. at ¶38.)

6.      **The Notice Plan Was Thorough and Robust, and the Claims Procedure Was Simple and Straightforward.**

Pursuant to preliminary approval, the parties provided robust notice and a simple,

straightforward claims process.  (Ex. D, Declaration of KCC Class Action Services LLC Project

Manager Robert Coomes ("KCC Decl.") at ¶¶ 3-17.)  Class Members were provided direct notice

by mail via postcard, which included a simple, easy to understand, detachable claim form with

postage prepaid. (*Id*. at ¶3 and Ex. A thereto.)  The information on the claim form was pre-filled,

which assured Class Member that the claim form was legitimate. Moreover, the claim form did

not require Class Members to write or input any information; rather, all that was required was a

signature and date.  (*Id*.)  Thus, every Class Member was provided the opportunity to simply detach

the claim form, sign the attestation, and mail it to the Settlement Administrator, and no Class

Member was required to pay any postage to do so.  (*Id*.); *see Wilson v. Everbank*, 2016 WL 457011,

at *9 (finding significant that class members need not submit any evidence or documentation

beyond merely "checking a box" which "should take no more than a few minutes for the average

claimant to complete.").

Additionally, three separate email notices were also provided to each Class Member for

whom an email address was available from GEICO's records.  (KCC Decl. at ¶¶ 6-13.)  Each email

notice enabled Class Members to "click through" to automatically access a pre-filled claim form

specific to the Class Member (without any requirement that the Class Member enter information).

(*Id*. and Exhs. B, C, and D thereto.) The Class Member needed only to click the signature to submit

the claim. No information was required to be submitted by the Class Member to electronically submit the claim. For Class Members who feared "clicking through" to the website, the notice design provided Class Members the ability to separately access the website and make a claim by entering a Claim ID and PIN number to access their pre-filled claim form. (*Id.*) The process of entering the Claim ID and PIN was extremely simple, and included images of the email and postcard notices showing precisely where the Class Member could locate the Claim ID and PIN. Class Members without immediate access to their Claim ID or PIN (perhaps because they lost their postcards or emails) could (1) request their Claim ID and PIN from the Settlement Administrator or (2) submit a claim without a Claim ID or PIN by providing either a policy or claim number.

A website was maintained for all Class Members to review information concerning the Settlement, submit claims, or review frequently asked questions and answers. (*Id*. at ¶ 13.) Finally, a toll-free number was created by the Settlement Administrator to provide Class Members yet another avenue to inquire about the Settlement, submit claims, or ask questions and obtain information.  (*Id*. at ¶ 14.)  Through this robust notice process, Class Members could request exclusion from the Settlement Class or object to the Settlement.  *See Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (a robust notice plan is itself evidence that the terms of settlement are fair and reasonable).

That the notice was robust and the claims' process easy and straightforward is reflected in the results: over 71,000 Class Members submitted claims, which is a claims' rate of approximately 24.8%.  (Phillips Decl. at ¶37.) Notably, the claims submission deadline does not expire until June 10, 2020, and thus the number of Class Members submitting timely claims is likely to increase. (*Id.*) This claims rate is significantly higher than many similarly-structured settlements approved by federal courts throughout the country, including Florida and the Eleventh Circuit.  *See, e.g.,*

*Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) (approving settlement with claims rate of approximately 1.1%).

### 8.    Settlement Class Certification Is Warranted.

Before granting final approval of a settlement, a class must first be certified under Fed. R. Civ. P. 23(a) and one of the Rule 23(b) subsections. The Settlement Class is defined as follows:

> All Florida policyholders who were insured for private-passenger auto physical damage coverage by Government Employees Insurance Company or GEICO General Insurance Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from May 17, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees; and all Florida policyholders who were insured for private-passenger auto physical damage coverage by GEICO Indemnity Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from October 10, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees.

