IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ANTHONY COOK, MICAH BELLAMY, and MAURICE JONES, As Personal Representative and on behalf of the Estate of Kailyn Jones, each individually and on behalf of all others similarly situated, | CASE NO.: 6:17-cv-891-ORL-40KRS |
|      Plaintiffs, | |
| v. | |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY and GEICO GENERAL INSURANCE COMPANY, | |
|      Defendant. | |
| _____/ | |
| ANTHONY LORENTI and ASHLEY BARRETT, each individually and on behalf of all others similarly situated, | CASE NO.: 6:17-cv-1755-PGB-40DCI |
|      Plaintiffs, | |
| v. | |
| GEICO INDEMNITY COMPANY, | |
|      Defendant. | |
| _____/ | |

**PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES
AND COSTS AND NAMED PLAINTIFFS' SERVICE AWARDS**

Plaintiffs Anthony Cook, Micah Bellamy, Maurice Jones, Anthony Lorenti, and Ashley Barrett (together "Plaintiffs"), file this Motion for Approval of Attorneys' Fees and Costs and Named Plaintiffs' Service Awards.   Pursuant to the settlement agreement ("Settlement Agreement" or "Settlement") between the parties, Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (together, "GEICO" or "Defendants") do not oppose this motion.

## I.    CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED AND BASIS FOR REQUEST

As provided by the Settlement Agreement (Doc. 199-1, at ¶¶43-46) preliminarily approved by the Court (Doc. 201), Plaintiffs request that the Court approve attorneys' fees of $5,600,000 and reimbursement of costs of $225,000 to the law firms Normand Law PLLC, Hall & Lampros, LLP, Pratt Clay, LLC, Christopher J. Lynch, P.A., and Southern Atlantic Law Group, PLLC (together "Class Counsel"), and service awards of $10,000 for each Named Plaintiff (i.e., Anthony Cook, Micah Bellamy, Maurice Jones, Anthony Lorenti, and Ashley Barrett).

The requested fees, costs, and service awards were negotiated at arm's length between the parties after all other terms of the Settlement were reached, were agreed to by Defendants as part of the Class Action Settlement, and are reasonable under the "percentage of the benefit" method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). *See* Declaration of Jacob Phillips attached as Exhibit C to Motion for Final Approval of Settlement ("Phillips Decl.") at ¶¶32-33; Declaration of Rodney Max attached as Exhibit D to Motion for Preliminary Approval (Doc. 197-4) at ¶13.  Class notice was made to over 287,000 class members ("Class Members"), and no Class Member has

1

objected to any aspect of the Settlement, including the requested amounts of attorneys' fees, costs, or service awards.[1]

## II.     FACTUAL BACKGROUND

This case involves allegations that Defendants breached private passenger auto insurance policies issued to Plaintiffs and similarly-situated Florida insureds by failing to include the full amount of title transfer and registration/license plate transfer fees ("Transfer Fees") in payments for covered total loss autos.  *See* Docs. 71, 118.  Plaintiffs alleged that Defendants' insurance policies required payment of "actual cash value" ("ACV") upon the total loss of a covered auto and defined ACV as the "replacement cost of the auto."  Plaintiffs also alleged such Transfer Fees are necessary costs to replace an auto in the State of Florida, and are therefore components of ACV and required to be paid by Defendants to their insureds pursuant to the policies.  Phillips Decl. at ¶¶8-9.  Defendants' practice and procedure in Florida was to not include Transfer Fees in calculating and issuing ACV payments to insureds following the total loss of a covered auto.  *Id*. at ¶10.  This class action was filed to recover such unpaid Transfer Fees from Defendants on behalf of insureds who suffered a total loss of their non-leased vehicle.  Plaintiffs alleged that to transfer title of an auto, the State of Florida imposes a minimum fee of $75.25.  *Id*. at ¶11.  In addition, Plaintiffs alleged that to transfer registration of an auto, the State of Florida imposes a minimum fee of $4.60 (including a $0.50 branch fee) in all but two counties during the relevant time-period.  *Id*.

When the lawsuits were filed, no Florida court had ruled on whether Transfer Fees are

---

[1] The deadline for objections was May 18, 2020 for 287,441 class members (over 99.9% of the class).  On May 11, 2020, the Court approved (Doc. 208) supplemental notice to an additional 268 class members (less than 0.1% of the class), with an objection and opt out deadline of June 10, 2020.

included in the actual cash value or replacement costs on total loss vehicles. The Florida statute § 626.9743 relating to total losses was silent on any duty to make such payments. The initial suit was filed on May 17, 2017. *Id*. at ¶4.

### A. Litigation and Discovery History.

This consolidated class action has been contested at every stage. Motions practice included multiple motions to dismiss, multiple motions to strike pleadings, a motion to strike expert testimony, competing motions for summary judgment, a motion for protective order, motions to compel discovery, a motion for class certification, and a motion to reconsider class certification. Phillips Decl. at ¶¶15-24. This case included complex and difficult issues related to class certification – including an attempt by GEICO to reconsider class certification – which were exacerbated by voluminous and complex data which required sophisticated and painstaking analysis. The results of this analysis were hotly contested and thoroughly litigated. The case was also complicated because it involved five Plaintiffs and three Defendants, and over 287,000 Class Members. *Id*. at ¶¶20-22, 24. Moreover, it included issues related to intervention and substitution of class representatives, which are novel and underdeveloped area of class action law. *Id*. at ¶20. The case also included extensive briefing on the cross-motions for summary judgment, discovery motion practice, providing clear and robust notice, and issues of personal jurisdiction, pleadings standards, and more. *Id*. at ¶¶15-24.

