# Exhibit A

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY COOK, MICAH BELLAMY, and
MAURICE JONES, As Personal Representative
and on behalf the Estate of Kailyn Jones,
each individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
GENERAL INSURANCE COMPANY,

      Defendant.

_____/

CASE NO.: 6:17-cv-
891-ORL- 40KRS

ANTHONY LORENTI and ASHLEY BARRETT,
Individually and on behalf of all others similarly
situated,

      Plaintiffs,

v.

GEICO INDEMNITY COMPANY,

      Defendant.

_____/

CASE NO.: 6:17-cv-
1755-PGB- 40DCI

**DECLARATION OF MELVIN WRIGHT, ESQ.
IN SUPPORT OF CLASS COUNSEL'S APPLICATION
FOR AWARD OF ATTORNEYS' FEES AND COSTS**

_____

      Pursuant to 28 U.S.C. § 1746, I, Melvin B. Wright, Esquire, declare under penalty of

perjury that to the best of my knowledge, the following is true and correct:

EXHIBIT A

## I.      PROFESSIONAL CREDENTIALS AND BACKGROUND INFORMATION

1.      I am a partner in the firm Colling Gilbert Wright & Carter.

2.      I graduated from the Walter F. George School of Law at Mercer University in Macon, Georgia in 1985, and I have been a member of The Florida Bar in good standing since 1986.  I am also a member of the State Bar of Georgia and am licensed to practice in Tennessee.

3.      Since 1993, I have exclusively handled serious personal injury claims on behalf of accident victims. In 1996, I received my board certification as a civil trial specialist from the Florida Bar.  Since 1999, I have also been board certified by the National Board of Trial Advocacy of the National Board of Legal Specialization and Certification that is accredited by the American Bar Association. I am also board certified in pre-trial advocacy by the National Board of Civil Pretrial Practice Advocacy. I have been recognized as a "Super Lawyer" every year since 2006.  I have been recognized by Florida Trend Magazine as a "Legal Elite" since 2009. In 2013, I was nominated and selected as a member of the American Board of Trial Advocates (ABOTA) and I am now also a "life fellow" of the ABOTA Foundation. I am a past President of the Central Florida Chapter of ABOTA, having served as Chapter President in 2018. In 2018, I was inducted into the International Society of Barristers (ISOB), an invitation-only professional society dedicated to promoting professional integrity and civility, as well as the right to jury trial and an independent judiciary.  In 2014, I was appointed by Chief Judge Belvin Perry to serve as the Central Florida Chapter of ABOTA's appointed member of the Ninth Judicial Circuit Professionalism Panel created by mandate of the Supreme Court of Florida to address in a cooperative and non-punitive manner allegations by  judges, lawyers and non-lawyers, of improper behavior by attorneys in the Ninth Judicial Circuit.  For many years in a row, I have been recognized by my peers with an "AV

EXHIBIT A

Preeminent Peer Review Rating" from Martindale-Hubbell. I have lectured on numerous occasions and am prepared to testify as to my additional qualifications and experience.

4.      I have practiced in federal and state court litigation for over 30 years in Central Florida. I have extensive experience in complex litigation.

5.      I have represented plaintiffs in mass torts, complex product liability actions, complex insurance coverage disputes, wrongful death, and personal-injury actions. I have represented plaintiffs in complex legal disputes in states other than Florida, as well, including Tennessee and Massachusetts. As a result, I am aware of the legal market for complex multi-state insurance cases, multi district mass torts and class actions.

6.      I have been previously qualified to testify, and have testified, as an expert witness, either through deposition, affidavit, or trial testimony on the reasonableness of attorneys' fee awards.

7.      Based on my experience as an attorney and, specifically, as an attorney with extensive complex litigation experience, I am qualified to offer my expert opinions on the subjects discussed herein.

8.      In reaching my expert opinions, I reviewed the documents identified on Exhibit 1 attached hereto. In addition, I have discussed aspects of the case with Class Counsel. I have also spoken to other complex litigation and class action attorneys in the relevant local market.

