IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY COOK, MICAH BELLAMY, and          CASE NO.: 6:17-cv-891-ORL- 40KRS
MAURICE JONES, As Personal Representative
and on behalf of the Estate of Kailyn Jones,
each individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY and GEICO
GENERAL INSURANCE COMPANY,

      Defendant.

_____/

ANTHONY LORENTI and ASHLEY BARRETT,   CASE NO.: 6:17-cv-1755-PGB- 40DCI
Individually and on behalf of all others similarly
situated,

      Plaintiffs,

v.

GEICO INDEMNITY COMPANY,

      Defendant.

_____/

**FINAL ORDER AND JUDGMENT**
**GRANTING FINAL APPROVAL OF CLASS SETTLEMENT [209],**
**GRANTING MOTION TO VACATE SUMMARY JUDGMENT ORDER [198], AND**
**GRANTING MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**
**AND NAMED PLAINTIFFS' SERVICE AWARDS [210]**

WHEREAS, Plaintiffs Anthony Cook, Micah Bellamy, Maurice Jones, Anthony

Lorenti, and Ashley Barrett (the "Named Plaintiffs"), individually and as Class Representatives

on behalf of a proposed Settlement Class (collectively, "Plaintiffs"), and Defendants Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "Defendants" or "GEICO"), acting by and through their respective counsel, have agreed, subject to Court approval, to settle this Action upon the terms and conditions stated in the Class Action Settlement Agreement filed with the Court on December 18, 2019 (the "Agreement");

WHEREAS, this Court previously granted preliminarily approval of the Settlement Agreement on January 6, 2020, including the attachments thereto, directed that Notice be provided in accordance with the terms of the settlement thereby providing Class Members the opportunity to evaluate the terms of the settlement and to submit a claim, request exclusion, or object thereto, and set a final Fairness Hearing for June 17, 2020;

WHEREAS, this Court ordered that Mailed Notice, Claim Forms, and Emailed Notices, in the form attached to the Settlement Agreement, be directed to Class Members pursuant to the terms of the Settlement Agreement;

WHEREAS, the Parties have satisfactorily demonstrated that the Notice plan was completed in accordance with the terms of the Settlement Agreement and with this Court's directive;

WHEREAS, in accordance with the Notice, a final fairness Hearing was conducted on June 17, 2020, during which this Court considered (1) the fairness, adequacy, and reasonableness of the Settlement Agreement terms under Fed. R. Civ. P. 23(e), (2) whether certification of the Settlement Class was proper under Rule 23; and (3) whether the attorneys' fees sought were fair and reasonable under Rule 23(h);

WHEREAS, this Court has fulfilled its duty to independently evaluate the fairness, reasonableness, and adequacy of the Agreement and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards  by considering not only the filings and arguments of Plaintiffs, Class Counsel, and Defendants, but also by independently evaluating the Agreement and Class Counsel's Motion for Fees, Costs, and Service Awards;

WHEREAS, by performing this independent analysis of the Motion for Final Approval and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards, the Court considered and protected the interests of all absent Settlement Class Members under Fed. R. Civ. P. 23;

WHEREAS, the Mailed Notice and Emailed Notice advised Settlement Class Members of the method by which a Settlement Class Member could request exclusion from the Proposed Settlement and pursue an independent legal remedy against Defendants;

WHEREAS, all Settlement Class Members had the absolute right to opt out and pursue an individual lawsuit against Defendants;

WHEREAS, any Settlement Class Member who failed to request exclusion under the terms of the Mailed Notice and Emailed Notice voluntarily waived the right to pursue an independent remedy against Defendants;

WHEREAS, the Mailed Notice and Emailed Notice advised Settlement Class Members of the method by which a Settlement Class Member could properly file objections and request to be heard at the Fairness Hearing;

NOW, THEREFORE, based upon the Agreement, all of the files, records, and proceedings herein, statements of counsel, including the Motion for Final Approval [209],  the

Motion for Attorneys' Fees, Costs, and Service Awards [210],  and the declarations affixed thereto, and the Joint Motion to Vacate Summary Judgment Order [198], and upon the Hearing conducted on June 17, 2020, to finally determine whether the terms of the Settlement Agreement are fair, reasonable, and adequate, this Court finds and concludes as follows:

1. The Agreement (including its Exhibits) is hereby incorporated by reference in this Order, and all terms defined in the Agreement will have the same meanings in this Order.