Excluded from the Class are: (1) GEICO, all present or former officers and/or directors of GEICO, Class Counsel, and any Judges of this Court; (2) claims for which GEICO received a valid and executed release; (3) claims relating to leased vehicles; (4) claims where GEICO paid full Title, Tag and Branch Transfer Fees; and (5) claims for first-party property damage which were or currently are the subject of initiated appraisal and/or arbitration proceedings.

As explained in the Motion for Preliminary Approval, the Settlement Class definition is substantively identical to the Class definition previously certified by this Court (Doc. 152 at 3) except that it covers an expanded time period, and it should be certified for the same reasons this

Court originally certified the class in this case. As the Court held, the Rule 23(a) and (b)(3) requirements are met here. Notably, amending Rule 23 in 2018, the Advisory Committee stated that if a court "already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *See* Fed. R. Civ. P. 23(e)(1)(B), Committee Notes on Rules - 2018 Amendment. The Settlement Class differs from the previously certified class only as to the dates during which total loss insureds qualify as Class Members, but makes no substantive changes relevant to the Rule 23(a) or (b)(3) analysis, and should accordingly be certified for the same reasons and on the same factual findings.

### C. Final Approval Is Warranted.

#### i. Legal Standard

Consistent with the Eleventh Circuit's strong preference in favor of settlement of class litigation, under Rule 23 a Court should approve a class action settlement if it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, and the settlement was negotiated at arm's length, and if the relief provided is adequate, taking into account factors such as the risk of litigation, method for processing class members' claims, and agreements concerning attorneys' fees. Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis takes into account *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:[5]

---

[5] At the time *Bennett* was decided and set forth the standard for analysis of "fair, reasonable, and adequate" under Rule 23(e)(2), there were no textual factors guiding the analysis. In 2018, the Rule was amended to add the referenced textual factors.

> "Specifically, the court made findings of fact that there was no fraud
> or collusion in arriving at the settlement and that the settlement
> was fair, adequate and reasonable, considering (1) the likelihood of
> success at trial; (2) the range of possible recovery; (3) the point on
> or below the range of possible recovery at which a settlement is fair,
> adequate and reasonable; (4) the complexity, expense and duration
> of litigation; (5) the substance and amount of opposition to the
> settlement; and (6) the stage of proceedings at which the settlement
> was achieved."

*Id*. at 986.  A court's determination concerning whether to approve a settlement as fair, adequate,

and reasonable is subject to an abuse of discretion standard of review.  *Id*.

### ii.   The Procedural Requirements for Settlement Are Satisfied.

The procedural requirements prescribed by Rule 23(e)(2) and *Bennett* – i.e., lack of

collusion, arm's length negotiations, and adequate representation – are easily satisfied here.[6] First,

there was no fraud or collusion in the Settlement, and negotiations were conducted at arm's length.

Indeed, settlement was only reached following lengthy negotiations with assistance of an

experienced and well-respected mediator, Rodney Max.[7]  (Doc. 197-4 (Max Decl.) at ¶12; Phillips

Decl. at ¶33); *see also, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470

(S.D. Fla. 2002) (where the parties have negotiated at arm's length, the Court should find that the

settlement is not the product of collusion).  Moreover, the settlement occurred only after years of

extensive, hotly-contested litigation, which is a strong indication of a lack of collusion.  *See, e.g.*,

---

[6] According to the Advisory Committee, the 2018 amendments to Rule 23(e)(2) can be categorized as "procedural factors" and "substantive factors".  *See* Fed. R. Civ. P. 23(e)(2), Committee Notes on Rules - 2018 Amendment. The "procedural" factors are 23(e)(2)(A)-(B), while the "substantive factors" are (c)(i)-(iv).  *Id*.
[7] *See, e.g.*, *Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."); *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (recognizing Rodney Max as "probably one of the top mediators in the country."); McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

*Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion).