The parties took 17 depositions in four states and the District of Columbia, including class representatives, corporate representatives, and expert witnesses. *Id*. at ¶¶13-14. Plaintiffs reviewed over 43,000 pages of documents produced by Defendants and served five sets of interrogatories, six sets of document requests, and requests for admission. *Id*. Plaintiffs

analyzed millions of lines of data involving over 287,000 total loss claims. Declaration of Jeffrey Martin in Support of Motion for Preliminary Approval (Doc. 197-3) ("Martin Decl.") at ¶8.  Class notice has been completed relating to over 287,000 claims.  Phillips Decl. at ¶12.

### B.  The Proposed Settlement.

In the Settlement Agreement, Defendants agreed to: (1) make payment of $79.85 (consisting of $75.25 in title transfer fees, $4.10 in tag transfer fees, and $0.50 in branch fees[2]), plus prejudgment interest at the applicable rate, to each member of the Settlement Class who submits a valid claim pursuant to the conditions set forth in the notice provisions of the Settlement Agreement; (2) expand the class to include approximately 37,477 additional Class Members; and (3) change their practice and procedure, for the benefit of their insureds in the State of Florida, to include Transfer Fees of at least $79.85 on all first-party total loss claims upon approval of the Settlement.  Phillips Decl. at ¶¶34-35.  This change in business practice went into effect on January 1, 2020. *Id*. at ¶35.

### 1.  Settlement Includes Approximately $61.9 Million In Monetary Value, and Greater than 100% of Damages Requested in the Complaint.

Plaintiffs submitted uncontroverted expert testimony showing that the monetary value of all claims under the terms of the Settlement Agreement for Transfer Fees and prejudgment interest is approximately $ 61.9 million, which includes: (1) approximately $27.54 million in cash available for claimants for unpaid Transfer Fees; (2) $28.76 million in prospective relief resulting from GEICO changing its practice and procedure to pay Transfer Fees going forward

---

[2] The branch fees are an additional component of damages beyond what was originally requested by Plaintiffs in their Complaint and awarded by the Court in its Order granting summary judgment to Plaintiffs.

(this amount includes a calculation only for the first five years of the changed practice and procedure); and (3) $5.6 million in attorneys' fees, if such attorneys' fees are approved by the Court.[3] Martin Decl. at ¶10.  The Settlement Class is also a larger class than the class originally certified by the Court, thereby offering greater relief to significantly more Florida insureds.[4] Moreover, pursuant to the Settlement, GEICO began paying Transfer Fees on total loss claims on January 1, 2020. Phillips Decl. at ¶35. This change in practice will have resulted in over $2.2 million in Transfer Fee payments to total loss insureds by the June 17, 2020 hearing on final approval. *See* Martin Decl. at ¶9 (first 12-months benefit of change in practice is $4.88 million, making benefit for 5 ½ months approximately $2.24 million).

> **2.**     **Plaintiffs and Class Counsel Succeeded In Obtaining for Claimants Greater than 100% of the Relief Originally Requested, and in Spite of Contrary Authority in Certain Other Cases.**

This Settlement provides final resolution and greater than 100% of the damages requested for claims as to which there is presently mixed authority.  Additionally, the central merits question presented by this case is the subject of a pending appeal in another case.  While the majority of cases in Florida to consider claims similar to Plaintiffs' claims here have held

---

[3] The total monetary value is reached by multiplying the class size by $79.85 in Transfer Fees, and then adding prejudgment interest.  Plaintiffs applied the prejudgment interest rate set by the State of Florida during the time relevant to each individual claim.  Martin Decl. at ¶14.

[4] The Settlement provides an expanded settlement class and prospective relief.  The certified settlement class includes (1) all Government Employees Insurance Company and GEICO General Insurance Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period May 17, 2012 through April 4, 2019 that resulted in a total loss claim payment; and (2) all GEICO Indemnity Company Florida insureds who submitted a physical damage claim with respect to a covered owned (i.e., not leased) vehicle during the period October 10, 2012 through April 4, 2019 that resulted in a total loss claim payment.  The expanded class includes those same Class Members but *extends* the class period through and including the date on which the proposed preliminary approval Order is entered. The expanded period provides relief for approximately 37,477 additional claims and $2.96 million in settlement funds. Martin Decl. at ¶ 15.

in favor of such claims,[5] some courts have found that title transfer fees are not owed under an ACV insurance contract.  Phillips Decl. at ¶¶26-27.  For example, in *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019), a Florida court granted the defendant insurance company's motion to dismiss claims for title and license plate transfer fees.  Likewise, outside of Florida, in *Sigler v. GEICO Casualty Co.*, No. 1:18-cv-01446, 2019 WL 2130137, at **3-4 (C.D. Ill. May 15, 2019), a federal district court in Illinois granted GEICO's motion to dismiss claims for title transfer fees. Plaintiffs believe *Schenck* and *Sigler* were wrongly decided, and note that *Sigler* applies Illinois (not Florida law).  But Plaintiffs admit that the authority on the question central to this case is split, and a similar question is currently pending in an appeal before the Eleventh Circuit, in *Roth v. GEICO Gen. Ins. Co.*, No. 19-11652 (11th Cir.), that could affect the viability of the present case, and the success Plaintiffs and the Class have earned in this case to date.