9.      My qualifications are set out in additional detail in Exhibit 2 attached hereto.

10.      I am being compensated at a rate of $500.00 per hour.

11.      I was engaged by Plaintiffs' Class Counsel Edmund A. Normand to serve as an expert witness in this case regarding the recoverability of attorney's fees and costs. Since that time,

EXHIBIT A

I have been periodically apprised of the status of proceedings, and participated in conference calls with Class Counsel regarding the issues discussed herein.

12.     I have been asked by Plaintiffs and Class Counsel to provide my expert opinions on the reasonableness of attorney fees and expenses and costs included in the proposed settlement.

13.     Among the items reviewed are the numerous unredacted pleadings and declarations in this matter, and the summaries of hours expended and rates for the time incurred by Class Counsel in prosecuting this matter, recent case law development on attorneys' fees in class action settlements, discovery materials, and pleadings from the similar *Roth v. Geico* litigation.  Based on my review of the aforementioned materials and conversations with Class Counsel, I am aware that this consolidated class action has been contested at every stage. Motion practice included multiple motions to dismiss, multiple motions to strike pleadings, briefing on expert testimony, competing motions for summary judgment, motions to compel, briefing on class certification, and briefing on reconsideration of class certification. I am aware that the parties took over 16 depositions, including class representatives, corporate representatives, and expert witnesses, in Florida, Georgia, Washington D.C., and New York.

14.     Based upon my review of the pleadings and the declarations submitted by Jacob Phillips and Jeffrey Martin in support of preliminary approval, I am aware that Class Counsel reviewed over 43,000 pages of documents produced by Defendant. Plaintiffs served five sets of interrogatories, six sets of document requests, and requests for admission. Plaintiffs analyzed millions of lines of data involving over 270,000 total loss claims.  Class notice has been completed relating to over 250,000 claims.

EXHIBIT A

15.     I reviewed the Declarations of Edmund Normand, Christopher Lynch, Christopher Hall, Tracy Markham, and Bradley Pratt in support of the Motion for Attorneys' Fees and Costs, in addition to the declarations, pleadings, and discovery referenced above.

16.     I reviewed the redacted timesheets, which reflect hours worked and hourly rates for all timekeepers in each of the law firms comprising Class Counsel in this matter, as well as a summary chart of all timekeepers' hours and rates. I have also reviewed the expenses and costs of each of the law firms comprising Class Counsel. These redacted timesheets and expenses and costs are attached as exhibits to the Class Counsel Declarations.

17.     I have reviewed the terms of the Settlement, and understand the relevant terms to be as follows:

   a.  GEICO will pay all settlement class members who submit timely claims an amount that is the full amount that plaintiffs claim they would have recovered for each class member if plaintiffs prevail on their breach of contract claim in this case, including prejudgment interest;

   b.  Prospectively, GEICO will include in payments for total loss vehicles insured under Florida policies the same amount in title and registration transfer fees ($79.85) without condition, absent a controlling change in the law or a change in the Policy language explicitly excluding such fees;

   c.  Class Members who do not opt-out are eligible to submit a claim, which was pre-filled and included with the Notice with postage prepaid. To receive payment, Class Members must submit a timely claim, which will be overseen by KCC.

   d.  GEICO is paying the costs of notice and administration;

EXHIBIT A

e.    Subject to court approval, GEICO will pay an award of attorneys' fees not to exceed $5,600,000, and costs not to exceed $200,000, and pay incentive awards not to exceed $10,000 to the Named Plaintiffs.

18.    I understand that the Settlement Agreement was achieved after a mediation session, with extensive follow-up negotiations, conducted with the assistance of mediator Rodney Max.

19.    I am aware that this Court is not bound by the parties' settlement agreement, and has a duty to independently evaluate the requested fees. I am also aware that this agreement is entitled to great weight because it resulted from adversarial negotiations after the merits were decided.

20.    I have reviewed the declaration of Rodney Max, in which Mr. Max explained that the Parties agreed on the material terms concerning relief to the Class (along with all relevant notice and claims provisions) prior to negotiating the issues of attorneys' fees, costs, and incentive award.

21.    I am familiar with the governing law within the Eleventh Circuit regarding the payment of fees and expenses to class counsel as stated in *Poertner v. The Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015); *Camden I Condominium Ass'n et al. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), and the authorities cited therein, particularly, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).  I am also familiar with the standards and considerations in regard to the award of attorneys' fees set forth in Rule 4-1.5(b) of the Rules Regulating the Florida Bar.