2. This Court possesses jurisdiction over the subject matter of this Action and over all Parties to this Action, including the Named Plaintiffs and all Settlement Class Members.

3. On January 6, 2020, this Court entered an Order preliminarily certifying the Settlement Class and found that the negotiations leading to the Agreement occurred at arm's length, there was sufficient discovery in this case prior to settlement, and the proponents of the settlement were experienced in similar litigation. The Court preliminarily approved the Agreement (including Exhibits), and found the Proposed Settlement was fair, reasonable, and adequate to warrant providing notice to the Settlement Class.

4. This Court previously certified a Class in this action, Doc. 152, and the Parties proposed a Settlement Class that is defined, with some immaterial alterations, essentially the same as the Class previously certified by this Court – except that the Settlement Class includes additional insureds who suffered a total loss to their insured vehicle after the date of this Court's original Order Granting Class Certification, and through the date

of the entry of the Order of Preliminary Approval.  This Court preliminarily certified a

Settlement Class, excluding the persons identified in Paragraph I(qq) of the Agreement,

defined as:

> All Florida policyholders who were insured for private-passenger auto physical damage coverage by Government Employees Insurance Company or GEICO General Insurance Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from May 17, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees; and all Florida policyholders who were insured for private-passenger auto physical damage coverage by GEICO Indemnity Company who suffered a first-party loss of a covered owned (i.e., not leased) vehicle at any time from October 10, 2012, through the date the Court enters the Preliminary Approval Order, whose claims were adjusted by a Defendant as a total-loss claim and resulted in payment by a Defendant of a covered claim, and who were not paid full Title, Tag and Branch Transfer Fees.

5.   The Court further found that, for purposes of settlement, the Named Plaintiffs

possessed Article III standing and that the Class was adequately defined and clearly

ascertainable, that the Rule 23(a) factors were satisfied, and that the Rule 23(b)(3)

factors were satisfied.

6.   The Court hereby reaffirms this definition of the Settlement Class for purposes of this

Final Order and Judgment and certifies this Action, for settlement purposes only, as a

Class Action.  For the reasons set forth in this Court's Order Granting Class

Certification (Doc. 152) and the Order Preliminarily Approving Class Settlement (Doc.

201), for purposes of settlement, the Settlement Class as defined above is adequately

defined and clearly ascertainable, and record evidence demonstrates the numerosity, commonality, typicality, and adequacy requirements are satisfied, the common questions of law and fact predominate over any individual questions, and class treatment is superior to any other method of adjudication.

7. Notably, in amending Rule 23 in 2018, the Advisory Committee made clear that if "the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1)(B) Committee Notes on Amendment – 2018. Here, the Settlement Class merely expands the class period to include first-party total-loss insureds who suffered a total loss after this Court's original Order granting class certification and through this Court's grant of preliminary approval of the settlement, and is otherwise materially identical to the litigated class definition. Thus, the Settlement Class is certifiable for the factual and legal reasons set forth in this Court's previous Order certifying the Class. Such finding is not to be deemed an admission of liability or fault by GEICO or a finding of the validity of any claims asserted in the Action or of any wrongdoing by GEICO. Neither the Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by the Released Persons of the truth of any of the allegations made in the Action, or of any liability, fault, or wrongdoing of any kind whatsoever on the part of the Released Persons.