Second, the Class was adequately represented by the Class Representatives and Class Counsel. Fed. R. Civ. P. 23(e)(2)(A). This requirement – distinct from the "adequacy" requirement of Rule 23(a)(4) – was added to the Rule in 2018 and, as one court explained, according to Advisory Committee, this factor addresses "whether class counsel and plaintiffs had an adequate information base before negotiating and entering into the settlement." *Burrow v. Forjas Taurus S.A.*, 2019 U.S. Dist. LEXIS 151734, at *23 (S.D. Fla. Sep. 6, 2019). This overlaps with the preexisting *Bennett* "stage of proceedings" factor. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

Here, the record clearly demonstrates the Plaintiffs and Class Counsel possessed an adequate information base and sufficient information to evaluate the merits of the case such that the Class was adequately represented. As set forth in the declaration submitted by Jacob Phillips, Exh. C, and those submitted by Class Counsel in support of the fee application, Settlement was achieved at an advanced stage of litigation, following extensive briefing and litigation of numerous issues of certification, discovery, and summary judgment. (Phillips Decl. at ¶¶15-24.) Through lengthy and hard-fought discovery, Plaintiffs and Class Counsel secured voluminous discovery and data. (*Id*. at ¶¶12-14.) Class Counsel conducted numerous corporate and third-party depositions, and became well-versed in the information necessary to evaluate the merits of the complicated issues presented in this litigation, and to assess the benefits versus the risks of further litigation. *See Grant v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 14673, at *14-15

(M.D. Fla. Jan. 29, 2019) ("Through...depositions, document production, and written discovery,
Plaintiff and Class Counsel were able to" establish adequate information base to satisfy adequacy
requirement). Accordingly, the Rule 23(e)(2)(A) factor is satisfied.

### iii.    The Rule 23(e)(2)(C) Substantive Factors Favor Approval.

As applied to the proposed Settlement, the Rule 23(e)(2)(C) factors addressing whether a
settlement's terms are "adequate" – i.e., the risk of non-settlement, the method for processing
claims and distributing relief, and the terms of attorneys' fees – favor granting final approval. It is
worth noting that in amending Rule 23(e)(2) in 2018, the Advisory Committee clarified that while
it did not intend to "displace" various circuit's laws – *Bennett* in the Eleventh Circuit – it did intend
to "focus the court and the lawyers on the core" or "central concerns" of Rule 23(e)(2). Fed. R.
Civ. P. 23(e)(2)(C), Committee Notes on Rules - 2018 Amendment.

The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P.
23(e)(2)(C)(i).  Courts have held that this factor is analogous to first four *Bennett* factors: (1)
likelihood of success, (2) range of potential recovery, (3) where on the range of potential recovery
the amount to which Class Members are entitled falls, and (4) duration and length of litigation.
*See Williams v. New Penn Fin., LLC*, 2019 U.S. Dist. LEXIS 106268, at *11 (M.D. Fla. May 8,
2019).  Thus, under both Rule 23 and *Bennett*, the question is not the amount of relief itself, but
"whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if
successful, appropriately discounted for the risk of not prevailing.'" *Id*. (citations omitted).  Courts
should estimate the potential recovery if ultimately successful versus the risks of losing outright,
and determine whether the relief provided comports. *Id*.; *see also In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686, 693 (S.D. N.Y. 2019) (in order to assess Rule 23(e)(2)(C)(i), "courts may
need to forecast the likely range of possible class wide recoveries and the likelihood of success in

obtaining such results."); *Palmer v. Dynamic Recovery Solutions, LLC*, 2016 U.S. Dist. LEXIS

59229 (M.D. Fla. May 4, 2016) (comparing potential recovery versus risk and analyzing relief

provided under proposed settlement in comparison therewith) (Byron, J.).