### 3.      The Settlement Provides for Robust Notice, Simple and Easy Claims Procedure, and a Narrowly-Tailored Release.

The Settlement provided a robust and substantive notice plan.  Direct notice by mail was provided with simple, easy to understand, detachable postage prepaid return mail claim forms. Phillips Decl. at ¶36. Multiple email notices (including reminder notices for a total of three emails) were also provided, which enabled Class Members to "click through" to make a claim on a prefilled claim form on the Settlement website.  *Id.*; *see Braynen v. Nationstar Mortg.*, LLC, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

---

[5] Three Florida state and federal courts have granted summary judgment in favor of the plaintiffs, and several other courts have ruled in favor of the plaintiffs on motions to dismiss.

The Parties also agreed to a streamlined, simple, and straightforward claims' process. For the convenience of members of the Settlement Class in submitting claims, Defendants extracted the date of loss and pre-filled claimant information on the claim forms. *See Braynen*, 2015 WL 6872519, at \*18; *see also* Doc. 199-1 (Settlement Agreement).   No additional information or documentation was required beyond Settlement Class members' declaration that the information is correct to the best of their knowledge, and that the Settlement Class member believes he/she was a GEICO insured who suffered a total-loss during the Settlement Class period who did not receive the Transfer Fees.  Phillips. Decl. at ¶36; *see also Wilson v. Everbank*, 2016 WL 457011, at \*9 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete.").

Moreover, the Settlement Agreement provided a limited release of claims and clarified the limited *res judicata* effect of this case only to the specific Transfer Fees at issue in this lawsuit and the Released Claims as defined in the Settlement Agreement. Phillips Decl. at ¶38. The Settlement Agreement preserves all other claims based on actual cash value or property damage that may be asserted by Class Members except to the extent that such claims seek the Transfer Fees released by the Settlement Agreement. *Id*.

### 4.  Class Notice Has Been Successful with No Objections to the Settlement.

Of the 287,441 claims noticed on April 17, 2020, there was no objection.  Only eight Class Members opted out for 11 claims (one Class Member opted out on three claims). Declaration of KCC Class Action Services LLC Project Manager Robert Coomes attached as Exhibit D to the Motion for Final Approval of Settlement ("KCC Decl.") at ¶18.   A

supplemental notice was made for 268 claims, for whom any objection or opt out is due June 10, 2020. *Id.* at ¶3; Doc. 208, Endorsed Order.  Plaintiffs will inform the Court immediately (and before the hearing) upon receipt of any objection from the 268 supplemental claims. Plaintiffs will provide a list of all opt outs to the Court before the hearing.

As of June 2, 2020, there were over 71,460 claims made, which is an approximately 24.8 percent claims rate. KCC Decl. at ¶17.  The deadline for submission of claims is June 10, 2020, so the claims rates is expected to increase.  This claims made rate exceeds the rate typically experiences in claims made settlements.  *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of approximately 1.1%).

### 5.    Attorneys' Fees are Reasonable and Well Below the Eleventh Circuit Benchmark.

As provided by the terms of the Settlement Agreement, Doc. 199-1 at ¶44, Class Counsel now makes this application for $5,600,000 in attorneys' fees and $225,000.00 in costs. These attorneys' fees are separate from, and will not reduce in any way, the amount of damages available to be paid to the members of the class.  The requested attorneys' fees are 16.9% of the cash benefit to the class (not including prospective relief), 9.1% of the total benefit to the class, including five years of prospective relief (or 14.7% of the benefit to the class when including merely one year of prospective relief). Martin Decl. at ¶9-13; *see also Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at **10-11 (S.D. Fla. Nov. 20, 2017) (court considers benefit to class as maximum settlement cash fund value and injunctive relief when

applying federal benchmark of 20-30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339, 1342-43 (S.D. Fla. 2007) (same).  These percentages all fall well below the Eleventh Circuit benchmark for approving fees of between 20-25% of the benefit to the class. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 ("[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.  And this Court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims.") (citations and quotations omitted).[6]  As more fully set forth below, the reasonableness of the attorneys' fees and costs is also supported by the declaration submitted by Melvin Wright, a complex litigation practitioner in Orlando, Florida (Exh. A ("Wright Decl.")) and the declarations submitted by Class Counsel attached as composite Exhibit B.

## 6.  The Requested Service Awards Are Reasonable.

As provided by the terms of the Settlement Agreement (Doc. 199-1 at ¶45) Plaintiffs seek $10,000 each as compensation for their service as class representatives. Any fees, costs, and incentive awards issued by the Court will be paid separately by Defendants pursuant to the terms of the Settlement Agreement, and will not reduce the amount recoverable by the Settlement Class, nor impact their recovery in any way.  Phillips Decl. at ¶43; *see also, e.g.*, *Swift v. BancorpSouth Bank*, 2016 WL 11529613, at *13 (N.D. Fla. Jul. 15, 2016) (approving service award of $10,000 and noting numerous cases approving awards of similar amounts and up to $300,000); *Rodriguez v. Mears Destination Servs.*, 2018 WL 8061811 (M.D. Fla. Sep.