## II.    THE AMOUNT OF ATTORNEYS' FEES SOUGHT ARE REASONABLE

22.    In my opinion, the Settlement achieved an excellent result and confers a significant benefit upon Class Members. Based upon my review of the terms of the Settlement and the

EXHIBIT A

declaration submitted by Jeffery Martin, the monetary value of all claims under the terms of the Settlement Agreement for Transfer Fees and prejudgment interest is approximately $61.90 million, which includes: (1) approximately $27.54 million in cash available for claimants; (2) $28.76 million in prospective relief from GEICO's change in practice over a five-year period;[1] and (3) $5.6 million in attorneys' fees if approved by the Court. I am also aware that this Court previously granted summary judgment in favor of Plaintiffs and awarded Transfer Fees in the amount of $79.35 to Plaintiffs and the previously certified class, and that the Settlement Agreement provides relief of this amount plus an additional $0.50, for a total of $79.85 to Plaintiffs and members of the Settlement Class. Finally,  I am also aware that any award of attorneys' fees and costs will be paid by GEICO separately from the payments provided to Class Members, and thus that the payment of $79.85 plus prejudgment interest will be completely unaffected and will not be reduced by any award of attorneys' fees and costs.

23.     In *Camden I*, the Eleventh Circuit also noted that while there is "no hard and fast rule mandating a certain percentage of a common fund which may be reasonably awarded as a fee," the "majority of common fund fee awards fall between 20% to 30% of the fund" with the median of 25 percent as a "benchmark" percentage.  946 F.2d at 774-75. The $5.6 million in fees sought represent 9.04% of the total benefits secured for the class. If only one-year of prospective relief is included, the fees sought represent 14.73%. If no prospective relief is included, the fees sought represent 16.90%. In each case, the fees sought are well below the lower-end of the threshold set forth by the Eleventh Circuit in Camden.

24.     The Eleventh Circuit also noted that the fee award may be "adjusted in accordance with the individual circumstances of each case," and that the factors described in *Johnson*

---

[1] The value of nonmonetary benefits should be considered in determining the fee for class counsel. *See Camden I*, 946 F.2d at 775.

EXHIBIT A

"continue to be appropriately used in evaluating, setting, and reviewing percentage awards in common fund cases."  946 F.2d at 775.  I believe the following *Johnson* factors are relevant and support the $5.6 million fee award to class counsel in this case, whether the fee is calculated as a percentage of $61.90 million or of $27.54 million:

    a.  <u>Time and Labor Required</u>: this case was substantial in scope due to the number of class members and entities involved and it was factually complex, particularly concerning data analysis and class member identification.  The case has been as ably and vigorously defended by very competent defense counsel, resulting in significant briefing, multiple hearings, extensive discovery practice, and numerous novel issues of law. *See supra* ¶¶14-15.  The time for class counsel documented in Class Counsel's declarations reflect that class counsel will spend over 5000 hours prosecuting this case from its commencement in 2016 through the fairness hearing.  The time records are sufficiently detailed so as to show that the work performed was necessary and appropriate for this case, the time spent was reasonable, and there was no material duplication of effort among the attorneys representing the class.

    b.  <u>Novelty and Difficulty of the Issues Presented</u>: in my opinion, this case presented novel and difficult issues for numerous reasons, including (i) that it was a case of first impression without any precedent or even guidance from any federal or state appellate court, (ii) that GEICO is known to be a voracious litigator with vast resources, (iii) that the case was defended by Evershed Sutherland, one of the preeminent insurance class action defense firm in the country, (iv) the data necessary to address liability and class certification issues on a class basis was