8. Having demonstrated Article III standing and adequacy under Rule 23(a)(4), Anthony Cook, Micah Bellamy, Maurice Jones, Anthony Lorenti, and Ashley Barrett are appointed representatives of the Settlement Class ("Class Representatives"). Having also demonstrated adequacy under Rule 23(a)(4), the following attorneys are appointed as counsel for the Settlement Class ("Class Counsel"):

Edmund Normand, Esq.
Normand PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
Ed@ednormand.com

Jacob Phillips, Esq.
Normand PLLC
3165 McCrory Place, Suite 175
Orlando, FL, 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
Jacob.phillips@normandpllc.com

Christopher J. Lynch
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Telephone: (305) 443-6200
Facsimile: (305) 443-6204
clynch@hunterlynchlaw.com

Christopher B. Hall
Hall & Lampros, LLP
400 Galleria Parkway, Suite 1150
Atlanta, Georgia 30339
Phone:  (404) 876-8100
Facsimile:  (404) 876-3477
chall@hallandlampros.com

Andrew Lampros
Hall & Lampros, LLP

400 Galleria Parkway, Suite 1150
Atlanta, Georgia 30339
Phone:  (404) 876-8100
Facsimile:  (404) 876-3477
alampros@hallandlampros.com

Tracy L. Markham
Southern Atlantic Law Group, PLLC
2800 N. 5th Street, Suite 302
St. Augustine, Florida 32084
Phone:  (904) 794-7005
Facsimile: (904) 794-7007
tlm@southernatlanticlawgroup.com

Bradley W. Pratt
Pratt Clay, LLC
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Telephone:  (404) 949-8118
Facsimile:  (404) 949-8159
bradley@prattclay.com

9.  GEICO maintains all defenses to certification and this Order shall not be used as evidence or be interpreted in any way to be relevant to whether a litigation class should have been certified for class treatment.

10. On January 6, 2020, the Court approved the Mail Notice Form, E-Mail Notice Forms, Longform Notice, Claim Form, and Electronic Claim Form (including blank forms of both) submitted to the Court as Exhibits 2 through 6 to the Agreement and directed that the Notices and Claim Forms be sent to the Persons described, and in the manner set forth, in the Agreement, including the procedures set forth for Notices that are returned as undelivered or due to an incorrect current address.

11. On June 2, 2020, the Parties provided evidence that the Mailed and Emailed Notice and the settlement website, which notice and website informed members of the Settlement

Class of the terms of the Proposed Settlement, and of their opportunity to request exclusion from the Settlement Class, and of their opportunity to object to the terms of the Agreement, were disseminated and posted in accordance with the Preliminary Approval Order.

12. Specifically, the Court received declarations from Robert Coomes, an employee of the Settlement Administrator, setting forth the scope and results of the notice campaign.

13. Based upon review of the evidence submitted and arguments of counsel, the Court finds and concludes that the notice provided to potential Settlement Class Members (i) was the best practicable notice under the circumstances; (ii) was reasonably calculated to apprise Settlement Class Members of the pendency of the Action and of their right to object or to exclude themselves from the Proposed Settlement and to appear at the Fairness Hearing and to seek monetary relief; and (iii) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice. *See* Fed. R. Civ. P. 23(c)(2).

14. The adequacy and sufficiency of the Notice campaign is demonstrated by the fact that over 72,800 Settlement Class Members submitted timely claims, which constitutes a claims rate of approximately 25.3%. This is a significant claims rate and exceeds the claims rate in the overwhelming majority of similarly-structured settlements. *See, e.g., Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%);

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) (approving settlement with claims rate of approximately 1.1%).

15. Accordingly, the Mailed and Emailed Notice as disseminated is finally approved as fair, reasonable, and adequate.  The Court finds and concludes that due and adequate notice of the pendency of the Agreement was provided to Settlement Class Members, and the Court finds and concludes that the notice program set forth in the Preliminary Approval Order and completed by the Parties complied with the requirements of Fed. R. Civ. P. 23, and the requirements of due process under the Florida and United States Constitutions. The Court further finds that the notice campaign concisely and clearly stated in plain, easily understood language, among other things, (a) the nature of the action; (b) the definition of the Settlement Class; (c) the claims and defenses at issue; (d) that a Settlement Class Member could object to the proposed Settlement and could intervene and participate in person or through counsel; (e) when and how Settlement Class Members could elect to be excluded and that the Court will exclude any Settlement Class Member who timely and properly requested exclusion; (f) the binding effect of class judgment on Settlement Class Members.