Here, analysis of Rule 23(e)(2)(C)(i), consistent with the *Bennett* factors, clearly favors

approval of the Settlement.  First, the range of potential recovery is easily determinable.  The Court

granted summary judgment in favor of Plaintiffs in the amount of $79.35 for each Class Member,

and the settlement provides damages for each Class Member making valid claims of an additional

$0.50, for a total of $79.85.   Thus, the Agreement provides *greater than* 100% of the relief

previously provided, and includes prejudgment interest.  That is, it is not a compromise amount

that reduces the recovery to any Class Member making a valid claim.  *Compare* Doc. 185 at 8

(awarding damages of $79.35 and no prejudgment interest) *with* Settlement Agreement at ¶32

(providing Class Members $79.85 and prejudgment interest).[8]  It is therefore indisputable that the

place "on the range of discovery", *Bennett*, 737 F.2d at 986, in which the relief afforded falls is

adequate, given that it is at the very top of the range. *See Saccoccio v. JP Morgan Chase Bank,

N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief

than likely would have been secured at trial); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist.

LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to

class members on a claims-made basis" are an "extraordinary result"); *cf. Bennett*, 737 F.2d at 987

n. 9 (approved settlement providing 5.6% of the potential recoverable damages). Greater than full

damages is an extraordinary result, standing alone, but here the result is greater still because

Defendants have agreed as part of the Settlement to change their business practice and begin

---

[8] The average amount for prejudgment interest provided to Settlement Class Members is $16.87.
Martin Decl. at ¶ 14.

paying Transfer Fees to all total-loss insureds moving forward. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (analysis of potential recovery and benefits secured "spans from a finding of non-liability" to "varying levels of injunctive relief" to monetary benefits). Here, the Settlement not only provides full past damages but also full prospective relief.

This analysis is buttressed by the risk of no recovery at all in the event of an adverse appellate decision. The legal issues presented as to both class certification and the merits of the insurance policy dispute are enormously complex, and the parties have undergone and will continue to undergo enormous expense if litigation were to continue through appeal and any remand. Moreover, the outcome of this case has been uncertain from the outset, and remains uncertain today. While Plaintiffs successfully certified a class of "owned" vehicle insureds and obtained summary judgment on the merits here, the same relief (as to "leased" vehicle insureds) is currently on appeal in *Roth v. GEICO Gen. Ins. Co.*, No. 19-11652 (11th Cir.). In the *Roth* appeal, GEICO has taken the position that the *Roth* class should not have been certified, and that title transfer fees are not owed under materially identical insurance policies. GEICO's appeal is supported by two Amicus Curiae briefs filed on behalf of the U.S. Chamber of Commerce, and the American Property and Casualty Insurance Association and the Personal Insurance Federation of Florida. Should GEICO prevail in the *Roth* appeal, it would arguably have the effect of also reversing this Court's order granting class certification and/or order granting summary judgment in favor of Plaintiffs (depending, of course, on the scope and content of the Eleventh Circuit's decision).

As set forth above, some other courts have found that title transfer fees are not owed under an ACV insurance contract. For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance

company's motion to dismiss claims for title and license transfer fees.  Likewise, outside of

Florida, a federal district court in Illinois granted GEICO's motion to dismiss claims for title

transfer fees.  *See Sigler v. GEICO Casualty Co.*, No. 1:18-cv-01446, 2019 WL 2130137, at **3-

4 (C.D. Ill. May 15, 2019).  Plaintiffs believe *Schenck* and *Sigler* were wrongly decided, and note

that *Sigler* applies Illinois (not Florida) law.  Even so, these cases underscore that precedent on the

central merits questions in this case is split.

Finally, even if Plaintiffs were to prevail on appeal, such a result would not include Branch

Fees (which are included in this Settlement for each and every Class Member making a valid

claim) nor prospective relief in the form of a change to GEICO's practice and procedure to begin

paying Title Transfer Fees going forward.

The second factor is the method for "distributing relief" and "processing class-members

claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  As set forth above, this factor also favors approval

because the claims' process was simple, streamlined, and straightforward.  Defendants extracted

information from its claim records to pre-fill the name, address, and the date of loss on the claim

forms, and all Class Members had to do was sign an attestation confirming the prefilled

information was correct (or update their address in the event they had moved). (*See* Settlement

Agreement at Exhibits 4 and 5); *see also Braynen*, 2015 WL 6872519, at *18; *Wilson*, 2016 WL

457011, at *9 (finding significant that class members need not submit any additional evidence or

documentation beyond merely "checking a box" which "should take no more than a few minutes

for the average claimant to complete.").