---

[6] Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit.  *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.,* 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003); *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *8 n.14 (S.D. Fla. Apr. 15).

4, 2018) (approving an incentive award of $10,000).[7]  Each of the five Named Plaintiffs sat for a lengthy deposition, answered extensive discovery requests, responded to requests for production including locating numerous documents, participated in both mediations for a total of approximately 15 hours, attended at least one of the mediations in person, provided input to Class Counsel during both mediations (and after the mediations) relating to settlement negotiations, consistently followed up with counsel on major issues and pleadings, requested updates, sought to understand all legal and factual issues, and stayed up-to-date on relevant rulings and orders from the Eleventh Circuit. Composite Exh. C, Plaintiffs' Declarations. Several of the Plaintiffs took time off from work and traveled 2 or 3 hours to attend mediation in person. *Id*.

### 7.      Case Risks.

This case included and continues to include significant risks, including (1) the Eleventh Circuit may conclude that Fla. Stat. § 626.9743 controls and does not require payment of Transfer Fees, or that the Policy does not require payment of Transfer Fees in the first instance; (2) the Florida Supreme Court or other state appellate court could address and resolve the issue adverse to Plaintiffs and the Class before the case is finalized; and (3) class certification could be overturned based on various factors including that individualized issues exist or that the class is not ascertainable, as Defendants argued in opposing class certification here. Phillips Decl. at ¶25. Moreover, as noted above, there is a split of authority on the question of whether payment of ACV requires inclusion of Transfer Fees in Florida, with at least one Florida state

---

[7] Plaintiffs' counsel reviewed the docket entry attachment for this *Rodriguez* order (Doc. 285-1) and confirmed the incentive awards of up to $10,000.

courts holding that it does not.  *Schenck v. Windhaven Ins. Co.*, No. 16-2018-CA-000023.

Class Counsel was aware of and bore such risks, and, notwithstanding such risks, vigorously prosecuted this Action, as seen not only in the time committed, but also in the over $250,000.00 in costs spent without any possibility such costs and time would be reimbursed if Plaintiffs were unsuccessful in this litigation. Phillips Decl. at ¶¶26-31, 45.

## III.     ARGUMENT AND CITATION OF AUTHORITY

### A.     The Court Should Give Great Weight to the Parties' Agreement.

This Court is not bound by the parties' agreement, and, indeed, has a duty to independently evaluate the requested fees. Nonetheless, the agreement is entitled to great weight because it resulted from adversarial negotiations after the merits were decided. *See, e.g., Strube v. Am. Equity Inv. Life Ins. Co.,* 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.,* 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001).  As has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive.  Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.
>
> Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.,* 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (some internal citations omitted); *see also, e.g. Johnson v. Georgia Highway Express, Inc.,* 488

F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

> This Court has cited *Manners* with approval, and held:
>
> > The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight. *See, e.g., Strube v. Am. Equity Inv. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 28582 at *6–7 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Manners v. Am. Gen. Life Ins. Co.*,No. 3–98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. August 11, 1999).

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.,* 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) ("*Hinson I*").

Many reasons support deferring to the parties' agreement.  First, there is no one "reasonable fee" mandated by applicable law. The notion of reasonableness encompasses a range of numbers about which there can be a legitimate difference of opinion. So long as the requested fee is one that the court agrees is within the range of reasonableness, it should be approved.  Second, the agreement reflects the economic  realities of the marketplace, one in which GEICO wanted to pay as little as possible while Class Counsel had an incentive to obtain a larger award. The competing pressures on the parties served as a substitute for the incentives that normally drive private fee negotiations, ensuring that the agreed upon fee did not constitute a windfall. *See generally, In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572-73 (7th Cir. 1992) (noting that the court's objective is to award a fee providing the lawyers what they would have achieved through arm's length bargaining with a paying client). Third, the fees and costs

negotiated take nothing away from the Class Members.  Pursuant to earlier negotiations, the parties agree to pay Class Members, by separate payment if they make a claim, more than the full actual damages Plaintiffs alleged was owed by Defendants.  Phillips Decl. at ¶43; Doc. 199-2 at ¶44. Fourth, reducing the agreed fee would discourage competent attorneys from handling class actions and agreeing to compromise their fee claims in settlement.   Finally, all Class Members received notice that Class Counsel would make the fee application for the requested amounts and not a single Class Member objected. KCC Decl. at ¶19 and exhibits A and B.

> **B.     The Requested Fee is Reasonable under the Common Fund Doctrine.**
>
> **1.     The Common Fund Doctrine and Eleventh Circuit Law.**

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Lit.,* 727 F.Supp. 1201, 1202 (N.D. Ill. 1989).  The doctrine also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert,* 444 U.S. at 478.