EXHIBIT A

extensive, as addressed above, (v) multiple discovery issues were hotly contested resulting in the expenditure of significant time and resources by class counsel, (vi) the litigation included issues related to intervention and substitution of class representatives, which is an underdeveloped area of the law, (vii) the governing statute for total-loss first-party claims does not explicitly require payment of transfer fees, and (viii) data issues in these cases are extremely unpredictable, Class Counsel had to substantially rely on the GEICO's own data to show class certification and damages, and reliance on GEICO's own data makes the ability to efficiently and reliably secure favorable data difficult;

c. <u>The Skill Requisite to Perform the Legal Service Properly</u>: the skill necessary to litigate this first-impression class action was significant, especially given the manner in which the case was contested, the complexity of Defendant's computer systems, the volume of data, and the methods required to determine ascertainability. The legal issues presented in the motions, including the motions for summary judgment, required careful and skillful legal analysis. This case required class counsel with a very high level of energy, skill, and experience in class action litigation.  It required counsel with the expertise to address the many legal issues and with the experience to manage the logistics inherent in a class comprised of hundreds of thousands of members;

d. <u>The Experience, Reputation, and Ability of the Attorneys</u>: I have reviewed the descriptions of the experience of each member of the class counsel team, and I am personally aware of the favorable reputation of Mr. Normand and his firm in the local community. Based on this, the work product of class counsel as reflected in

EXHIBIT A

their papers filed in this case, and the result obtained for the class as reflected in the Settlement Agreement, I believe the members of the class counsel team had a very high level of expertise and skill, and that their excellent reputations are well-earned;

e. <u>The Amount Involved and the Results Obtained</u>: as discussed above in this declaration, class counsel obtained a very substantial recovery for the class under difficult circumstances. Pursuant to the settlement, Class Members will receive 100% of the mandatory Transfer Fees sought in the operative Complaint. Further, GEICO will be forced to change its business practice and pay sales tax and title transfer fees to its insureds on all owned vehicles. This result is particularly impressive given adverse court rulings in other cases, which created a split of opinions on the merits of the case and highlights the risk of a *de novo* appeal. *See, e.g.*, *Schenck v. Windhaven Ins. Co.*, No. 16-2018- CA-000023 (Fla. Cir. Ct. Duval Cty. May 17, 2019). Class Counsel also made important efforts to reach class members through the settlement website, toll-free telephone line, and telephone calls personally by class counsel, all to ensure that class members were made aware of the settlement and given the opportunity to file a claim. As a result of these efforts by class counsel, the claims rate in this case is approximately 24.8% representing a total of over 71,000 claims submitted, which is significantly higher than the claims rate in other class action litigation.

f. <u>Preclusion of Other Employment Due to Acceptance of the Case</u>: in my experience in litigating large complex cases, and my experience and understanding of the realities of practicing in a small law firm on behalf of plaintiffs, I am aware that undertaking an engagement such as this case requires significant time and

EXHIBIT A

resources, both monetarily and otherwise, to the exclusion of cases that otherwise could be undertaken. In my opinion, is virtually impossible for a small firm (or collection of small firms) to prosecute such a case without foregoing numerous other work opportunities. I have examined the declarations of Class Counsel, which confirm they have foregone other opportunities and been precluded from pursuing other work due to the time requirements and monetary costs of this litigation.

g.  Customary Fee: as noted in *Camden I*, the usual fee range for common fund cases is 20% to 30%, with 50% at the upper limit.  946 F.2d at 774, 775.  The fee called for under this agreement is well under this customary range.

h.  Awards in Similar Cases: I have analyzed several similar cases and the fees awarded therein. In the aforementioned *Roth* case, the plaintiff and attorneys secured damages of approximately $6.5 million and were awarded fees of $6.3 million, which is obviously a significantly higher percentage of the benefits secured. In *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017), the settlement structure and claims were extremely similar (failure to pay sales tax after total-loss with claims-made settlement for 100% of damages), and the Middle District awarded fees representing more than 9% of the total benefits conferred, the same as requested here. I also analyzed two force-placed insurance settlements, which were similar settlement structures but with less than 100% damages secured. In those cases, the percentage awarded were 14.6% and 16%. *Montoya*, at *55; *Hamilton*, No. 13-cv-60749, ECF No. 178, 2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 23, 2014). Thus, the awards in similar cases, in my opinion, more than justifies the fees sought here.

EXHIBIT A

     i.   <u>Remaining *Johnson* Factors</u>: do not believe the other factors described in *Johnson* should affect the appropriate percentage fee award for this case in any material way.