16. The Court further finds that the Class Action Fairness Act Notice provided by the Settlement Administrator on behalf of GEICO complied with 28 U.S.C. § 1715(b). None of the numerous agencies to which notice was given under the Class Action Fairness Act objected to the settlement, which supports the fairness and reasonableness of the settlement. *See, e.g.*, *Hamilton v. SunTrust Mortg, Inc.*, No. 13-60749, 2014 U.S. Dist. LEXIS 154762, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney

general or regulator submitted an objection," finding that "such facts are overwhelming support for the settlement").

17. The Fairness Hearing and the evidence before the Court support a finding that the Agreement was entered into in good faith between the Plaintiffs and Defendants.

18. The Court finds that the negotiations leading to the Agreement occurred at arm's length, there was sufficient discovery in this case prior to settlement, and that the Agreement is fair, reasonable, and adequate to Settlement Class Members based on the absence of any objections.

19. The settlement of the Action, based on the terms and conditions set forth in the Settlement Agreement, is approved as fair, reasonable, adequate, and in the best interest of the Settlement Class, particularly given the benefits conferred on the Settlement Class compared to the costs and risks of continued prosecution and appeal of this complex class action litigation.

20. Because this Circuit expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve class settlement if the terms are "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). Under Rule 23(e)(2), settlements may be approved if the Class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C).  The Court finds that these factors are present here.

21. Rule 23(e)(2) was amended in 2018 to add the textual factors addressing the adequacy of the terms of a Settlement Agreement. The Advisory Committee was clear that while

it intended to "focus the court and the lawyers on the core concerns" or "central concerns" of Rule 23, it did not intend to "displace" the various circuits' governing law on approval of class action settlements. Fed. R. Civ. P. 23(e)(2) Committee Notes on Amendment – 2018. Thus, the Eleventh Circuit's prescription of the factors that courts should consider when evaluating the fairness and adequacy of settlement terms in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) remain relevant, particularly to the extent not encompassed by the Rule 23(e)(2)(C) factors.

22. The factors prescribed in *Bennett* are "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id*. at 986.

23. Rule 23(e)(2) threshold requirements of adequate representation and arm's length negotiations favor settlement. The evidence in the record demonstrates that settlement was achieved only after extensive and lengthy negotiations with assistance of an experienced and well-respected mediator, Rodney Max, which establishes the arm's length nature of the negotiations and is strong evidence of a lack of collusion. *See Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002) (Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion).

Additionally, this Court directly observed the extensive and contested nature of the litigation, with significant and complex issues and positions being briefed and argued, all of which further demonstrate a lack of collusion. *See, e.g.*, *Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion).

24. The Settlement Class was adequately represented by the Class Representatives and Class Counsel. Fed. R. Civ. P. 23(e)(2)(A). The Advisory Committee explained that this analysis is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims. This Court agrees with other courts that have found that the Rule 23(e)(2)(B) "adequacy" requirement overlaps with the preexisting *Bennett* "stage of proceedings" factor. *See, e.g.*, *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

25. Based on the evidence submitted to the Court and as demonstrated through the extensive litigation and discovery process, both the "adequacy" requirement and the "stage of proceedings" requirement under *Bennett* favor approval of the Settlement Agreement. Settlement occurred at an advanced stage of litigation, and only after numerous contested issues of class certification, discovery, and summary judgment were extensively briefed and litigated. Clearly, the Class Representatives evaluated

13

voluminous discovery and data and conducted numerous depositions, such that they possessed sufficient information and knowledge with which to evaluate the merits and benefits of settlement compared to the risk of further litigation. *See Grant v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 14673, at *14-15 (M.D. Fla. Jan. 29, 2019) ("Through…depositions, document production, and written discovery, Plaintiff and Class Counsel were able to" establish an adequate information base to satisfy the adequacy requirement). Thus, the Court finds that both the Rule 23(e)(2)(B) "adequacy of representation" requirement and the Bennett "stage of proceedings" factor favor final approval of the Settlement Agreement.