The well-settled law in the Eleventh Circuit is that a claims made settlement does not

impact the fairness of a settlement.  *See, e.g., Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist.

LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action

concerning total-loss vehicles); *Poertner*, 618 Fed. Appx. 624 (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (a claims-made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement."); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 U.WL 7184039 (S.D. Fla. Dec. 17, 2014). The Named Plaintiffs and Class Counsel agree with the cogently reasoning of the Southern District's explanation that "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims-made class settlement).

Importantly, Defendants asserted and confirmed they would not settle the claim absent the claims made structure. (Settlement Agreement at ¶ 84.) Courts find a defendant's refusal to settle absent a claims made structure to be a critical factor in determining whether a claims-made settlement is fair and reasonable. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 WL 4120599, at *2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement

17

structure")); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at \*14 (S.D. Fla. Apr. 13, 2016)
(claims-made settlement offered the best and "only real relief" possible in settlement because
defendants "would not have agreed" to direct-pay structure). The question is not whether a claims
made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether
the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 2014 WL 4120599, at \*3
("[The] Court does not have the authority to impose a preferred payment structure upon the settling
parties"); *Lee*, 2015 WL 5449813, at \*25 ("a claims-made structured settlement is fair, reasonable,
and adequate on its own terms"). Plaintiffs were presented with a choice between (1) not settling,
so that the Plaintiffs' and Class Members' full recovery would be subject to the risk of reversal on
appeal, resulting in no recovery, or (2) settling, and guaranteeing full recovery (indeed, greater
damages than previously ordered) for each and every Plaintiff and Class Member who signed his
or her name to a prefilled claim form with prepaid return postage. Plaintiffs respectfully submit
that the proposed Settlement yielding greater relief while eliminating the risks of losing everything
on appeal was in the best interests of Plaintiffs and the Class, particularly given the change in
business practice moving forward.

One final point on this factor: the settlement is not a quintessential claims-made settlement,
where a defendant agrees to set aside an amount of money from which costs, fees, notice,
administration, etc., are pulled, and agree to pay class members a (discounted) amount of their
damages up to the cap the defendant agreed to set aside. Instead, here, there is *no cap on liability*
– Defendants agreed to make whole and pay in full any Class Member who made a claim. Courts
are in wide agreement that such a structure is eminently fair to class members. *See Cotton v.
Hinton*, 559 F.2d 1326, 1334 (5th Cir. 1977) (where a class settlement will make claimants whole,
objections as to fairness were "meritless"); *Krell v. Prudential Ins. Co. of Am. (in Re Prudential*

*Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 323 (3d Cir. 1998) (agreeing with and affirming district court's finding that settlement which required submission of claims and made whole such claimants was "extraordinary relief").

The next factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis and is addressed the issue of attorneys' fees in a concurrently-filed Motion for Attorneys' Fees, Costs, and Named Plaintiffs' Incentive Award, while Rule 23(e)'s concern is if and how the attorneys' fees impacted the terms of the Settlement. For purposes of whether the Settlement are adequate, it is critical that (1) whatever amount this Court awards in attorneys' fees is paid separately by Defendants and will have absolutely no impact on the amounts recovered by Class Members, and (2) payment to Class Members is not conditioned on an award of attorneys' fees. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at *27-28 (evaluating Rule 23(e)(2)(C)(iii) and finding significant that "attorneys' fees under the Settlement are to be paid by the Defendants separately and in addition to the relief granted to the Settlement Class Members" and "the relief available to Settlement Class Members was not conditioned on any amount of attorneys' fees," which "further supports the adequacy and fairness of this Settlement."); *Williams*, 2019 U.S. Dist. LEXIS 106268, at *16 (same). That relief will be provided to Class Members irrespective of any attorneys' fees award and that any attorneys' fees awarded will have no impact on the amount provided to Class Members conclusively demonstrates that the "terms of [the] proposed award of attorneys' fees" counsels in favor of finding the settlement terms to be adequate.