In a case such as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I,* 946 F.2d at 774-75. Courts have significant discretion in choosing the proper percentage. "There is no hard and fast rule . . . because the amount of any fee must be determined upon the facts of each case." *Id.* at

774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express,* and any other "unique" circumstances. *Id.* at 775.  In *Camden I,* the Eleventh Circuit recognized that a fee award of 50 percent of the benefit is the upper limit; that the majority of fee awards fall between 20 and 30 percent; and that 25 percent serves as the "benchmark" unless the circumstances suggest a more appropriate percentage. *Id.* at 774-75.

### 2. The Requested Fee Here is Less than 10 Percent of the Class Benefit.

The benefit to the class from the Settlement in this case consists of: (1) the cash payment to which Class Members are eligible to receive by filing a claim;[8] (2) the value of GEICO's agreement to begin including $79.85 in Transfer Fees to all first-party total-loss claimants, which it began on January 1, 2020; and (3) the fees and expenses agreed to be paid by GEICO. *See, e.g., Camden I,* 946 F.2d at 771 (recognizing that fees are proper under the common fund approach where the class receives "monetary or nonmonetary benefits"); *Hinson v. AT&T Services, Inc.,* No. 3:13-cv-00029-TJC-JRK (Order of 12/16/16, Doc. 172)) ("*Hinson II*") (approving fees of under 12 percent of a common benefit fund including cash available to class, attorneys' fees and costs, and

---

[8] The entire fund available to class members is used to determine the benefit to the class for the purpose of determining fees. That class members did not file claims for the entire amount available under the settlement does not impact the fee analysis. Both the Supreme Court and the Eleventh Circuit have approved calculating fees based on the total value of the settlement, regardless of the actual payout to the class. *See Van Gemert,* 444 U.S. at 480-82; *see also, Waters v. Int'l Precious Metals Corp,* 190 F.3d 1291, 1295-97 (11th Cir. 1999).  This approach is widely followed, both in this circuit and elsewhere. *See, e.g., Montoya v. PNC Bank. NA,* 2016 WL 1529902 at *16 (S.D. Fla. Apr. 13, 2016); *Pinto v. Princess Cruise Lines,* 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *Stahl v. MasTec, Inc.,* 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437-38 (2d Cir. 2007); *Williams v. MGM- Pathe Comm. Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997).

benefit of change in practices); *Manual for Complex Litigation* § 21.7 at 335 (4th ed.) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and expenses... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class"). Numerous decisions recognize that fees paid separately by a defendant are included in the class benefit. *See, e.g., Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 628 (11th Cir. 2015); *Johnston v. Comerica Mtg. Corp.,* 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.,* 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003); *David v. American Suzuki Motor Corp.,* 2010 WL 1628362, at *8 n.14 (S.D. Fla. Apr. 15, 2010).

The fees requested by Plaintiffs here are less than 10 percent of the value of the benefits to the class. The benefits to the class exceed $61.9 million, which includes approximately $27.54 million that GEICO has made available to class claimants, approximately $2.2 million in Transfer Fees paid between January 1 and June 17, 2020 pursuant to GEICO's change in practice, $5.6 million for attorneys' fees, and $26.56 million in benefit of prospective relief from June 17, 2020 through June 17, 2025 due to GEICO's changed practice of paying Transfer Fees. The requested fee of $5.6 million is less than 10 percent of the total benefit to the class ($5.6 million divided by $61.9 million = 0.0904).[9] Martin Decl. at ¶¶10-13.

## C.     The Percentage Sought by Class Counsel is Justified.

---

[9] Even if the Court looked at the actual claims made to determine the cash benefit to the class (which is not the method that courts in this Circuit consider the issue), the percentage fee would be less than 14 percent. This is because there have been approximately 25 percent claims made to date (KCC Decl. at ¶17) on a benefit fund of $27.54 million, which is a claims-made recovery of $6.885 million. The sum of the $6.885 million, $2.2 million in already-realized payments for change in practice, $5.6 million in attorneys' fees, and $26.56 million for GEICO's change in practice is $41.25 million. Fees of $5.6 million is 13.6 percent of that amount. The requested fee also is reasonable even if the Court considers the $27.54 million cash benefit alone without consideration of the benefit to the class from GEICO's change in practice. Exh. A, Wright Decl. at ¶24 (opining that fees sought are reasonable even if calculated as a percentage of $27.54 million).

The requested fee meets the guidelines of *Camden I* and, at less than 10 percent of the class benefit, is "well below the lower-end of the threshold" of 20% approved by the Eleventh Circuit, and *a fortiori* the benchmark of 25%. Exh. A, Wright Decl. at ¶23. Even if the requested fee amounted to 30 percent of the benefit, it would still fall within the range approved in *Camden I*. The requested fee therefore is justified under the case law and the facts of this case. *See, e.g., Waters v. Int'l Precious Metals Corp,* 190 F.3d 1291, 1295 (11th Cir. 1999) (approving fee of 33 and 1/3 percent); *Morefield v. NoteWorld, LLC,* 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) (approving fee of 33 and 1/3 percent); *In re Checking Account Overdraft Litig.,* 2014 WL 11370115, at* 13 (S.D. Fla. 2014) (awarding fees of 30 percent); *Allapattah Services., Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1240 (S.D. Fla. 2006) (awarding fees of 31 and 1/3 percent of settlement); *Pinto v. Princess Cruise Lines,* 513 F.Supp.2d 1334, 1342 (awarding a 30 percent fee).