25.    Additionally, the Eleventh Circuit has stated that "[o]ther pertinent factors" which should be considered in determining the appropriate percentage to be awarded as a fee to class counsel include "the economics involved in prosecuting a class action."  946 F.2d at 775. Class counsel undertook this representation on a full contingency basis. There is substantial economic risk to represent a class on a contingency basis against a well-financed defendant represented by skilled defense counsel.  Based upon my experience and my review of Class Counsel's declarations, at the outset of the case, class counsel should have expected and did expect to invest substantial time and expenses over a protracted period of time, with a significant delay in obtaining recovery for such investment, not to mention the very-real risk of no recovery at all.

26.    The risk of the case relating to both liability and class certification, the significant expenses necessary to incur and place at risk – over $250,000.00, not including my charges – the novelty of the case, the fact that it was a case of first impression without any precedent or even guidance from any federal or state appellate court, the fact that GEICO is known to be a voracious litigator with vast resources, and many other reasons are such that the risk facing Class Counsel was significant. This can be additionally seen in the fact that, to my knowledge, very few, if any, attorneys in Central Florida (other than Normand PLLC) litigate class-action first-party coverage disputes. The closest localities of which I am aware that litigate class-action first-party coverage disputes are located in South Florida and Tampa markets.

27.    In my opinion, the manner in which attorneys' fees and costs were negotiated was appropriate.  According to my conversations with Class Counsel and the declarations submitted by Class Counsel, all substantive terms for the benefit of the class were finalized prior to

EXHIBIT A

addressing the amount of class counsel's fee and the reimbursement of expenses.  Rodney Max is an experienced and well-respected class action mediator, and would require as such. This manner of proceeding, in my opinion, ensured that Settlement was free from any hint of collusion or conflicts of interest.

28.     I have reviewed the costs submitted by the law firms in this case. In my opinion, the total costs sought of $225,000.00 or less (pending completion of the settlement process, including payment of my fees and time, which may be increased if I appear at the final fairness hearing) are reasonable and necessary in this matter.

29.     The declarations submitted by the Named Plaintiffs and Class Counsel set forth the extensive assistance provided by the named plaintiffs in prosecuting this case.  The named plaintiffs: (i) responded to document requests and interrogatories; (ii) during the mediation and following negotiations, insisted on the most favorable terms in the Settlement Agreement and made clear they would resume litigation absent agreement by GEICO to such terms (including robust notice, extremely simple claims processes, and 100% damages); (iv) traveled long distances at their expense to attend mediation sessions; and (v) assisted class counsel in investigating the claim at the outset of litigation. In my experience, a knowledgeable, responsive, and diligent client is indispensable in complex cases. Because their efforts directly produced a class recovery of over $60 million dollars, a $10,000 incentive award to the Plaintiffs is extremely reasonable.

### III.     THE FEES SOUGHT ARE INDEPENDENTLY REASONABLE UNDER A FLA. STAT. § 627.428 "LODESTAR"-BASED ANALYSIS

30.     Under Eleventh Circuit law, that the allegations asserted raise a fee-shifting statute does not require that fees sought pursuant to a Settlement agreement are governed by such statute, but rather can be (or should be) calculated as a percentage of the settlement. *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1217 (11th Cir. 2018) (approving award of attorneys'

EXHIBIT A

fees of 33.3% of settlement benefits and holding that percentage-of-the-fund analysis "applies to class settlements that result in a common fund even when class counsel could have pursued attorney's fees under a fee-shifting statute.").

31.     However, to the extent the fee-shifting statute is relevant, in my opinion, and based upon my knowledge of review of governing law concerning Fla. Stat. § 627.428 and Eleventh Circuit law, the fees sought are reasonable on the independent basis of Fla. Stat. § 627.428 and a "lodestar" analysis.

32.     According to Class Counsel's declarations, the aggregate value of the 6,148.1 hours invested or to be invested by class counsel in this case, utilizing a strict "lodestar" approach is $3,954,142.55. To adequately incentivize class counsel to undertake a case of this size and scope, with these risks, the fee award must represent a sufficient premium over the time value of the work invested in the case to justify taking these economic risks.  Without that premium incentive, it simply would make no economic sense for counsel to undertake a case like this one.  To provide the premium incentive for class counsel to undertake the risks in class litigation such as this, the lodestar approach permits a court to award a multiple of the loadstar even under a federal "lodestar" analysis. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696, (N.D. Ga 2001); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944 at *31 (N.D. Tenn., Aug. 11, 1999). Multipliers have ranged from less than 2 to more than 5 times the time value of the hourly charges. *See Ingram*, 200 F.R.D. at 696.  I believe that a $5.6 million award to class counsel represents a premium over the $3,954,142.55 value of their time that is reasonably sufficient (approximately 1.4) to compensate them for the economic risks they undertook in accepting and prosecuting this case.  Consequently, the $5 million fee is reasonable for purposes of the *Johnson* factors and Rule 4-1.5(b), RRTFB.