26. Next, the Rule 23(e)(2)(C) factors addressing whether a settlement's terms are "adequate" – the risk of non-settlement, the method for processing claims and distributing relief, and the terms of attorneys' fees – favor granting final approval. The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the first four *Bennett* factors: (1) likelihood of success, (2) range of potential recovery, (3) where, on the range of potential recovery, the amount to which Class Members are entitled falls, and (4) the duration and length of litigation. *See, e.g.*, *Williams v. New Penn Fin., LLC*, 2019 U.S. Dist. LEXIS 106268, at *11 (M.D. Fla. May 8, 2019). Under both Rule 23 and *Bennett*, courts should estimate the potential recovery if ultimately successful versus the risks of losing outright, and determine whether the relief provided comports therewith. *Id*.; *see also Palmer v. Dynamic Recovery Solutions, LLC*, 2016 U.S. Dist. LEXIS 59229 (M.D. Fla.

May 4, 2016) (comparing potential recovery versus risk and analyzing relief provided under proposed settlement in comparison therewith).

27. The amount of damages sought in the pleadings was $79.85 plus prejudgment interest per class member. Thus, potential recovery ranges from $0.00 to $79.85 plus prejudgment interest per Settlement Class Member. Applying these damages to the factors, the Agreement provides $79.85 plus prejudgment interest to every Settlement Class Member who submits a claim, and does not compromise nor reduce the amount of damages available to the Class or any Class Member; therefore, the place "on the range of discovery", *Bennett*, 737 F.2d at 986, in which the relief afforded falls is beyond adequate because it is at the very top of that range. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (finding significant that settlement afforded more relief than likely would have been secured at trial); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"); *cf. Bennett*, 737 F.2d at 987 n. 9 (approved settlement providing 5.6% of the potential recoverable damages). This conclusion is buttressed by the fact that Defendants agreed to change their business practice and begin paying Transfer Fees to all total-loss insureds moving forward. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (analysis of potential recovery and benefits secured "spans from a finding of non-liability" to "varying levels of injunctive relief" to monetary benefits).

28. Moreover, as this Court previously noted, while this Court granted Plaintiffs' motion for class certification and granted Plaintiffs' motion for summary judgment and denied GEICO's motion for summary judgment, other courts can and have disagreed (including a Florida circuit court).  In addition, a similar case is currently pending on appeal before the Eleventh Circuit, and GEICO maintains that it possesses meritorious defenses concerning both summary judgment and class certification, and appellate review of this Court's Summary Judgment Order would be *de novo*.  *See Curves, LLC v. Spalding County*, 685 F.3d 1284, 1288 (11th Cir. 2012). Every case includes a risk that the appellate court will disagree with the trial court. Here, there is no direct guidance from the Florida Supreme Court nor any Florida appellate court on the questions of Florida law presented by this case. For these reasons, the risk of no recovery because of an adverse ruling on appeal is real and significant. Thus, the Court finds that Rule 23(e)(2)(C)(i), consistent with the aforementioned *Bennett* factors, clearly favors approval of the proposed settlement.

29. The second factor is the method for "distributing relief" and "processing class-members claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). As demonstrated by the claims process and Forms approved by this Court, the process was simple, streamlined, and straightforward. Defendants extracted information from its insurance claim records to pre-fill the information on the settlement claim forms, and Settlement Class Members merely had to sign an attestation confirming the prefilled information was correct (including the address) or update the address. *See Wilson v. Everbank*, 2016 WL 457011, at *9 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not

submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."). This Court finds that Rule 23(e)(2)(C)(ii) favors approval of the Settlement Agreement.

30. In the Order Preliminarily Approving Class Settlement, the Court considered the claims made structure, and preliminarily found that this structure did not undermine the fairness or adequacy of the Agreement. Upon further review, including review of the claims process, this Court confirms such finding. *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner*, 618 Fed. Appx. 624 (confirming approval of class settlement with less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (a claims made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement."); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, 2014 U.WL 7184039 (S.D. Fla. Dec. 17, 2014). This Court agrees that "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims made class settlement).

31. This Court's finding is further supported by the fact that Defendants asserted they would not have settled the case on a direct pay model, and would have appealed this matter to the Eleventh Circuit. *See Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at \*49 (S.D. Fla. Apr. 13, 2016) (claims made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct pay structure); *Casey v. Citibank, N.A.*, 2014 WL 4120599, at \*2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")).