The final factor is whether the settlement treats class members equitably *vis-a-vis* each other. Fed. R. Civ. P. 23(e)(2)(D). Here, every Class Member was treated identically – everyone received the same Notice, the same pre-filled prepaid Claim Form, and the exact same amount of

damages ($79.85 plus applicable prejudgment interest) representing the exact damages the
Complaint alleged they were owed, plus an additional amount of damages for Branch Fees.
Moreover, the scope of the release is not only extremely narrow and tailored only to the precise
claims for which Defendants are providing relief, but it is identical as to all Class Members. *See*
Rule 23(e)(2)(D), Committee Notes on Rules - 2018 Amendment (instructing courts evaluating
Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members
in different ways"). This fact also favors approval of the Settlement.

### iv. The Remaining *Bennett* Factors Favor Settlement.

The two remaining *Bennett* factors not subsumed within Rule 23 – opposition to the
settlement and the opinions of the Class Representatives and Class Counsel – also favor this
Settlement.

First, out of the 287,441 Class Members, not a single Class Member lodged an objection
and only 8 Class Members opted out for 11 claims. Exh. D at ¶ 18-19. These numbers are strong
evidence that the Settlement terms are fair, adequate and reasonable. *Morgan v. Public Storage*,
301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (one objection out of "hundreds of thousands class
members" indicates strong satisfaction with settlement); *Lee*, at *15 (four objections and 160
requests for exclusions out of almost 400,000 notices weighed strongly in favor of settlement).

Second, the opinions of the Class Counsel and the class representatives, Plaintiffs strongly
support the Settlement. It is the reasoned opinion of Class Counsel, who are experienced in
complex class action litigation, that the Settlement is in the interest of the previously certified class
and the Settlement Class, and eliminates the risk of proceeding with this litigation. (Phillips Decl.
at ¶47.) Plaintiffs agree. Based on their evaluation, Plaintiffs and Class Counsel have determined
that the terms and conditions of the Settlement Agreement are fair, reasonable, and in the best

interests of Plaintiffs, the previously certified class, and the Settlement Class. (*Id. see also* Composite Exh. E (Declarations of Class Representatives).)  Likewise, the class representative Plaintiffs agree that the certainty of the Settlement at greater than 100% value for all claims made and the future benefit to Florida insureds through Defendants' change in business practice significantly outweigh the risk of continued litigation which could result in no recovery and continuation of the incorrect and harmful practice negatively affecting GEICO's insureds in Florida that is the basis of this lawsuit. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order of Final Approval of Settlement.

Respectfully submitted,

/s/ Jacob L. Phillips_____
Edmund A. Normand
Jacob L. Phillips
**Normand PLLC**
P.O. Box 140036
Orlando, FL 32814
Telephone: (407) 603-6031
Facsimile: (509) 267-6468
Ed@EdNormand.com
jacob@ednormand.com

Bradley W. Pratt
Florida Bar No. 0094300
**Pratt Clay, LLC**
4401 Northside Parkway, NW
Suite 520
Atlanta, GA 30327
Telephone:  (404) 949-8118
Facsimile:  (404) 949-8159
bradley@prattclay.com

Tracy L. Markham
Florida Bar No. 0040126
**Southern Atlantic Law Group, PLLC**

2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlm@southernatlanticlaw.com
pleadingsonly@southernatlanticlaw.com

Christopher Hall
**Hall & Lampros, LLP**
1230 Peachtree St. NE
Suite 950
Atlanta, Georgia 30309
Telephone:  (404) 876-8100
alampros@hallandlampros.com

Christopher J. Lynch
**Christopher J. Lynch, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com
Attorneys for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically

filed with the Clerk of Court by using CM/ECF system this 2nd day of June, 2020.

Respectfully submitted,

/s/ Jake Phillips
Jacob L. Phillips