The Eleventh Circuit confirmed that the *Johnson* factors are "appropriately used in evaluating, setting, and reviewing" the percentage awarded. *Camden I*, 946 F.2d at 775. An analysis of these specific factors, *Id*. at 772 n.3, demonstrates that the requested fee is fair and reasonable. This conclusion is supported by Mr. Wright, who found that the "*Johnson* factors are relevant and support the $5.6 million fee to Class Counsel in this case, whether the fee is calculated as a percentage of $61.90 million or of $27.54 million." Exh. A, Wright Decl. at ¶24.

### 1.    The Time and Labor Required.

Substantial time and labor was required in investigating and litigating this case since May 2017. Class Counsel invested approximately 6,148.1 hours having a value of over $3.9

million (Phillips Decl. at ¶45), and expect to expend approximately 120 more hours through finalization of this case and payment to Class Members. *Id*. at ¶46. This consolidated class action has been contested at every stage.  Motion practice included multiple motions to dismiss, multiple motions to strike pleadings, a motion to strike expert testimony, competing motions for summary judgment, motions to compel, a motion for class certification, and a motion to reconsider class certification, many of which involved complex and novel questions of fact and law. *Id*. at ¶¶15-24. The parties took 17 depositions, including class representatives, corporate representatives, and expert witnesses. *Id*. at ¶13. Plaintiffs reviewed over 43,000 pages of documents produced by Defendants. *Id*. at ¶14.  Plaintiffs served five sets of interrogatories, six sets of document requests, and requests for admission, and responded to numerous requests for production and interrogatories. *Id*.  Plaintiffs analyzed millions of lines of data involving over 270,000 total loss claims. Martin Decl. at ¶8.  Class notice has been completed relating to over 287,000 claims.  Phillips Decl. at ¶12.  Class counsel engaged in a lengthy settlement negotiation process relating to over 75 pages of settlement and notice documents, plus website content, FAQs and answers, phone recordings, and help desk scripts. Class counsel negotiated very favorable notice provisions that ensured fair notice to Class Members and resulted in a much higher than average claims rate.

The work was justified in view of the issues and how the case was defended. As a result, this factor supports the requested fee. *See* Exh. A, Wright Decl. at ¶24(a).

### 2.     The Novelty and Difficulty of the Questions Involved.

The case involved issues of first impression. These legal issues required analysis and briefing relating to regulatory, statutory, and common law.  There were also complex

factual and class certification issues requiring expert involvement to analyze voluminous data for over 300,000 claims, and to determine which of those claims involved leased vehicles.  Because GEICO does not track leased vehicle data, Class Counsel vigorously pursued the production of electronic data to enable Class Counsel to identify leased vehicles from a multitude of "leased-vehicle indicators" contained in GEICO's data.  Class counsel spent over $10,000 checking its leased vehicle determinations against publicly available vehicle data.

The result of Class Counsel's pursuit of necessary data was Defendants production of 19 sets of data and documents.  The difficulty of the case supports the requested fee award. *See* Exh. A, Wright Decl. at ¶24(b).

### 3.    The Skill Requisite to Perform the Services Properly.

"This case required class counsel with a very high level of energy, skill and experience in class action litigation.  It required counsel with the expertise to address the many legal issues and with the experience to manage the logistics inherent in a class comprised of thousands of members". Exh. A, Wright Decl. at ¶24(c). Class Counsel possessed the necessary experience and skill. *Id*. at ¶24(d).

### 4.    The Preclusion of Other Employment.

Due to the substantial time commitment, all of the Class Counsel firms forewent other fee and profit-generating opportunities in pursuit of this case. Exh. B, Composite Class Counsel Declarations. This is unsurprising given the nature of the case. Exh. A, Wright Decl. at ¶24(f).

### 5.    The Customary Fee.

The usual fee range for common fund cases is 20% to 30%, with 50% as the upper limit. *Camden I,* 946 F.2d at 774-75. The fee requested under this Settlement is well under this customary range. *Id.; see also*, Exh. A, Wright Decl. at ¶24(g).

### 6.     Whether the Fee is Fixed or Contingent.

This action was prosecuted entirely on a contingent fee basis. Phillips Decl. at ¶27. If Plaintiffs had not achieved a recovery, Class Counsel would have received nothing and would have suffered a direct out-of-pocket loss of all expenses due to the fact that they advanced all the expenses of the litigation. *Id*. Numerous courts have recognized that such risk deserves extra compensation and is a critical factor in determining the reasonableness of a fee. *See, e.g. In re Dun & Bradstreet Credit Svcs. Cons. Lit.,* 130 F.R.D. 366, 373 (S.D. Ohio 1990); *Behrens v. Wometco Enterprises., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889 F.2d 21 (11th Cir. 1990); *In re Cont. Ill, Sec. Lit.,* 962 F.2d 566, 569 (7th Cir. 1992).

### 7.     Time Limitations Imposed by the Client or Circumstances.

There were times during this litigation when Class Counsel worked under considerable time pressure due to various deadlines. Class Counsel do not contend that this factor justifies either a higher or lower fee as time pressure in cases of this sort is expected.