EXHIBIT A

33.     Moreover, in my opinion, under the Fla. Stat. § 627.428 analysis, namely *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985), *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990), and *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017), and their progeny, which govern the reasonableness of the lodestar and application of a contingency risk multiplier under Florida law, the fees sought are also reasonable.

34.     *Rowe* set forth essentially the federal standard for determining reasonable hours and a reasonably hourly rate. Thus, much of my opinions concerning the *Johnson* factors above are equally relevant here.

35.     In my opinion, the hours expended (6,148.1) are reasonable because my review of case filings and other communications indicates that GEICO extensively contested the case through motions to dismiss, motions to strike, *Daubert* challenges, class certification, briefing on intervention and substitution, significant discovery disputes and motion practice, numerous depositions across the country, cross-motions for summary judgment, class notice, and imminent judgment as to the class. I believe that GEICO's extensive litigation and tactics deployed in data production, including rolling productions of data, erroneous data productions, amended data productions, and failure to produce discovery also contributed to increase the number of hours necessarily expended by Class Counsel. As set forth above, the time and labor required and the difficulty and novelty of the questions presented both support the reasonableness of the hours expended.

36.     In my opinion, the hourly rates utilized by Class Counsel, ranging from $475.00 to $750.00 for attorneys, are also reasonable in light of the skills required to properly litigate the case, preclusion of other employment, time limitations imposed by the case, Class Counsel's experience,

EXHIBIT A

reputation, and ability, and the nature of the relationship with Named Plaintiffs. The hourly rates also comport with (or are less than) customary fees in this locality. *See, e.g.*, *Preman v. Pollo Operations*  fill in cite (Order approving settlement in 2018 and approving hourly rates in the amount of $950 for the partner and $717 for associate and 2015 graduate); *Jackson v. Wendy's Int'l, LLC*, Case No. 6:16-cv-210, Doc. 157 (M.D. Fla. Feb. 26, 2019) (approving hourly rates ranging from $450.00 for junior associate to $950.00 for partner).

37.     In my opinion, this case justifies imposition of a multiplier under *Joyce*, which confirmed that (unlike federal law) a multiplier under Fla. Stat. § 627.428 is standard to the extent it meets the outlined factors and is not reserved to "rare" circumstances, 228 So. 3d at 1135, because (1) attorneys in this market would not take a case of this type (with all its expense and risk) without a contingency fee multiplier, (2) class counsel could not mitigate the risk of non-payment because the Named Plaintiffs could not pay any hourly fees, and (3) the amount involved and the results obtained were excellent and the risk was significant.

38.     In my opinion, a multiplier of 2.0 or 2.5 is justified because, as Judge Snow explained in the concurrently-litigated *Roth* action, success was unlikely at the outset given that (1) odds of success on the merits were even at best and (2) odds of successfully certifying a class was unlikely and a gargantuan task. In my opinion, the same analysis applies here.

## IV.     CONCLUSION

39.     In acting as an expert witness for Plaintiffs in the litigation of this action, as of this date, I have spent approximately 8 hours and incurred $4,000.00 of fees in studying the record, interviewing counsel, and otherwise formulating my opinions.

40.     I am available and willing to expound upon the opinions expressed herein at the Final Hearing.

EXHIBIT A

41.     I hereby certify that the time and expenses I incurred in performing my analysis were necessary for me to render informed opinions.

42.     The foregoing opinions are provided to a reasonable degree of certainty.

FURTHER THE DECLARANT SAYETH NAUGHT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 2nd day of June, 2020.

_/s/ Mel Wright_
Melvin Wright, Esq.