32. The next factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). This is distinct from the Rule 23(h) analysis below, and instead addresses if and how the attorneys' fees impacted the terms of the Settlement. Importantly, pursuant to the Settlement Agreement, whatever amount this Court awards in attorneys' fees will be paid separately by Defendants and will not impact the amounts recovered by Settlement Class Members, and payments to Settlement Class Members are not conditioned on an award of attorneys' fees. *See Burrow*, 2019 U.S. Dist. LEXIS 151734, at \*27-28 (evaluating Rule 23(e)(2)(C)(iii) and finding significant that fees "are to be paid by the Defendants separately and in addition to the relief granted to the

Settlement Class Members" and "was not conditioned on any amount of attorneys' fees"); *Williams*, 2019 U.S. Dist. LEXIS 106268, at \*16 (same). Thus, this Court finds that Rule 23(e)(2)(C)(iii) favors approval of the Agreement.

33. The final factor is whether the Agreement treats class members equitably *vis-a-vis* each other. Fed. R. Civ. P. 23(e)(2)(D). Under the Settlement Agreement, Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and all other material ways. Additionally, the scope of the release is identical as to all Class Members. *See* Rule 23(e)(2)(D), Committee Notes on Rules - 2018 Amendment (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways"). Thus, this Court finds that Rule 23(e)(2)(C)(iv) favors approval of the settlement.

34. Finally, the two remaining *Bennett* factors not subsumed within Rule 23 – opposition to the settlement and the opinions of the Class Representatives and Class Counsel – also favor settlement. First, not a single Class Member lodged an objection, and only 8 opted out on 11 claims – from a Class of 287,709 claims. This lack of opposition to the Settlement Agreement is significant evidence that the settlement terms are fair, adequate, and reasonable. *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (one objection out of "hundreds of thousands class members" indicates strong satisfaction with settlement). Second, the opinions of Class Counsel and the Named Plaintiffs, all of whom believe the Settlement Agreement is in the best interests of Settlement Class Members, favors approval of the settlement. Class Counsel are experienced and well-regarded class action litigators, and this Court is inclined to give

weight to their opinions. Thus, this Court finds that the remaining *Bennett* factors favor

approval of the Settlement Agreement.

35. The Parties also jointly moved to vacate this Court's previous summary judgment

Order (Doc. 185), contingent on this Court granting final approval of the Settlement

Agreement after the Notice period and after the period during which Class Members

could object or request exclusion. Vacatur requires this Court to "determine the

propriety of granting vacatur by weighing the benefits of settlement to the parties and

to the judicial system (and thus to the public as well) against the harm to the public in

the form of lost precedent." *See Hartford Cas. Ins. Co. v. Crum & Forster Specialty

Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016). As set forth in the Order Preliminarily

Approving Class Settlement, and upon further review, the Court finds that, because the

previous Summary Judgment Order addressed issues relating to the application of

Florida state law by a federal court sitting in diversity, the Summary Judgment Order

is not binding precedent, and no precedential value is lost by vacating the Order.

Moreover, the Court notes that the Summary Judgment Order related to GEICO-

specific insurance policies particular to this insurer. Finally, the Court considers it

important that the Settlement was achieved pursuant to Court-ordered mediation, and

the Court has found that the benefits of settlement likely outweigh the harm to the

public in the form of lost precedent. This settlement provides full relief to Plaintiffs and

the Class, provides finality to Defendants, and provides considerable positive impact

to the public in the State of Florida by including a requirement that GEICO change its

practice and procedure going forward so that it pays the requested transfer fees to its insureds.

**NOW, THEREFORE, IT IS ORDERED AND ADJUDGED THAT**

36. The Court possesses jurisdiction over the subject matter of this Action and to approve the Agreement, and has personal jurisdiction over all Settlement Class Members. The Motion for Final Approval of Class Action Settlement is **GRANTED**.

37. The Court finds that all requirements for certification of a settlement class under Rule 23 of the Federal Rules of Civil Procedure have been met and certifies the Settlement Class for settlement purposes only.

38. The Court finds that the terms of the Agreement are fair, reasonable, and adequate, consistent with the requirements of due process, and in the best interests of the Settlement Class. All provisions and terms of the Agreement are finally approved in all respects, and the Parties are directed to consummate the Agreement in accordance with its terms.