### 8.     The Amount Involved and the Results Obtained.

"[C]lass counsel obtained a very substantial recovery for the class under difficult circumstances." Exh. A, Wright Decl. at ¶24(e). Class Members who make a claim will recover over 100 percent of the Transfer Fees and interest that the lawsuit alleges they

were underpaid. Phillips Decl. at ¶34; Doc. 199-1 at ¶44.  The amount of cash available to make these payments is approximately $27.54 million. Martin Decl. at ¶10. The value to Class Members from GEICO's agreement to change its practice is approximately $2.2 million for the period until the fairness hearing, and a minimum of $4.88 million for the one year after the fairness hearing. *Id.* at ¶9. The common benefit fund conservatively is thus $61.9 million. Phillips Decl. at ¶35; Martin Decl. at ¶10.

### 9.     The Experience, Reputation, and Ability of the Attorneys.

The lawyers who represent the class have considerable experience, skill and reputation in both complex civil litigation and class actions. "I believe the members of the class counsel team had a very high level of expertise and skill, and that their excellent reputations are well-earned." Exh. A, Wright Decl. at ¶24(d).

### 10.     The Undesirability of the Case.

This case was not undesirable except to the extent that it was a difficult case with substantial risk that was vigorously defended, as well as a case of first impression.

### 11.     The Nature and Length of the Relationship with the Client.

Class Counsel had no prior relationship with any of the Named Plaintiffs before this case.  Class Counsel entered their standard representation agreements with each of the Named Plaintiffs.  Class Counsel do not believe that this factor supports an adjustment of the fee award.

### 12.     Awards in Similar Cases.

"[A]wards in similar cases…more than justifies the fees sought here." Exh. A, Wright Decl. at ¶24(h) (citing, *inter alia*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (awarding fees and costs of approximately

9.4% of benefits in case making similar claims for total-loss vehicles); *Hamilton*, No. 13-cv-60749, ECF No. 178, 2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 23, 2014)[10] (awarding fees of 16% in forced-place insurance settlement); *see also, Camden I,* 946 F.2d at 774-75. The fees sought by Class Counsel here are consistent with and lower than fees in similar cases. *See, e.g., Waters,* 190 F.3d at 1295 (11th Cir. 1999) (33 1/3 percent); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d. 1330, 1357 (S.D. Fla. 2011) (30 percent); *Columbus Drywall & Insulation, Inc. v. Masco Corp.,* 2012 WL 12540344, at *2 (N.D. Ga. Oct. 26, 2012) (awarding fee of 33 and 1/3 percent and listing other cases awarding fees based on similar or higher percentages); *In re Friedman's, Inc. Securities Litig.,* 2009 WL 1456698, at *4 (N.D. Ga. May 22, 2009) (approving 30 percent fee); *Wolff v. Cash 4 Titles,* 2012 WL 5290155, at **5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" of the benefit to the class and listing numerous cases awarding fees of 30 percent or higher).

### 13.    Other Factors

The economics of class actions require that class counsel be adequately compensated; otherwise consumers will find it increasingly hard to find good lawyers to take their cases.  As one court observed:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

---

[10] *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *8 (S.D. Fla. Oct. 24, 2014).

*Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 679, 687 (M.D. Ala. 1988); *see also, e.g. In re Checking Account Overdraft Litig.* 2014 WL 11370115, at *17 (If class counsel is not awarded a bonus, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing") (*quoting Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990)). "Without [a] premium incentive, it simply would make no economic sense for counsel to undertake a case like this one." Exh. A, Wright Decl. at ¶32. Other factors support the fee requested here. *Id.* at ¶¶25-26.

### D. The Requested Fee is Reasonable under the Lodestar Approach, Including Under §627.428.

While requiring use of the percentage of the benefit method in cases such as this one, the Eleventh Circuit has authorized courts to use the lodestar method as a cross-check on the reasonableness of the requested fee. *Waters*, 190 F.3d at 1298. The requested fee here is reasonable under the lodestar approach, which permits multiples that range "from less than 2 to more than 5 times the time value of the hourly charges." Exh. A, Wright Decl. at ¶32.  A $5.6 million award to Class Counsel "is reasonably sufficient (slightly more than 1.4 times the calculated lodestar $3,954,142.55 for Class Counsel) to compensate [Class Counsel] for the economic risks they undertook in accepting and prosecuting this case." *Id.; see also, e.g., Ingram,* 200 F.R.D. at 696 (noting that multipliers range from less than two to more than five times the reasonable hourly charges); *Manners,* 1999 WL 33581944, at *31 (finding that a multiplier of 3.8 was justified, noting that multipliers in similar litigation have ranged from 1 through  4, and collecting  the relevant cases);  *Behrens,* 118 F.R.D. at 549 (S.D. Fla. 1988)

(determining that multipliers range from 2.26 to 4.5 with "three appear[ing] to be the average"); *Kuhnlein v. Dept. of Revenue*, 662 So. 2d 309, 315 (Fla. 1995) (multiplier of 5 proper in class action to place greater emphasis on monetary results achieved and to alleviate contingency risk factor and attract high level counsel); *see also Roth v. GEICO General Ins. Co.*, No. 16-cv-62942-WPD (Doc. 333, Order awarding a 2.0 multiplier).