EXHIBIT A

# Exhibit 1

EXHIBIT A
EXHIBIT 1

**Lorenti/Jones v. GEICO**
**Exhibit 1 - Melvin Wright**
**Documents and Other Materials**

A list of the documents I have reviewed to date in relation to this matter follows:

1. Second Amended Complaint

2. Third Amended Complaint

3. Plaintiffs' Amended Motion for Class Certification and Memorandum of Law

4. Defendants' Opposition to Motion for Class Certification

5. Plaintiffs' Reply Brief in Support of Motion for Class Certification

6. Defendants' Surreply in Support of Defendants' Opposition to Motion for Class Certification

7. Order on Class Certification

8. Order on Motions for Summary Judgment

9. Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement

10. Joint Motion to Substitute Signed Settlement Agreement as Exh. A to Motion for Preliminary Approval

11. Order Granting Motion to Substitute

12. Order Preliminarily Approving Class Settlement

13. Plaintiffs' Motion for Summary Judgment (165)

14. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (171)

15. Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law (180)

16. Declaration of Plaintiff Anthony Cook

17. Declaration of Plaintiff Anthony Lorenti


EXHIBIT A
EXHIBIT 1

18. Declaration of Plaintiff Ashley Barrett

19. Declaration of Plaintiff Maurice Jones

20. Declaration of Plaintiff Micah Bellamy

21. Time Reports for Normand PLLC

22. Cost Ledger for Normand PLLC

**Documents I reviewed from _Roth v. Geico_:**

23. Plaintiff's Motion for Class Certification (46 redacted & unredacted)

24. Defendant's Response in Opposition to to Motion for Class Certification (77)

25. Order Granting Plaintiff's Motion for Class Certification (165)

26. Hearing Transcript from Motion For Attorneys' Fees and Costs (9/11/19)

27. GEICO Data Samples 2

**Documents I reviewed from _Preman v. Pollo Operations_**

28. Plaintiff's Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Costs & Service Award

29. Order on Motion for Approval of Attorneys' Fees, Costs and Service Award

I intend to review additional documents related to this matter, and I reserve the right to supplement this list as necessary.



EXHIBIT A
EXHIBIT 1

Exhibit 2

EXHIBIT A
EXHIBIT 2

## PERSONAL

**MELVIN BOWEN WRIGHT** was born in Albany, Georgia on August 1, 1959 and was raised on a family farm still in operation in Warwick located in rural South Georgia.  He moved to Central Florida in 1985, is married and has two children.

## PRACTICE AREAS

Trial Practice - Civil; Personal Injury; Wrongful Death; Motor Vehicle And Trucking Liability; Premises Liability; Medical Malpractice; Pharmacy Malpractice; Nursing Home Negligence; Products Liability; Pharmaceutical litigation; False Claims Act/Whistleblower/*Qui Tam* cases; and Class Actions.

## EDUCATION

After graduating with a Bachelor of Science degree from the Department of Agricultural and Applied Economics at the University of Georgia, College of Agricultural & Environmental Sciences in 1981, Mr. Wright was admitted to the Walter F. George School of Law at Mercer University in Macon, Georgia.

## LICENSES TO PRACTICE LAW

He received his juris doctor degree in 1985 and was admitted to the State Bar of Georgia in 1985 and the Florida Bar in 1986.  Mr. Wright is also licensed to practice law in Tennessee.

## EXPERIENCE AND ACCOMPLISHMENTS

**Past career experience:**

Mr. Wright began the practice of law in 1985 in Orlando with an emphasis in wrongful death and personal injury litigation and represented both the injured and the insurance industry until 1993.  He now exclusively handles cases of serious personal injury and death for accident victims.  Mr. Wright has substantial experience in all types of personal injury and wrongful death litigation including automobile accidents, on the job injuries, childcare negligence, drowning and other premises liability, cases involving negligent security at retail establishments, and medical malpractice.  Mr. Wright has extensive experience in nursing home and other institutional abuse and neglect cases, having led a team of nursing home neglect and abuse attorneys at another Florida law firm and having lectured nationally at seminars on institutional abuse and neglect cases from 1997 to 2004.  Mr. Wright has experience in representing clients in mass tort cases, including pharmaceutical products and compounded drugs.