39. The Court finds that Class Counsel and the Named Plaintiffs adequately, appropriately, and fairly represented and protected the interests of the Settlement Class for the purposes of entering into and implementing the Proposed Settlement, and reconfirms its appointment of the Class Representatives and Class Counsel as set forth above.

40. The Court approves the Opt-Out List submitted by the Settlement Administrator, which is found at Doc. 213-1.  The potential Settlement Class Members who submitted timely requests for exclusion as set forth in the Opt-Out list are hereby excluded from the Settlement Class and shall neither share in nor be bound by the Final Order and

Judgment. All other potential Settlement Class Members are adjudged to be members of the Settlement Class and are bound by this Final Order and Judgment and by the Agreement, including the Release provided for in the Agreement and this Final Order and Judgment.

41. This Action is dismissed in its entirety on the merits, with prejudice and without leave to amend, and without fees or costs except as expressly provided in this Final Order and Judgment.

42. Upon the entry of this Final Order and Judgment, each Settlement Class Member (except those who have been excluded by the Court), as well as their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have submitted a Claim Form, shall be conclusively deemed to have fully released and discharged all Released Claims against all Released Persons as defined and set forth in the Settlement Agreement.

43. No Persons other than Defendants, Defendants' counsel and clerical/administrative personnel employed by them, Class Counsel and clerical/administrative personnel employed by Class Counsel, the Settlement Administrator, the Neutral Evaluator and any clerical/administrative personnel employed by him, and such other Persons as the Court may order, after hearing on notice to all counsel of record, shall be allowed access to any Confidential Information, as defined and set forth in the Settlement Agreement.

Class Counsel shall return to Defendants all Confidential Information within the timing of and as set forth in the terms of the Settlement Agreement.

44. This Final Order and Judgment incorporates and adopts the remaining terms of the Settlement Agreement, including, but not limited to, all provisions related to admissibility of the Settlement Agreement, payment of claims timely and properly submitted, and jurisdiction to enforce the terms of the Settlement Agreement.

45. As set forth in the Joint Motion to Vacate Summary Judgment Order (Doc. 198), a material term of the Settlement Agreement was the entry of an Order vacating the Summary Judgment Order. The Court has broad discretion to revisit its Orders prior to Final Judgment, and the Eleventh Circuit frequently grants motions to vacate prior orders to effectuate settlement, particularly where, as here, the prior Order dealt with state law issues and is of limited precedential value.  For the reasons set forth herein and in the Joint Motion to Vacate Summary Judgment Order (Doc. 198), the Joint Motion to Vacate Summary Judgment Order is **GRANTED** and the Summary Judgment Order (Doc. 185) is vacated, effective on the date of this Order.

46. Plaintiffs request that the Court approve attorneys' fees of $5,600,000 and costs of $225,000, and service awards of $10,000 to each of the Named Plaintiffs. This Court has reviewed all declarations and evidence submitted in support thereof, including the declaration submitted by attorney and fee expert Melvin Wright, a complex litigation practitioner.

47. This Court has analyzed the application for attorneys' fees in light of governing Eleventh Circuit law, including *Camden I Condominium Ass'n, Inc. v.  Dunkle,* 946

F.2d 768 (11th Cir. 1991), *Poertner v. Gillette Co.,* 618 Fed. Appx. 624 (11th Cir. 2015), and *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018).

48. This Court notes that the monetary value of all claims under the terms of the Settlement Agreement for Transfer Fees and prejudgment interest is approximately $61.90 million, which includes approximately $27.54 million in cash available for claimants, $28.76 million in prospective relief from GEICO's change in practice over a five-year period, and $5.6 million in attorneys' fees (if approved by this Court). Thus, the attorneys' fees represent 16.9% of the cash benefit to the class (not including prospective relief), 9.1% of the benefit to the class if including five years of prospective relief, and 14.7% of the benefit to the class if including only one year of prospective relief.  This is well within the benchmark of 20-30% established by the Eleventh Circuit. *Camden I*, 946 F. 2d 768.