This is also true under a Fla. Stat. § 627.428 analysis. *See Roth v. GEICO General Ins. Co.*, No. 16-cv-62942-WPD (Doc. 333, Order awarding a 2.0 multiplier in contested fee petition after judgment). But the Eleventh Circuit has held that fee-shifting statutes are not applicable where attorneys' fees are determined by settlement and not pursuant to a litigated judgment. *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1217 (11th Cir. 2018). Because this case is a settlement, Fla. Stat. § 627.428 does not set the standard for a fee award. Nevertheless, as confirmed by Mr. Wright, the fee amount requested is reasonable even under the standard of Fla. Stat. § 627.428. Exh. A, Wright Decl. at ¶¶31, 33-38; *see also Roth* (a 2.0 multiplier proper under a similar case with similar risks). Mr. Wright's declaration sets forth the applicable standards under governing Florida law, the factors applicable to hours expended, hourly rates, and the proper multiplier, and opined that the fees sought here are reasonable. Exh. A, Wright Decl. at ¶¶31, 33-38 (citing *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985); *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990); *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017)).

If a typical lodestar and multiplier analysis were employed in this case, Class Counsel could seek a substantially larger fee.[11] None of Class Counsel would have undertaken this case

---

[11] Plaintiffs' expert Michael Wright has reviewed Class Counsel's billing and lodestar records. Typically, because

without the opportunity for a multiplier. *See* Exh. B.

### E.   The Court Should Approve Reimbursement to Class Counsel for Expenses.

Class Counsel seeks approval of up to $225,000.00 in costs and expenses.  Class Counsel to date has expended over $258,329.59 in litigation costs and expenses.  Phillips Decl. at ¶45.  A supplemental itemization of any additional expenses will be filed before the fairness hearing.  The Court should direct GEICO to pay to Class Counsel the sum of all expenses up to $225,000.00 as provided in the Settlement. *See, e.g., Waters,* 190 F.3d at 1298 (recognizing that class counsel entitled to expenses in addition to an award of fees); *see also*, Exh. A, Wright Decl. at ¶28 ($225,000.00 in litigation expenses is reasonable).

### F.   The Court Should Approve Service Awards to the Class Representatives.

Courts routinely approve service awards to compensate class representatives for their time and efforts on behalf of the class and encourage them to serve in a representative capacity. *See, e.g., Hinson II* (approving service awards of $15,000 per class representative); *In re Checking Account Overdraft Litig.,* 2014 WL 11370115, at **12-13 ($10,000 service awards to 12 named plaintiffs); *Spicer v. Chi. Bd. Options Exchange, Inc.,* 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff). The five class representatives devoted

---

fees are based upon a percentage of the recovery, courts in this Circuit do not find it necessary to scrutinize Class Counsel's lodestar or undertake a review of Class Counsel's billing records. *See, e.g., In re Checking Account Overdraft Litig.,* 2014 WL 11370115, at *15. Accordingly, although the information relating to each firm's hours, rates and expenses are summarized in the counsel declarations, Class Counsel are not submitting their detailed billing records because the records are not redacted, contain work product, and might reveal information to opposing counsel that would adversely impact Plaintiffs' position if the settlement is not approved. Nonetheless, if this Court wishes to review the records, Class Counsel will immediately provide them.

substantial time to this litigation, meeting with counsel, sitting for depositions, traveling to and appearing at mediation, responding to written discovery, producing numerous documents, and consulting regarding settlement.  Exh. C, composite of Named Plaintiff Declarations.  Each of the Named Plaintiffs missed work to participate in mediations and agreed to declare impasse on at least two occasions during negotiations over releases and notice and thus were willing to risk their recovery and delay their payments for the good of the class.  *Id.*  Because of their efforts, other Class Members received a favorable Settlement. Exh. A, Wright Decl. at ¶29.  Accordingly, the service awards should be approved. *Id.* (requested service awards are "extremely reasonable").

## CONCLUSION

For the reasons set forth in this application, Class Counsel request the Court award them fees of $5.6 million and expenses of $225,000.00, and approve service awards of $10,000 to each of named Plaintiffs Anthony Cook, Maurice Jones, Micah Bellamy, Anthony Lorenti, and Ashley Barrett.

Respectfully submitted this 2nd day of June 2020.

/s/Jacob Phillips
Edmund A. Normand
Jacob L. Phillips
**Normand Law PLLC**
P.O. Box 140036
Orlando, FL 32814
Telephone: (407) 603-6031
Facsimile: (509) 267-6468
ed@ednormand.com
jacob@ednormand.com

Christopher B. Hall
Andrew Lampros
Appearing Pro Hac Vice

Hall & Lampros, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
alampros@hallandlampros.com
chall@hallandlampros.com

Bradley W. Pratt
**Pratt Clay, LLC**
4401 Northside Parkway, Suite 520
Atlanta, GA 30327
Telephone: (404) 949-8118
Facsimile: (404) 949-8159
bradley@prattclay.com

Christopher J. Lynch
**Christopher J. Lynch, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchaw.com

Tracy L. Markham
**Southern Atlantic Law Group, PLLC**
2800 N. 5th Street, Suite 302
St. Augustine, FL 32084
Telephone: (904) 794-7005
Facsimile: (904) 794-7007
tlm@southernatlanticlawgroup.com
pleadingsonly@southernatlanticlaw.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF system this 2nd day of June

2020.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in the some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,
*/s/ Jacob Phillips*