**Jurisdictions and Courts Admitted to Practice:**

Mr. Wright is admitted to practice in all state courts in Florida, Georgia, and Tennessee and to the U.S. District Courts for the Middle District of Florida and the Northern District of Florida.  He has tried numerous civil jury cases in both state and federal courts.  He has also handled numerous appeals to several of Florida's district courts of appeals, the Supreme Court of Florida, and the United States Court of Appeals for the Eleventh Circuit.

**States of Practice:**



EXHIBIT A
EXHIBIT 2

Mr. Wright practices primarily in Florida but has also handled cases in Georgia, Tennessee, Mississippi, Arkansas, North Carolina, and Massachusetts in association with law firms having principal offices in or near those states or upon admission *pro hac vice*.

**Board Certifications:**

Mr. Wright has been board certified as a civil trial specialist by the Florida Bar, Board of Legal Specialization and Education since 1996.  Board certification as a civil trial lawyer is the highest level of recognition by the Florida Bar of the competency and experience of an attorney in the field of civil litigation.  Since 1999, Mr. Wright has also been board certified as a Civil Trial Specialist and a Civil Practice Advocate by the National Board of Trial Advocacy and the National Board of Legal Specialization and Certification, organizations accredited by the American Bar Association to certify attorneys in the specialty of Civil Trial Law and Civil Practice Advocacy.

**International Society of Barristers**

In 2018, Mr. Wright was inducted as a Fellow of the International Society of Barristers (ISOB).  The ISOB was created in 1965 and is dedicated to preserving trial by jury, the adversary system and an independent judiciary.  Its founders conceived the organization to bring together the best of the trial bar in a setting devoid of partisan interests.



**American Board of Trial Advocates**

In 2013, Mr. Wright was nominated and selected as a member of the American Board of Trial Advocates.  He was elected Treasure for the Central Florida Chapter of ABOTA in 2015-16 and Vice-President of the CFLABOTA in 2016-17.  In 2018 he will serve as President of the Central Florida Chapter of ABOTA.

Mr. Wright is also a Life Fellow of the ABOTA Foundation.

## PROFESSIONAL ASSOCIATIONS

Mr. Wright is a member of the State Bar of Georgia, the Florida Bar, the Trial Lawyers Section of the Florida Bar, the Central Florida Trial Lawyers Association (CFTLA), the American Association for Justice (AAJ), the Motor Vehicle Collision, Highway and Premises Liability Section of the AAJ, the Professional Negligence Section of the AAJ, the Nursing Home Litigation Group of the AAJ and the AAJ's Section of Toxic, Environmental and Pharmaceutical Torts. Mr. Wright is an EAGLE Member of the Florida Justice Association.  Mr. Wright served as the Chairperson of the Florida Justice Association Nursing Home Committee in 2008-2009 representing the interests of nursing home residents and their families in regulatory and legal reform in the Florida Legislature.

Mr. Wright is member of the Southern Trial Lawyers Association, which promotes the fellowship, learning and networking among trial attorneys in the 13 southern states.

Mr. Wright was appointed to serve on the Florida Bar Advertising Committee from 2010-2015, to serve as Vice Chair from 2013-2014, and to serve as Chair of the Advertising Committee from 2014-2015.  Mr. Wright has been nominated four times by the Florida Bar to serve on the Ninth Judicial Circuit and Fifth District Court of Appeal Judicial Nominating Commissions charged by Article V of the Florida Constitution with the responsibility of nominating appropriate and qualified candidates for appointment by the sitting Florida Governor to fill open seats in the judiciary.

In 2014, he was appointed by Chief Judge Belvin Perry to serve as Central Florida ABOTA's appointed member of the Ninth Judicial Circuit Professionalism Panel created by mandate of the Supreme Court of Florida to address in a cooperative and non-punitive manner allegations by judges, lawyers and non-lawyers of improper behavior by attorneys in the Ninth Judicial Circuit.



EXHIBIT A
EXHIBIT 2

In 2015 Mr. Wright was appointed by the Supreme Court of Florida as a member of the Committee on Standard Jury Instruction in Civil Cases.  He was selected among numerous applicants chosen by the Committee members for consideration by the Supreme Court of Florida.  The Committee assists the Court in drafting standard jury instructions in civil cases that are then approved for publication by the Florida Supreme Court.

EXHIBIT A
EXHIBIT 2