49. The Court finds that attorneys' fees of $5,600,000 are fair and reasonable under Rule 23(h) in light of governing Eleventh Circuit law, irrespective of whether such amount is considered a percentage only of the cash benefits (in which case it represents 16.9% of the benefits conferred) or whether it is considered a percentage of the overall benefit, including prospective relief.

50. This Court's finding is buttressed by the numerous favorable terms secured by Class Counsel, including robust notice, a simple and streamlined claims' process, and narrowly tailored release.

51. Moreover, this Court agrees with Mr. Wright that utilizing the *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974), factors as a cross-check

further confirms the reasonableness of the attorneys' fees sought, particularly the time and labor required, the novelty and difficulty of the issues involved and the skills requisite to perform properly, the customary fee, the amount involved and results obtained, the experience, reputation, and ability of the attorneys, and the awards in similar cases.

52. Finally, while this Court does not believe attorneys' fees should be analyzed under a "lodestar" or Fla. Stat. § 627.428 analysis, *see Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1217 (11th Cir. 2018), the Court also agrees with Class Counsel and Mr. Wright that the fee amount sought is eminently reasonable if such analysis is utilized.

53. This Court agrees that the hours expended and hourly rates utilized in Class Counsel's declarations are reasonable, and that the fee amount sought with a multiplier of approximately 1.4 is well within (and indeed less than) the multiplier used in class action litigation. *See also, e.g., Ingram,* 200 F.R.D. at 696 (noting that multipliers range from less than two to more than five times the reasonable hourly charges); *Manners,* 1999 WL 33581944, at *31 (finding that a multiplier of 3.8 was justified, noting that multipliers in similar litigation have ranged from 1 through  4, and collecting  the relevant cases);  *Behrens,* 118 F.R.D. at 549 (S.D. Fla. 1988) (determining that multipliers range from 2.26 to 4.5 with "three appear[ing] to be the average").

54. The fee amount of $5,600,000 is likewise reasonable when considered under a Fla. Stat. § 627.428 analysis, based on the declarations submitted by Class Counsel and Mr. Wright and the analysis prescribed by *Florida Patient's Compensation Fund v. Rowe*,

472 So. 2d 1145, 1150-51 (Fla. 1985); *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990); *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017).

55. Further, the Court agrees that costs of $225,000 are reasonable and based on competent evidence, particularly for a complex and contested class action with multiple experts, 17 depositions across the country, and a duration of several years. The Court also agrees that Service Awards of $10,000 to each of the Named Plaintiffs are reasonable and justified given the Class Representatives' admirable dedication to the Class, time and effort expended in litigating the case, participating in discovery and mediation, and protecting the best interests of Class Members. *See In re Checking Account Overdraft Litig.,* 2014 WL 11370115 at *12-13 ($10,000 service awards to 12 named plaintiffs).

56. This Court notes that out of the almost 300,000 notices provided to Settlement Class Members, all of whom were informed of the amount sought by Plaintiffs and Class Counsel, not a single objection was lodged.

57. Based on these findings, the Motion for Attorneys' Fees, Costs, and Service Awards [210] is **GRANTED**. The Court awards $5,600,000 in attorneys' fees and $225,000 in costs to Class Counsel, and awards a service award of $10,000 each to Mr. Jones, Mr. Bellamy, Mr. Cook, Ms. Barrett, and Mr. Lorenti. Defendants shall pay the attorneys' fee award to Class Counsel and the service awards to the Class Representatives, pursuant to the terms of the Agreement.

58. The Court reaffirms its appointment of KCC Claims Services, LLC as the Settlement Administrator.

59. Without in any way affecting the finality of this Final Judgment, and without affecting the proper jurisdiction of any other court to enforce the Agreement and the settlement, this Court shall retain continuing jurisdiction over this Action for purposes of: (a) enforcing the Agreement and settlement, (b) hearing and determining any application by any Party for a settlement bar order; and (c) any other matters related to or ancillary to any of the foregoing.

60. In accordance with Fed. R. Civ. P. 54, this Final Order and Judgment is a final and appealable order.

**DONE AND ORDERED** in Orlando, Florida on June 22, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

27